## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No. 12-22426-CIV-MORENO/OTAZO-REYES

ELOY VALDES,

       Plaintiff,

v.

MIAMI-DADE COUNTY,
THOMAS MARTINEZ, individually,
ORLANDO SANCHEZ, individually,
WILLIAM LOPEZ, individually, and
DANIEL PUERTO, individually,

       Defendants.

_____/

### <u>REPORT AND RECOMMENDATION</u>

THIS CAUSE is before the Court upon Defendants Thomas Martinez ("Officer Martinez"), Orlando Sanchez ("Officer Sanchez"), William Lopez ("Officer Lopez") and Daniel Puerto's ("Officer Puerto") (collectively, "Officers") Motion to Dismiss [D.E. 17] and Defendant Miami-Dade County's Motion to Dismiss [D.E. 18]. This case was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Federico A. Moreno, Chief United States District Judge [D.E. 11]. Upon a thorough review of the allegations in Plaintiff Eloy Valdes's ("Valdes") Amended Complaint [D.E. 1-2 at 90-139] and the arguments of counsel, the undersigned respectfully recommends that the Officers' Motion to Dismiss be GRANTED IN PART and DENIED IN PART and Miami-Dade County's Motion to Dismiss be DENIED, as more fully set forth below.

## COMPLAINT ALLEGATIONS

The events underlying this action occurred on two separate occasions: February 21, 2008 and November 27, 2008 (Thanksgiving Day).

**1. Allegations regarding the February 21, 2008 incident**

On February 21, 2008, Valdes was arrested for a misdemeanor charge and brought to the Miami-Dade District Hammocks police station. Amended Complaint at ¶ 11. Upon arrival at the station, Valdes, while handcuffed, said, "Man, this f****** sh** sucks." Id. at ¶ 12. Officers Martinez, Sanchez and Lopez then grabbed Valdes and rushed him into an elevator. Id. at ¶ 13. Officers Martinez and Sanchez grabbed Valdes's head and pushed it into the elevator wall while making implied threats to Valdes. Id. at ¶¶ 14-17. Officer Martinez removed the handcuffs from Valdes's wrists and the three officers led him into an interview room. Id. at ¶¶ 18-19. Officer Martinez removed Valdes's glasses and the Officers pushed Valdes onto the floor. Id. at ¶ 21. As Defendants began kicking Valdes about his body, including his ribs, legs and arms, Officer Martinez left, leaving the other two to kick Valdes about his body. Id. at ¶ 22.[1] Valdes remained in a fetal position while he was being struck and did not physically resist the Officers or threaten them in any way, even as one of the officers cursed at him and told him to get up. Id. at ¶¶ 23-27. As a result of the beating, Valdes sustained bruising, burns and lacerations on his body. Id. at ¶ 28.

On April 21, 2008, Valdes filed a complaint against Officers Martinez, Lopez and Sanchez with Miami-Dade County's Professional Compliance Bureau ("PCB") regarding the beating. Id. at ¶ 29. The PCB commenced a criminal investigation of Officers Martinez, Lopez, and Sanchez; they were questioned about the incident; and were informed that they were the subject of an internal affairs investigation. Id. at ¶¶ 32-33. There are no allegations in the

---

[1] The "other two" necessarily refers to Officers Sanchez and Lopez.

Amended Complaint indicating the disposition of the misdemeanor charges against Valdes or the outcome of his complaint with the PCB.

### 2.  Allegations regarding the November 27, 2008 ("Thanksgiving Day") incident

On November 27, 2008, Thanksgiving Day, Valdes, his father and minor child were at Sedano's Market in Miami, Florida.  Id. at ¶ 35.  While Valdes was standing in line to pay, he saw Officer Martinez, who was off duty, also standing in line.  Id. at ¶¶ 36-37.  Valdes told Officer Martinez that he looked familiar and asked whether he was a police officer, to which Officer Martinez responded that he was.  Id. at ¶¶ 37-38.  Officer Martinez then told Valdes that if he had a "problem" they could go outside to resolve the "problem."  Id. at ¶ 39.  Valdes recognized Officer Martinez as one of the officers involved in the February 21, 2008 incident and told him that he did not want any trouble, especially since it was Thanksgiving Day.  Id. at ¶¶ 40-41.  Officer Martinez, however, continued telling Valdes that they should go outside to resolve the "problem."  Id. at ¶ 42.  Valdes's father also told Officer Martinez that he did not want any trouble and that if he continued to harass Valdes, he would call the police, to which Officer Martinez responded, "I am the f****** police."  Id. at ¶¶ 43-44.  Valdes's father dialed 911 and Officer Martinez left the store to get Officer Puerto for assistance in confronting Valdes. Id. at ¶¶ 45-47.  Officer Puerto then walked into the store and asked Valdes what his "problem" was and Valdes responded that there was no "problem."  Id. at ¶¶ 47-49.  Officer Puerto was aware that there were other patrons present who had observed the interaction between Officer Martinez and Valdes, though Officer Puerto did not wish to speak with them.  Id. at ¶ 50. Officer Puerto told Valdes that he needed to come outside and speak with him and, as Valdes walked outside, Officer Puerto informed Valdes that he was under arrest and to put his hands on the wall.  Id. at ¶¶ 51-52.  Officers Martinez and Puerto placed Valdes in handcuffs while he

asked why he was under arrest and for them to reconsider what they were doing as it was Thanksgiving Day. Id. at ¶¶ 54-56. Officer Martinez then cursed at Valdes again and told him he was going to jail. Id. at ¶ 57. Though Valdes pleaded with Officer Puerto to speak with his father, daughter, or any of the witnesses in the store, Officer Puerto refused to do so. Id. at ¶¶ 58-60. Officer Puerto also refused to view the store's surveillance video that would have shown Officer Martinez harassing Valdez. Id. at ¶¶ 59-60. When Officers Martinez and Puerto searched Valdes incident to his arrest, they discovered a concealed firearm and arrested him for carrying a concealed firearm, though they knew that he had the necessary license to do so. Id. at ¶¶ 61-63. Valdes was also charged with felony charges of aggravated assault on a police officer and threatening a public servant, and misdemeanor charges of disorderly conduct and resisting arrest without violence. Id. at ¶ 71. Valdes was booked into the Dade County Jail on Thanksgiving Day, where he was fingerprinted and searched. Id. at ¶ 72. Valdes had to remain in jail until he was released after posting bond. Id. at ¶ 74. Valdes had to hire an attorney to defend him and entered a not guilty plea to all charges. Id. at ¶¶ 75-76.

The arrest affidavit contained many false allegations about the altercation between Officer Martinez and Valdes including allegations that Valdes cursed at Officer Martinez, became agitated and, as Officer Martinez left to get Officer Puerto, clutched a bulky item concealed under his shirt while saying that he had "his backup right here." Id. at ¶¶ 64-69. Ultimately, the Office of the State Attorney dropped the felony charges for lack of probable cause. Id. at ¶ 77. Valdes proceeded to trial on the misdemeanor charges and, on March 12, 2009, was acquitted of all charges. Id. at ¶ 80.

## PROCEDURAL BACKGROUND

On June 29, 2012, this action was removed from state court, where it had commenced on

February 21, 2012 [D.E 1].  In his Amended Complaint, Valdes brings the following claims related to the February 21, 2008 incident:

Count 1:    Battery against Officer Sanchez;

Count 2:    Battery against Officer Lopez;

Count 3:    Battery against Officer Martinez;

Count 4:    Concert of action for battery against Officers Martinez, Sanchez and Lopez;

Count 5:    § 1983 claim for excessive force against Officer Martinez;

Count 6:    § 1983 claim for excessive force against Officer Sanchez; and

Count 7:    § 1983 claim for excessive force against Officer Lopez.

Valdes brings the following claims related to the November 27, 2008 ("Thanksgiving Day") incident:

Count 8:    False arrest and imprisonment against Officer Martinez;

Count 9:    False arrest and imprisonment against Officer Puerto;

Count 10:   Malicious prosecution against Officer Martinez;

Count 11:   Malicious prosecution against Officer Puerto;

Count 12:   Concert of action for false arrest and malicious prosecution against Officers Martinez and Puerto;

Count 13:   § 1983 claim for false arrest and imprisonment against Officer Martinez;

Count 14:   § 1983 claim for false arrest and imprisonment against Officer Puerto;

Count 15:   § 1983 claim for malicious prosecution against Officer Martinez;

Count 16:   § 1983 claim for malicious prosecution against Officer Puerto;

Count 17:   False arrest and imprisonment against Miami-Dade County.

The Officers raise several arguments for dismissal of all counts against them in the

5

Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  First, as to the battery and § 1983 claims arising from the February 21, 2008 incident (Counts 1 through 7), Officers Sanchez, Lopez and Martinez argue that Valdes has not met the pleading standards required by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009) and cannot, therefore, overcome their defenses of sovereign immunity and qualified immunity. Second, Officer Puerto contends that the facts alleged in support of the claims for malicious prosecution against him related to the Thanksgiving Day incident (Counts 11 and 12) are also insufficient under the Twombly/Iqbal pleading standards because Valdes fails to allege that Officer Puerto acted with malice.  Third, Officer Puerto argues that all claims against him (Counts 9, 11, 12, 14 and 16) must be dismissed based on the "fellow officer rule."  Fourth, Officers Puerto and Martinez contend that qualified immunity, the existence of probable cause and the absence of legal cause shield them from all of Valdes's claims against them arising from the Thanksgiving Day incident (Counts 8 through 16).  Fifth, the Officers argue that the concert of action claims as pled (Counts 4 and 12) are not recognized under Florida law.  Additionally, Officer Sanchez moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process.

Miami-Dade County seeks dismissal of the sole claim against it in Count 17 on the basis that Officers Martinez and Puerto had probable cause to arrest Valdes, and Florida's sovereign immunity statute, Fla. Stat. § 768.28(9)(a), bars the claim.

## STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff."  Harris v. United Auto. Ins. Grp., Inc., 579 F.3d 1227, 1230

(11th Cir. 2009) (citing <u>Spain v. Brown & Williamson Tobacco Corp.</u>, 363 F.3d 1183, 1187 (11th Cir. 2004)).  To survive a motion to dismiss, a complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  The facts in the complaint must "nudge[] the[] claims across the line from conceivable to plausible."  <u>Id.</u> at 570.  Federal Rule of Civil Procedure 12(b)(6) "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  <u>Id.</u> at 556.  It is sufficient "if the complaint succeeds in identifying facts that are suggestive enough to render [the element] plausible."  <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1295-96 (11th Cir. 2007).

With regard to dismissal pursuant to Fed. R. Civ. P. 12(b)(5), "[i]n actions removed from state court, the sufficiency of service of process prior to removal is determined by the law of the state from which the action was removed."  <u>Rentz v. Swift Transp. Co., Inc.</u>, 185 F.R.D. 693, 696 (M.D. Ga.  1998).  However, "[a]fter removal, the sufficiency of service of process is determined according to federal law."  <u>Id.</u>; <u>see also</u> 28 U.S.C. § 1448.[2]

## DISCUSSION

**A. The Officers' Motion to Dismiss**

### 1. Counts 1 through 7 against Officers Sanchez, Lopez and Martinez (February 21, 2008 incident)

In support of his claims for common law battery and § 1983 excessive force asserted

---

[2] Title 28, United States Code, Section 1448, reads, in pertinent part:

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

28 U.S.C. § 1448.

against Officers Sanchez, Lopez and Martinez in Counts 1 through 7 arising from the February 21, 2008 incident, Valdes alleges that: "Officer Martinez and Officer Sanchez grabbed Plaintiff's head and pushed it against the elevator wall;" "Officer Martinez removed Plaintiff's glasses and the Officers pushed Plaintiff onto the floor;" and "As Defendants began kicking Plaintiff about his body, including his ribs, legs and arms, Officer Martinez left, leaving the other two to kick Plaintiff about his body." Amended Complaint at ¶¶ 14, 21-22. Valdes also alleges that Officers Sanchez, Lopez and Martinez "acted in bad faith and/or with malicious purpose and/or in a manner exhibiting wanton or wilful [sic] disregard of human rights and safety." Id. at ¶¶ 82, 92, 102, 112. Officers Sanchez, Lopez and Martinez argue that Counts 1 through 7 should be dismissed because Valdes has not met the Twombly/Iqbal pleading standards and cannot, therefore, overcome their defenses of sovereign immunity as to the common law battery claims and qualified immunity as to the § 1983 claims for excessive force.

### i. Sovereign Immunity

With respect to the battery claims (Counts 1 through 4),[3] the Officers contend that "an officer is individually liable for battery only where the force employed is clearly excessive." Officers' Motion to Dismiss [D.E. 17 at 6] (citing City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996)). The Officers further argue that they have sovereign immunity unless they are alleged to have acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Id. (citing Fla. Stat. § 768.28(9)(a)). Taking Valdes's allegations as true and construing them in the light most favorable to him, both arguments fail.

With regard to the excessive use of force argument, the standard is "whether the amount of force used was reasonable under the circumstances." City of Miami, 672 So. 2d at 47. Valdes

---

[3] Count 4 is a concert of action for battery claim.

alleges that, while in handcuffs, the officers pushed his head against the wall and that, after removing the handcuffs they pushed him to the floor and kicked him even though he did not physically resist or threaten the officers in anyway.  Amended Complaint at ¶¶ 12-27.  Given these allegations, it cannot be said as a matter of law that the force to which Valdes was subjected was reasonable under the circumstances.  The malice argument also fails given the allegations that Officers Sanchez, Lopez and Martinez acted with malice.  Id. at ¶¶ 82, 92, 102, 112.

Accordingly, sovereign immunity does not bar the common law battery claims at the motion to dismiss stage.

### ii. Qualified Immunity

The Officers also argue that the § 1983 excessive force claims (Counts 3 through 7) are barred by qualified immunity because Valdes fatally fails to allege that each of them individually "beat, kicked, or used excessive force against Plaintiff" or to allege "conduct on the part **of any individual officer** that could have produced the injuries (bruising, **burns and lacerations**) described in the complaint."  Officers' Motion to Dismiss [D.E. 17 at 7] (emphasis in original).  However, the Eleventh Circuit has expressly rejected the Officers' argument.  See Velazquez v. City of Hialeah, 484 F.3d 1340, 1341-42 (11th Cir. 2007) ("[W]e expressly rejected the argument that the force administered by each defendant in [a] collective beating must be analyzed separately to determine which of the defendants' blows, if any, used excessive force.").  Moreover, the Officers' reliance on Abella v. Simon, 482 Fed. App'x 522, 523-24 (11th Cir. 2012), for the proposition "that a plaintiff must provide detailed allegations **against each individual defendant** to survive a motion to dismiss based on qualified immunity," Officers' Motion to Dismiss [D.E. 17 at 7] (emphasis in original), is misplaced because Abella was a §

1983 First Amendment case, not a § 1983 excessive force case.

Officer Martinez also argues that the claim against him is defective because Valdes does not allege any physical contact with him.  However, "[i]t is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983.  Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." Fundiller v. City of Cooper City, 777 F.2d 1436, 1441-42 (11th Cir. 1985).

Finally, the Officers argue that Valdes's allegations are insufficient to state a claim for § 1983 excessive force because the "police are entitled to use some force when they are arresting and processing someone who had just been arrested."  Officers' Motion to Dismiss [D.E. 17 at 6].  However, taking Valdes's allegations as true and construing them in the light most favorable to him, he has sufficiently alleged a § 1983 excessive force claim because he was arrested for a misdemeanor charge, he was not resisting arrest or attempting to escape, he was in handcuffs, and he posed no threat to the Officers.  See King v. Reap, 269 Fed. App'x 857, 859 (11th Cir. 2008) (when determining whether a certain amount of force is reasonable, "lower courts should factor into the calculus of reasonableness the severity of the crime, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting or attempting to escape").

In light of the foregoing, the Officers' argument that Valdes's allegations supporting Count 1 through 7 are not specific enough under the Twombly/Iqbal pleading standards to overcome their sovereign immunity and qualified immunity defenses fails.

**2. Counts 11 and 16 against Officer Puerto (Thanksgiving Day incident)**

In support of his claims for malicious prosecution under state law and § 1983 against

Officer Puerto arising from the Thanksgiving Day incident (Counts 11 and 16), Valdes alleges that Puerto: acted with malice; participated in fabricating a factual basis for Defendant's stop and detention; and arrested him despite knowing that the facts he fabricated, or assisted in fabricating, would be put down to writing in sworn police reports and trigger the opening of a criminal prosecution against Valdes. Amended Complaint at ¶¶ 201, 203, 250, 253.

Officer Puerto contends that these facts are also insufficient under the Twombly/Iqbal pleading standards. According to Officer Puerto, Valdes "fails to allege any reason why Officer Puerto would act maliciously towards him, as Officer Puerto was not involved in the earlier incident and is not alleged to have even known about it," and the "Amended Complaint and Arrest Affidavit simply do not permit a reasonable inference that Officer Puerto acted out of malice or, indeed, that he acted on anything except the information that Officer Martinez gave him." Officers' Motion to Dismiss [D.E. 17 at 11].   However, under Rule 9(b) of the Federal Rules of Civil Procedure, malice "may be alleged generally." Fed. R. Civ. P. 9(b). Taking Valdes's allegations as true and construing them in the light most favorable to him, including his general allegation that Officer Puerto acted with malice, Valdes has adequately pled the malice element of his common law and § 1983 malicious prosecution claims against Puerto.

### 3. Counts 9, 11, 12, 14 and 16 against Officer Puerto (Thanksgiving Day incident)

Relying on Florida's "fellow officer rule," Officer Puerto argues that the claims asserted against him for false arrest and imprisonment and malicious prosecution under state law and § 1983 must be dismissed because he had probable cause to arrest Valdes based on the information supplied to him by Officer Martinez.

The "'fellow officer rule' states that, when an arresting officer was absent for a significant portion of the events giving rise to probable cause, the arresting officer may rely upon

his fellow officer's judgment about probable cause." Williams v. Miami-Dade Police Dep't, 297 Fed. App'x 941, 946 (11th Cir. 2008).   However, the legitimacy of a stop, seizure or arrest depends on whether the officer supplying the information had the requisite probable cause.  See Berry v. State, 493 So.2d 1098, 1100 (Fla. 4th DCA 1986).  Thus, if the officer supplying the information does not have probable cause to make an arrest, the officer receiving the information is not shielded by the fellow officer rule, the arrest is invalid and any subsequent search violates the arrestee's Fourth Amendment rights.  Id.; see also Valderrama v. Rousseau, Southern District of Florida Case No. 11-24637-CIV-COOKE, D.E. No. 37 at 12 (reporting officer's lack of probable cause is "imputed" to arresting officer").

Here, Valdes alleges that multiple statements contained in the arrest affidavit that describe the interaction between Officer Martinez and Valdes while inside the Sedano's Market are untrue.  Amended Complaint at ¶¶ 59, 64-69.  These purportedly fabricated statements were allegedly used as the basis for Officer Puerto to arrest Valdes.  Id. at ¶¶ 179-184, 201.   Based on the foregoing authorities, Officer Puerto is not shielded by the fellow officer rule because Officer Martinez allegedly fabricated the reason for the arrest and his lack of probable cause is imputed to Officer Puerto.

Officer Puerto alternatively argues that the malicious prosecution claims against him should be dismissed because he gained independent probable cause with respect to the concealed weapon and resisting arrest without violence charges.  However, Officer Martinez's alleged lack of probable cause to set in motion Valdes's arrest by Officer Puerto cannot be cured in this fashion.  Hansen v. State, 385 So. 2d 1081, 1086 (Fla. 4th DCA 1980) ("Although a police officer may make a warrantless arrest without firsthand knowledge of a crime if he receives a communication from another officer who has probable cause, a deficiency in initial probable

cause cannot be rectified by the products of a search conducted after arrest.").

Given the foregoing, Officer Puerto is not shielded from the claims against him by Florida's "fellow officer rule."

### 4. Counts 8 through 16 against Officers Martinez and Puerto (Thanksgiving Day incident)

Officers Martinez and Puerto argue that the defense of qualified immunity shields them from liability for Valdes's § 1983 false arrest and imprisonment and malicious prosecution claims (Counts 13 through 16) and that the existence of probable cause negates the corresponding state law claims (Counts 8 through 12) because, when taking all of the complaint allegations as true, they had independent probable cause to arrest and prosecute Valdes for carrying a concealed firearm without a permit and resisting arrest without violence. The Officers further argue that the malicious prosecution common law claims fail because the individual officers are not responsible for the State Attorney's decision to prosecute Valdes.

### i. Applicable Law -- § 1983 Claims

With respect to the § 1983 claims (Counts 13 through 16), "[q]ualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Vineyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002); see also Brown v. City of Huntsville, Ala., 608 F.3d 724, 733 (11th Cir. 2010) (same). A public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (citing Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991)). Once it has been established that an official "was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." Holloman v. Harland, 370 F.3d 1252, 1264

(11th Cir. 2004).  To overcome qualified immunity, the plaintiff must show 1) that the defendant violated a constitutional right, and 2) that this right was clearly established at the time of the alleged violation.  Id. (citing Wilson v. Layne, 526 U.S. 603, 609 (1999)).  "Clearly established" means that "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  Corey Airport Servs. Inc. v. Decosta, 587 F.3d 1280, 1285 (11th Cir. 2009).  The issue of qualified immunity should be resolved at the earliest stage of litigation.  Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) ("It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right.").

Valdes does not dispute that Officers Martinez and Puerto were acting within the scope of their discretionary authority.  Therefore, the burden shifts to him to show that qualified immunity is not appropriate as to the false arrest and malicious prosecution § 1983 claims.  See Dukes v. Miami-Dade County, 232 Fed. App'x 907, 911 (11th Cir. 2007) (stating that to be eligible for qualified immunity the defendants "must show that they were acting within their discretionary authority" and "[t]he next step of [the court's] analysis requires the Plaintiffs to show that qualified immunity is not appropriate").

### ii. Applicable Law – Common Law Claims

With respect to the state law claims (Counts 8 through 12), the existence of probable cause precludes common law claims for both false arrest and malicious prosecution.  See Mailly v. Jenne, 867 So. 2d 1250, 1251 (Fla. 4th DCA 2004) (probable cause acts as a "complete bar" to false arrest actions); Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004) (one of the elements that the plaintiff must establish for a common law malicious prosecution claim is "the absence of probable cause for the original proceeding").  The plaintiff must also establish

that the defendant "was the legal cause of the original proceeding." Kingsland, 382 F.3d at 1234.

### iii. Application of Law to the § 1983 and Common Law False Arrest Claims (Counts 8, 9, 12, 13 and 14)[4]

#### a. § 1983 False Arrest Claims (Counts 13 and 14)

An officer is entitled to qualified immunity with regard to a § 1983 false arrest claim "where that officer had arguable probable cause, that is, where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiff."   Davis v. Williams, 451 F.3d 759, 762-63 (11th Cir. 2006) (citing Kingsland, 382 F.3d at 1232).   Here, Valdes alleges that Officer Martinez fabricated the events that led to his arrest on Thanksgiving Day; that Officer Puerto did not conduct a reasonable investigation; that Officer Puerto included false statements in the arrest affidavit he prepared; and that Officers Martinez and Puerto both knew that he had a permit to carry his gun.  Amended Complaint at ¶¶ 35-80.  These allegations, taken as true and construed in the light most favorable to Valdes, vitiate the Officers' contention that they had arguable probable cause to arrest him.  See Kingsland, 382 F.3d at 1232 ("Because we find that there are genuine issues of material fact as to whether the defendants (1) manufactured probable cause, (2) failed to conduct a reasonable investigation, and (3) ignored certain facts within their knowledge, we cannot conclude as a matter of law that probable cause existed to arrest Kingsland.").

Nevertheless, Officers Martinez and Puerto argue that a Franks[5] analysis of the arrest affidavit would demonstrate that probable cause still existed after removing the alleged misrepresentations and omissions.  Specifically, they argue that the statement in the affidavit that Valdes straightened his arms to resist being arrested stands unrebutted by Valdes's allegations. However, Valdes's allegation that it was Officer Martinez's purported lies that led to his arrest in

---

[4] Count 12 is a concert of action for false arrest and malicious prosecution claim.
[5] Referring to Franks v. Delaware, 438 U.S. 154, 171-72 (1978).

the first place, if true, would deprive the affidavit of probable cause regardless of whether he did or did not straighten his arms at the time of the arrest. Indeed, one cannot be guilty of resisting arrest if the arrest itself is not lawful. Jay v. State, 731 So. 2d 774, 775 (Fla. 4th DCA 1999).

Accordingly, Officers Martinez and Puerto's defense of qualified immunity to the § 1983 false arrest claims fails at the motion to dismiss stage.

### b. Common Law False Arrest Claims (Counts 8, 9 and 12)

The undersigned's determination that Valdes has sufficiently alleged a lack of probable cause applies to his common law false arrest claims as well.   See Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) ("the standard for determining whether probable cause exists is the same under Florida and federal law").

Accordingly, the Officers' defense that the existence of probable cause negates Valdes's common law false arrest claims fails at the motion to dismiss stage.

### iv. Application of Law to the § 1983 and Common Law Malicious Prosecution Claims (Counts 10, 11, 12, 15, and 16)[6]

### a. § 1983 Malicious Prosecution Claims (Counts 15 and 16)

"To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; *and* (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." Bloom v. Alvereze, 498 Fed. App'x 867, 875 (11th Cir. 2012) (citations omitted).   With respect to the second prong, the Eleventh Circuit has stated:

> A plaintiff must prove a seizure related to the prosecution and the plaintiff's arrest cannot serve as the required deprivation of liberty because it occurs prior to the arraignment. Normal conditions of pretrial release, such as bond and a summons to appear, do not constitute a seizure violative of the Fourth Amendment, barring some significant, ongoing deprivation of liberty, such as restriction on the defendant's right to travel interstate.

---

[6] Count 12 is a concert of action for false arrest and malicious prosecution claim.

Id. (citing Kingsland, 382 F.3d at 1235-36).

The only deprivation that Valdes alleges occurred after his arrest was that he remained in jail until the time he posted bond. Amended Complaint at ¶ 74. However, posting bond is "a normal condition of pretrial release." Bloom, 498 Fed. App'x at 876. Because Valdes has made no allegations relating to a significant or ongoing deprivation of liberty, such as travel restrictions, imposed as a condition of his release, his § 1983 malicious prosecution claims cannot stand. Id.

Accordingly, Counts 15 and 16 should be dismissed without prejudice.

### b. Common Law Malicious Prosecution Claims (Counts 10, 11 and 12)

To prevail on a common law claim for malicious prosecution, a plaintiff must establish the following elements:

> (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

Kingsland, 382 F.3d at 1234. Officers Martinez and Puerto only contest the second and fourth elements of the common law malicious prosecution claims against them.

With respect to the second element, the Officers argue that "individual officers are not responsible for the State Attorney's decision to commence legal proceedings." Motion to Dismiss [D.E. 17 at 16]. However, the Eleventh Circuit has expressly rejected this argument under similar circumstances:

> Although we have held that defendant police officers were not the legal cause of the original proceeding where there was no evidence that they had anything to do with the decision to prosecute or that they had "improperly influenced" that decision, such is not the case here. . . . We

17

> recently held . . . that a plaintiff established a § 1983 claim where the police officer responsible for his arrest allegedly fabricated evidence against him. Williams's malicious prosecution claim against Baaske is based upon Baaske's alleged act of fabricating evidence, which resulted in the prosecutor being presented with false and misleading evidence. Therefore, Williams satisfied the common law element that Baaske was the legal cause of the original prosecution.

Williams v. Miami-Dade Police Dep't, 297 Fed. App'x 941, 947 (11th Cir. 2008).  Like the plaintiff in Williams, Valdes has satisfied the legal cause element of the tort of malicious prosecution by alleging that the Officers "acquiesc[ed] to and participat[ed] in the fabrication of the underlying facts relating to Plaintiff, including fabricating events to justify the stop and seizure of Plaintiff and then [had] him arrested, which [they] knew would be documented in falsified police reports and then provided to the State Attorney." Amended Complaint at ¶¶ 191, 201.

With respect to the fourth element, the Officers argue that the claims must be dismissed given that he "cannot establish the absence of probable cause to commence the proceeding . . . [b]ecause, under Franks, there was probable cause to arrest Plaintiff for resisting an officer without violence, it follows that there was probable cause to prosecute Plaintiff for this offense." Officers' Motion to Dismiss [D.E. 17 at 16].  However, this contention fails for the reasons discussed in connection with the Officers' similar argument with respect to the § 1983 false arrest claims.

Accordingly, the Officers' defenses that Valdes failed to satisfy the causation element and that the existence of probable cause negates Valdes's common law malicious prosecution claims fail at the motion to dismiss stage.

### 5.  Counts 4 and 12 – Concert of Action Claims arising from both incidents.

The Officers argue that Valdes's "concert of action" claims in Count 4 (for the February

21, 2008 incident) and Count 12 (for the Thanksgiving Day incident) should be dismissed because "concert of action" is not a valid claim for battery, false arrest and malicious prosecution, and that, in any event, Valdes makes merely conclusory allegations and fails to allege a common plan.

With regard to the Officers' first contention, the Florida Supreme Court has stated, "[t]orts that are several, separate, and independent acts when committed do not become joint by the subsequent union or intermingling of their consequences where no concert of tortious action or consequence is intended by the parties or implied by law." Symmes v. Prairie Pebble Phosphate Co., 66 Fla. 27, 34 (1913). However, "[a]n implied concert of action between tortfeasors may grow out of the status or relation of the parties and the conditions under which the tortious acts proximately cause an actionable injury." Id. Liability under concert of action was more recently defined as follows:

> All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify or adopt his acts done for their benefit, are equally liable with him.

Vernon v. Medical Mgmt. Assocs. of Margate, Inc., 912 F. Supp. 1549, 1556 (S.D. Fla. 1996). In Vernon, the court acknowledged the viability of the concert of action doctrine for a battery claim, but dismissed the claim due to plaintiff's failure to properly allege that the defendants acted in concert with one another to commit the alleged battery. Id. By contrast, in Valderrama v. Rousseau, Case No. 11-24637-CIV-COOKE, D.E. 37 at 14-15, the court determined that the combined actions of officers who "personally and actively participated in 'seizing' Plaintiff," provide the necessary causal link for a concert of action claim. Id. at 14; see also Btesh v. City of Maitland, No. 6:10–cv–71–Orl–19DAB, 2010 WL 2179126, at *4 (M.D. Fla. June 1, 2010) (noting that a defendant may be liable for a battery committed by someone else under the concert

19

of action doctrine).  Other courts in Florida have similarly applied the "concert of action" theory in the context of joint tort liability. See Morton v. Abbott Labs., 538 F. Supp. 593, 596 (M.D. Fla. 1982); Ray v. Cutter Labs., Div. of Miles, Inc., 744 F. Supp. 1124, 1127 (M.D. Fla. 1990); Acadia Partners, L.P. v. Tompkins, 759 So.2d 732, 736-37 (Fla. 5th DCA 2000).  These legal authorities clearly show that concert of action claims are viable under Florida law.

The Officers' second contention—that Valdes has failed to allege a common plan--is equally flawed.  Initially, as found in Valderrama, the relationship of defendants who were fellow officers, "provides an 'implication' that there is an existence of concert of action." Valderrama, Case No. 11-24637, D.E. 37 at 15.  Further, with respect to the February 21, 2008 incident, Valdes alleges that Officers Martinez, Lopez and Sanchez battered him in concert with each other, gave each other substantial assistance or encouragement knowing that their conduct constituted a breach of duty, and acted in pursuance of a common plan or design to commit the tortious act of the battery.  Amended Complaint at ¶¶ 113-15.  With respect to the Thanksgiving Day incident, Valdes alleges that Officers Martinez and Puerto knew that their conduct constituted a breach of duty, that they took an active part in the conduct and/or provided aid or encouragement to each other, and that they gave substantial assistance to each other.  Id. at ¶¶ 209-12.

### 6. Service on Sanchez

Officer Sanchez moves to dismiss the Amended Complaint for insufficient service under Rule 12(b)(5) of the Federal Rules of Civil Procedure because Valdes did not serve him within the time period required by Florida Rule of Civil Procedure 1.070(j).  A review of the procedural facts related to service on Sanchez shows this argument to be disingenuous at best.

Valdes filed his initial Complaint in state court on February 21, 2012 and his attempted

service on Sanchez on May 23, 2012 was, as stipulated by the parties, improper. Unopposed Motion to Quash [D.E. 7 at 1-2]. Valdes filed his Amended Complaint on May 31, 2012 and the action was removed on June 29, 2012. Notice of Removal [D.E. 1]; Amended Complaint [D.E. 1-2 at 90-139]. In his Unopposed Motion to Quash Service filed on July 30, 2012, Officer Sanchez stated that the parties had agreed that the "motion be filed so the Court could re-issue a summons and Plaintiff could attempt service of process upon Plaintiff's counsel's return to the jurisdiction from his vacation." Unopposed Motion to Quash [D.E. 7 at 2]. A new summons was issued on August 17, 2012. Summons as to Sanchez [D.E. 12]. The undersigned granted the Unopposed Motion to Quash on August 29, 2012 [D.E. 14]. By his own admission, Officer Sanchez was properly served on October 18, 2012. Officers' Motion to Dismiss [D.E. 17 at 20]. Officer Sanchez argues now, however, that the "the claims against Officer Sanchez were jurisprudentially dead at the time of removal and cannot be revived now." Id.

As noted above, after an action has been removed from state court, "the sufficiency of service of process is determined according to federal law." Rentz v. Swift Transp. Co., Inc., 185 F.R.D. 693, 696 (M.D. Ga. 1998); 28 U.S.C. § 1448. Given his representations in the Unopposed Motion to Quash and his agreement to postpone service, Officer Sanchez cannot now be heard to complain that service on him after removal was untimely under Florida Rule of Civil Procedure 1.070(j).

Having addressed all of the Officers' contentions, the undersigned concludes that their Motion to Dismiss should be denied except for the § 1983 malicious prosecution claims against Officers Martinez and Puerto (Counts 15 and 16).

### B. Miami-Dade County's Motion to Dismiss Count 17

Miami-Dade County seeks dismissal of the sole claim against it for false arrest and

21

imprisonment arising from the Thanksgiving Day incident because Officers Martinez and Puerto had probable cause to arrest Valdes and Florida's sovereign immunity statute, Fla. Stat. § 768.28(9)(a), bars the claim.  As discussed in connection with the Officers' Motion to Dismiss, dismissal on the basis of probable cause is not appropriate.

With regard to sovereign immunity, Miami-Dade County argues that Valdes's claim is barred because: 1) Valdes cannot plead in Count 17 that Officers Martinez and Puerto acted without malice or bad faith while pleading that they did so in Counts 8 and 9; and 2) Officers Martinez and Puerto's alleged actions can only be construed as malicious, bad faith, and wanton and willful acts.  For the reasons discussed below, dismissal based on sovereign immunity is not proper at this stage of the litigation.

Florida Statute § 768.28(9)(a) waives sovereign immunity for a governmental entity in certain types of tort and negligence actions.  The statute explicitly reserves sovereign immunity for actions committed by an employee "while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Fla. Stat. § 768.28(9)(a). The sovereign immunity provision also states that "[n]o officer, employee, or agent of the state. . . shall be . . . named as a party defendant . . . unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Id.  Thus, "[i]n any given situation either the agency can be held liable under Florida law, or the employee, but not both."  McGhee v. Volusia Cnty., 679 So. 2d 729, 733 (Fla. 1996).

**1. Pleading in the Alternative**

In Count 17, Valdes alleges that Officers Martinez and Puerto were acting in the course

22

and scope of their employment, "*without* malice or without ill will or bad faith," and in the interest of their employer, Miami-Dade County, when they falsely arrested and imprisoned Valdes on November 27, 2008.   Amended Complaint at ¶¶ 263-264 (emphasis in original). However, Valdes alleges the opposite in Counts 8 and 9 against Officers Martinez and Puerto, respectively, stating that each "acted in bad faith and/or with malicious purpose and/or in a manner exhibiting wanton or wilful [sic] disregard of human rights and safety." Id. at ¶¶ 160, 172.

Contrary to Miami-Dade County's argument, however, Valdes is allowed to make contradictory allegations given that Rule 8 of the Federal Rules of Civil Procedure permits pleading in the alternative. Fed. R. Civ. P. 8(e)(2).  Further, the "nature of Florida Statutes § 768.28 tends to require a plaintiff to plead alternative and inconsistent claims against a governmental entity and its employees." Petithomme v. Cnty. of Miami Dade, No. 11-20525-CIV, 2011 WL 3648622, *3 n.2 (S.D. Fla. Aug. 16, 2011).  In fact, "section 768.28 tends to cause plaintiffs to bring 'mutually exclusive' claims in the alternative against a governmental entity and its employees because the state is immune from acts committed with bad faith or malice, while employees must have acted with bad faith or malice to be held personally liable." Reyes v. City of Miami Beach, No. 07-22680-CIV, 2007 WL 4199606, *3 (S.D. Fla. Nov. 26, 2007).  Though Valdes cannot ultimately prevail on both of his claims against Miami-Dade County and the Officers, he is not foreclosed from making inconsistent allegations at the pleading stage.

### 2. The Allegations in Count 17

Miami-Dade County also argues that sovereign immunity bars Valdes's claim because Officers Martinez and Puerto's alleged actions of fabricating a reason for arresting him and then

23

following through on that arrest cannot be construed as anything other than malicious, bad faith, and wanton and willful acts, notwithstanding Valdes's allegations to the contrary in Count 17.

However, Officers Martinez and Puerto's alleged actions do not necessarily lend themselves to a singular reading involving bad faith, malicious purpose, or a wanton and willful disregard of human rights, safety, or property.  The cases that Miami-Dade County cites in support of its argument are inapposite as they involve instances of excessive force or battery claims in which the officers clearly showed a wanton disregard for the plaintiff's safety, whereas the Thanksgiving Day event did not involve any acts of violence or excessive force.  See Blue v. Miami-Dade Cnty., No. 10-23599-CIV, 2011 WL 2447699, at *3 (S.D. Fla. June 15, 2011) (teacher kicked a five year old in the mouth for using the bathroom without permission); Thomson v. Davenport, et al., No. 09-21708-Civ-Gold/McAliley, D.E. 59 at 10 (S.D. Fla. June 16, 2010) ("Officer Davenport, without provocation, shot Plaintiff three times in the area of the left breast with his Taser gun notwithstanding the fact that she posed no threat or flight risk."); Asprilla v. Trinidad,  No. 6:09-cv-101-Orl-28KRS, 2009 WL 2151156, at *4 (M.D. Fla. July 14, 2009) (plaintiff pled that defendant "intentionally" pushed her down a flight of stairs); Dukes, et al. v. Miami Dade Cnty., et al., No. 05-22665-Civ–Huck/Simonton, D.E. 103 at 2, 4 (S.D. Fla. July 5, 2006) (officers punched, stomped and kicked plaintiff when he surrendered himself after officers shot him in the chest).  The ability to arrest Valdes is among the tools at an officer's disposal that may be used in good faith, as opposed to the violent actions alleged in the cases that Miami-Dade County sets forth in support of its argument. Vasquez v. City of Miami Beach, 895 F. Supp. 2d 1275, 1279 (S.D. Fla. 2012) (stating that the officer's actions of arresting, handcuffing and taking Plaintiff to the police station, "could have been within the scope of his employment").

Further, in order to make the determination that Miami-Dade County is asking for, the undersigned would have to make inferences in its favor, rather than "construing [the allegations] in the light most favorable to the plaintiff." Harris, 579 F.3d at 1230. Therefore, it would be inappropriate to read from the face of the Amended Complaint that Officers Martinez and Puerto necessarily acted with bad faith or a malicious purpose.

Accordingly, Miami-Dade County's Motion to Dismiss should be denied.

## V. Conclusion

In accordance with the foregoing, the undersigned RESPECTFULLY RECOMMENDS that the Officers' Motion to Dismiss [D.E. 17] be GRANTED IN PART without prejudice as to Counts 15 and 16 only and be otherwise DENIED; and Miami-Dade County's Motion to Dismiss [D.E. 18] be DENIED.

The parties have **fourteen (14) days** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable Federico A. Moreno, Chief United States District Judge. See Local Magistrate Rule 4(b). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED at Miami, Florida, this 14th day of June, 2013.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Chief United States District Judge Federico A. Moreno
Counsel of Record