UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-22426-CIV-MORENO/O'SULLIVAN

ELOY VALDES,

       Plaintiff,

v.

MIAMI-DADE COUNTY, THOMAS
MARTINEZ, ORLANDO SANCHEZ,
WILLIAM LOPEZ and DANIEL PUERTO,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on the parties' cross-motions for summary judgment. See Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81, 3/4/15); Plaintiff's Motion for Summary Judgment (DE# 83, 3/4/15). This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) for a report and recommendation. See Order of Referral to Magistrate Judge O'Sullivan for All Pretrial Proceedings (DE# 117, 4/30/15). Having reviewed the applicable filings and the law, the undersigned respectfully RECOMMENDS that the Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81, 3/4/15) and the Plaintiff's Motion for Summary Judgment (DE# 83, 3/4/15) be **GRANTED in part and DENIED in part** for the reasons stated herein.

## BACKGROUND[1]

On February 21, 2012, Eloy Valdes (hereinafter "plaintiff") filed the instant action against Sergeant Thomas Martinez (hereinafter "Sergeant Martinez"), Officer Orlando Sanchez, Officer William Lopez and Miami-Dade County, Florida in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County. See Complaint (DE# 1-2 at 5-18, 6/29/12).

On May 31, 2012, the plaintiff amended the complaint and added Officer Daniel Puerto (hereinafter "Officer Puerto") as a defendant to this action. See Amended Complaint and Demand for a Jury Trial (DE# 1-2 at 24-69, 6/29/14) (hereinafter "Amended Complaint"). The Amended Complaint asserted the following causes of action: battery against Officer Sanchez, Officer Lopez and Sergeant Martinez (Counts 1-3), concert of action for battery and § 1983 claims for excessive force against the same three officers (Counts 4-7), false arrest and imprisonment against Officer Puerto and Sergeant Martinez (Counts 8 and 9), malicious prosecution against Officer Puerto and Sergeant Martinez (Counts 10 and 11), concert of action for false arrest and malicious prosecution against Officer Puerto and Sergeant Martinez (Count 12), § 1983 claims for false arrest and imprisonment and malicious prosecution against Officer Puerto and Sergeant Martinez (Counts 13-16) and false arrest and imprisonment against Miami-Dade County (Count 17). Id.

---

[1] Some of the documents filed by the parties contain multiple page numbers. To avoid confusion, the undersigned will use the page numbers automatically assigned by the Court's CM/ECF system, which appear on the upper right hand corner of each document, when citing to the record.

The causes of action in the Amended Complaint stem from two incidents. The plaintiff alleges that on February 21, 2008, he was beaten at the Hammocks District Police Station by Sergeant Martinez, Officer Sanchez and Officer Lopez. The plaintiff further alleges that on November 27, 2008 (hereinafter "Thanksgiving Day incident"), he was arrested without probable cause or arguable probable cause by Sergeant Martinez and Officer Puerto at a Sedano's supermarket.

On June 29, 2012, the defendants removed the instant action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1441(a)-(b) and 1446. See Notice of Removal (DE# 1, 6/29/14). This Court has original jurisdiction over the claims in this case based on federal question jurisdiction pursuant to 28 U.S.C. § 1331.

On March 4, 2015, Officer Thomas Martinez, Officer Daniel Puerto and Miami-Dade County (collectively, "defendants")[2] moved for partial summary judgment on Counts 8-14 and 17 of the Amended Complaint. See Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81, 3/4/15).[3] The plaintiff filed a memorandum of law in opposition to the defendants' summary judgment motion on March 25, 2015. See Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 98, 3/25/15). The defendants filed their reply

---

[2] In this Report and Recommendation, the term "defendants" will refer to the moving defendants: Sergeant Martinez, Officer Puerto and Miami-Dade County.

[3] Officers William Lopez and Orlando Sanchez did not move for summary judgment.

on April 6, 2015. <u>See</u> Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Reply to Plaintiff's Response to Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 108, 4/6/15).

On March 4, 2015, the plaintiff moved for summary judgment on the following issues: (1) Officers Martinez, Sanchez and Lopez are not entitled to qualified immunity as to the February 21, 2008 incident; (2) no arguable probable cause existed to arrest the plaintiff during the Thanksgiving Day incident and (3) the plaintiff has fully complied with the notice and service provisions of section 768.28, Florida Statutes, with respect to his false arrest claim[4] against Miami-Dade County. <u>See</u> Plaintiff's Motion for Summary Judgment (DE# 83, 3/4/15). The defendants filed a response in opposition to the plaintiff's motion on March 25, 2015. <u>See</u> Defendants Thomas Martinez, Orlando Sanchez, William Lopez, Daniel Puerto, and Miami-Dade County's Response to Plaintiff's Motion for Summary Judgment (DE# 96, 3/25/15). The plaintiff filed his reply on April 6, 2015. <u>See</u> Plaintiff's Reply to Defendants, Thomas Martinez, Orlando Sanchez, William Lopez, Daniel Puerto, and Miami-Dade County's, Response to Plaintiff's Motion for Summary Judgment (DE# 107, 4/6/15). The parties' motions for summary judgment (DE# 81, 83, 3/25/15) are ripe for consideration.

---

[4] The plaintiff's motion incorrectly refers to this count as a "battery claim," however the only claim against Miami-Dade County is for false arrest and imprisonment (Count 17).

**<u>FACTS</u>**[5]

**A**.   **The February 21, 2008 Incident**

On February 21, 2008, the plaintiff was arrested at a gas station by Officers Polack and Julian Chica for resisting without violence. He was later transported to the Hammocks District Police Station. The plaintiff was not injured in the arrest or while he was driven to the police station.

Upon arriving at the police station, a police officer removed the plaintiff from the police car. The plaintiff was upset because he believed his arrest was unwarranted. As the plaintiff walked towards the station, he loudly stated, "man . . . fuc****. . . this sh** sucks" in the presence of several police officers. <u>See</u> Plaintiff's Verified Statement in Support of his Motion for Summary Judgment (DE# 85-1 at ¶3, 3/4/15); Plaintiff's Statement of Undisputed Facts in Support of His Motion for Summary Judgment (DE# 84 at 2, 3/4/15). After the plaintiff made this statement, Sergeant Martinez, Officer Lopez and Officer Sanchez grabbed the plaintiff and rushed him into an elevator.[6]

---

[5] The  Eleventh Circuit has noted that "what is considered to be the 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1486 (11th Cir. 1996).

[6] The defendants dispute almost all of the facts concerning the February 21, 2008 incident. According to the defendants, the plaintiff "became unruly and belligerent while he was seated with other prisoners in the sallyport area." <u>See</u> Defendants' Response to Plaintiff's Statement of Undisputed Material Facts (DE# 97 at ¶2, 3/25/15). "For security and safety purposes, Sergeant Martinez[, with the assistance of Officer Sanchez] took [the plaintiff] inside the station, separating him from the other arrestees." <u>Id.</u> at ¶¶3-4. The officers placed the plaintiff inside an interview room. <u>Id.</u> at ¶5. A third officer, Officer Lopez, entered the interview room to retrieve the plaintiff's property. <u>Id.</u> at ¶6. None of the officers pushed, hit, kicked or punched the plaintiff. <u>Id.</u> at ¶7.

According to the plaintiff, Sergeant Martinez smashed his head and face against the elevator wall. He told the plaintiff he was not going to allow the plaintiff to come into the police station and disrespect the officers and they were going to show the plaintiff how the officers do it "in [their] house." Sergeant Martinez then removed the plaintiff's handcuffs.[7] Sergeant Martinez used his forearm to push the plaintiff's head and face into the wall. The plaintiff heard the officers discussing where they were going to take the plaintiff. The officers were also using hand signals and the plaintiff was scared for his safety.

When the elevator door opened, the officers took the plaintiff to an interview room. Sergeant Martinez removed the plaintiff's sunglasses and the officers immediately "jumped" the plaintiff, knocking him to the floor. See Plaintiff's Verified Statement in Support of his Motion for Summary Judgment (DE# 85-1 at ¶6, 3/4/15). The plaintiff covered his head and face as the officers kicked him several times. Sergeant Martinez left the interview room while Officers Lopez and Sanchez continued to kick the plaintiff's "body, including [his] ribs, forearm, and legs." Id. at ¶¶6-7. The officers cursed at the plaintiff and called him a "fuc*** b[****]." Id. at 7. "Officer Lopez told [the plaintiff] to 'get up' and 'act like a man.' Officer Sanchez even squared up and told [the plaintiff] to be a man and fight back." Id.  The plaintiff did not fight back.

Afterwards, Officers Lopez and Sanchez sat the plaintiff on a bench and handcuffed him again. The plaintiff was left on the bench for several hours. The

---

[7] The plaintiff's Verified Statement (DE# 85-1) does not indicate when the plaintiff was first placed in handcuffs. The undersigned assumes the plaintiff was handcuffed upon his arrest at the gas station and remained handcuffed until Sergeant Martinez removed the handcuffs.

plaintiff's criminal case for which he was arrested was later closed. See Plaintiff's Verified Statement in Support of his Motion for Summary Judgment (DE# 85-1 at ¶9, 3/4/15).

**B.    The Internal Affairs Investigation**

On April 21, 2008, the plaintiff filed a complaint against all three officers with Internal Affairs (hereinafter "IA"). The plaintiff met with Sergeant Arteaga who interviewed him. The plaintiff provided a sworn statement and identified Sergeant Martinez, Officer Lopez and Officer Sanchez as the officers involved in the beating. Sergeant Arteaga told the plaintiff that IA would be conducting an investigation into the officers' conduct. During the investigation, all three officers provided sworn statements. Sergeant Martinez provided his sworn statement on September 5, 2008. The officers denied beating the plaintiff.

On November 24, 2008, a dispositional panel composed of high ranking Miami-Dade Police Department officers, signed a memorandum which did not sustain any of the excessive force allegations made by the plaintiff against Officer Lopez, Officer Sanchez and Sergeant Martinez. See Defendants' Response to Plaintiff's Statement of Undisputed Material Facts (DE# 97 at ¶8, 3/25/15). "The finding of the Internal Affairs Panel was approved by the department's chain of command on December 19-23, 2008." Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100 at 10, 3/25/15).

C.    **The Thanksgiving Day Incident**

On November 27, 2008, Thanksgiving Day, the plaintiff was at a Sedano's supermarket with his six-year-old daughter and his father making last-minute purchases for Thanksgiving dinner. The store was very crowded. While in the checkout line with his daughter, the plaintiff noticed a man who appeared familiar standing in line, one person ahead of him. The plaintiff approached the man and asked him if he was a police officer. The plaintiff learned that the man was Sergeant Martinez. Sergeant Martinez was off-duty, in plainclothes and did not have his police badge,[8] a gun or a radio on his person.

At no time did the plaintiff threaten Sergeant Martinez, raise his voice, scream or curse at Sergeant Martinez. <u>See</u> Verified Statement of Eduardo Valdes in Opposition of Defendants' Motion for Summary Judgment (DE# 103-1 at ¶¶18, 28, 3/25/15).[9] Sergeant Martinez asked the plaintiff more than once if the plaintiff "had any 'problem,' that he would go outside to resolve that 'problem.' [The plaintiff] told [Sergeant Martinez that he] wanted no problems, that it was Thanksgiving and [that he] was with [his] child."

---

[8] The parties dispute whether Sergeant Martinez was carrying his badge at the time. <u>See</u> Defendants' Response to Plaintiff's Statement of Undisputed Material Facts (DE# 97 at ¶¶15, 36, 3/25/15); Plaintiff's Verified Statement in Opposition of Defendants' Motion for Summary Judgment (DE# 99-1 at ¶18, 3/25/15). For summary judgment purposes, the undersigned will accept plaintiff's account that Sergeant Martinez did not have his badge on his person.

[9] For purposes of their summary judgment motion, the defendants do not dispute that the plaintiff "never grabbed hold of his firearm, never swore at Sergeant Martinez, and never threatened Sergeant Martinez" during the Thanksgiving Day incident. <u>See</u> Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (DE# 82 at ¶10, 3/4/15).

Plaintiff's Verified Statement in Support of his Motion for Summary Judgment (DE# 85-1 at ¶14, 3/4/15).[10]

No one in the Sedano's store, whether it was a patron, onlooker or employee, ever reacted in any manner to anything the plaintiff did or did not do during the incident. No crowd gathered to observe the discussion between the plaintiff and Sergeant Martinez. See Affidavit of Eduardo Valdes (DE# 86-1 at ¶12, 3/4/15).

At that point, the plaintiff's father approached the plaintiff and Sergeant Martinez. The plaintiff's father, who did not know who the man was in the checkout line,[11] told Sergeant Martinez that the plaintiff "was his son and [that they] did not want any trouble." Plaintiff's Verified Statement in Support of his Motion for Summary Judgment (DE# 85-1 at ¶16, 3/4/15). The plaintiff's father also told Sergeant Martinez that "if he kept harassing [the plaintiff], he was going to call the police." Id. Sergeant Martinez angrily told the plaintiff's father that he was the police. See Affidavit of Eduardo Valdes (DE# 86-1 at ¶¶13-14, 3/4/15). Sergeant Martinez then left the store.[12]

_____

[10] According to the plaintiff's father, he observed the plaintiff and Sergeant Martinez "whisper[ing] to each other" in the checkout line. See Affidavit of Eduardo Valdes (DE# 86-1 at ¶6, 3/4/15). The plaintiff's father then heard Sergeant Martinez state, "Let's take this outside." Id. at ¶7. Sergeant Martinez repeatedly yelled this statement at the plaintiff. Id. at ¶8. The plaintiff never raised his voice and remained calm. Id. at ¶9.

[11] The plaintiff's father later learned the man was Sergeant Martinez, one of the officers involved in the February 21, 2008 incident with his son.

[12] According to the defendants, "[a]s Sergeant Martinez turned to walk out of the store, [the plaintiff] uttered "Go ahead and leave, get you[r] p[****] a[**] back up, I got my backup right here b[****].'" Defendants' Response to Plaintiff's Statement of Undisputed Material Facts (DE# 97 at ¶¶34-35, 3/25/15). "As he said this, [the plaintiff] clutched a bulge underneath his shirt, which appeared to Sergeant Martinez to be a handgun." Id. at ¶39. However, for summary judgment purposes the defendants accept the plaintiff's version of the facts, that during his interaction with Sergeant Martinez, the plaintiff

"At no time while [the plaintiff] was inside the Sedano's did [he] ever reach for [his] gun; touch [his] gun, or make any motion or movements to make it appear as if [he] were doing so." Plaintiff's Verified Statement in Support of his Motion for Summary Judgment (DE# 85-1 at ¶19, 3/4/15). At "no time did [the plaintiff] make any reference to any gun, or insinuate that [he] had a gun or that [he] would use it." Id.[13]

Upon exiting the store, Sergeant Martinez "flagged down Officer Puerto." Defendants' Response to Plaintiff's Statement of Undisputed Material Facts (DE# 97 at ¶43, 3/25/15); Deposition of Martinez (DE# 82-2 at 2, 3/4/15). Officer Puerto was off-duty and had driven Sergeant Martinez to the Sedano's that day. "Sergeant Martinez explained to Officer Puerto that he had just been threatened by someone who appeared to have a firearm[14] inside the store and told Officer Puerto to grab his radio

---

"never grabbed hold of his firearm, never swore at Sergeant Martinez, and never threatened Sergeant Martinez." Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (DE# 82 at ¶10, 3/4/15). The plaintiff maintains that he never made those statements to Sergeant Martinez and he never gestured towards his firearm. See Verified Statement of Eduardo Valdes in Opposition of Defendants' Motion for Summary Judgment (DE# 103-1 at ¶¶29, 32, 3/25/15). The undersigned will accept the plaintiff's facts as true.

[13] The plaintiff's father also testified that he never observed his son reach for his gun or make any verbal threats. See Affidavit of Eduardo Valdes (DE# 86-1 at ¶¶10-11, 3/4/15).

[14] In his response to the defendants' statement of undisputed material facts, the plaintiff states: "As to ¶14, admit[ted] that Sgt. Martinez and Ofcr. Puerto both claim Sgt. Martinez told Ofcr. Puerto he had been "threatened" by "someone" appearing to have a gun and Sgt. Martinez directed Ofcr. Puerto to get his radio and handcuffs. That this was communicated by Sgt Martinez to Ofcr. Puerto before the arrest is denied." Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100 at 4, 3/25/15) (emphasis in original). The plaintiff was not present for this conversation between Sergeant Martinez and Officer Puerto and does not cite to any record evidence that this conversation

and his handcuffs." Defendants Thomas Martinez, Daniel Puerto and Miami-Dade

County's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (DE# 82

at ¶14, 3/4/15). Officer Puerto accompanied Sergeant Martinez into the supermarket

and Sergeant Martinez identified the plaintiff to Officer Puerto. Id. at 18.

In Sergeant Martinez and Officer Puerto's presence, the plaintiff's father called 9-

1-1.[15] During that call, the plaintiff's father told the 9-1-1 dispatcher that the plaintiff was

_____

never took place. At this point in the proceedings, the Court must accept the officers'
statements as true in the absence of any contradictory evidence creating a material
issue of fact. See Rich v. Dollar, 841 F.2d 1558, 1562 (11th Cir. 1988) (stating that
"[b]ecause this is an appeal of a denial of a motion for summary judgment the
plaintiff/appellee cannot rely on the factual basis alleged in his complaint. Rather, he
must respond to the factual showing made by the defendant/appellant in support of his
motion for summary judgment in such manner as to raise genuine issues of material
fact.").

[15] In a sworn statement, the plaintiff's father attests that the 9-1-1 call occurred in the
presence of both officers and that the officers heard what he was telling the dispatcher
because they were responding to the things the plaintiff's father was stating:

> 56. I also told the operator that a police major had told me that I should
> "call right away if anything happen[ed]" ["9-1-1" Recording at 2:53], that
> my son had made an "Internal Revenue" (I meant to say "Internal Affairs")
> complaint, and that "this officer [was now] harassing him." ["9-1-1"
> Recording at 2:59].

> 57. I said this in front of both officers from a distance of less than 5' away.
> I know the officers heard what I told the "9-1-1" operator since they were
> responding to the things I was saying before I told the operator about the
> "altercation" and the "Internal Revenue" [sic].

See Verified Statement of Eduardo Valdes in Opposition of Defendants' Motion for
Summary Judgment (DE# 103-1 at ¶¶56-57, 3/25/15). Officer Puerto testified during his
deposition that "[he] believe[d] that [he] was present when [the plaintiff's father] was
on the phone" with the 9-1-1 dispatcher. See Deposition of Puerto (DE# 87-1 at 60: 21-25,
3/4/15). However, he did not recall hearing the plaintiff's father tell the 9-1-1 dispatcher
about the IA complaint and learned of the IA investigation from Sergeant Martinez at
the station **after** the plaintiff had been arrested. See Deposition of Puerto (DE# 87-1 at
89: 19-25, 90:1-5, 133:12-20, 134: 3-7, 3/4/15). For summary judgment purposes, the

having a problem with an officer who had identified himself as Sergeant Martinez. "[The plaintiff's] father told the operator that this officer had been in an 'altercation' with [the plaintiff] and that an 'Internal Revenue' [sic] investigation [had] resulted." Plaintiff's Verified Statement in Support of his Motion for Summary Judgment (DE# 85-1 at ¶22, 3/4/15). The 9-1-1 call was recorded and Sergeant Martinez could be heard in the background telling the plaintiff's "father not [to] start any 'sh**' and telling [the plaintiff] that [he] should've kept his mouth shut." Id. The plaintiff believed Sergeant Martinez was upset over the IA investigation. The plaintiff's father asked the 9-1-1 dispatcher to send a supervisor to the supermarket. In response, Sergeant Martinez told the plaintiff's father that he was a supervisor. See Verified Statement of Eduardo Valdes in Opposition of Defendants' Motion for Summary Judgment (DE# 103-1 at ¶50, 3/25/15).

Officer Puerto approached the plaintiff after the plaintiff had paid for his groceries. See Plaintiff's Verified Statement in Opposition of Defendants' Motion for Summary Judgment (DE# 99-1 at ¶30, 3/25/15). He asked the plaintiff what the problem was and the plaintiff responded that there was no problem "and to have a great Thanksgiving." Id. Officer Puerto asked the plaintiff to come outside so they could talk.

---

undersigned accepts the plaintiff's evidence that the 9-1-1 call occurred in the presence of both officers. However, the undersigned also accepts Officer Puerto's deposition testimony that he did not learn of the IA investigation from overhearing the plaintiff's father's 9-1-1 call. Notably, in the 9-1-1 call, the plaintiff's father erroneously referred to the IA investigation as an Internal Revenue investigation and the only verbal responses to the 9-1-1 call specifically identified by the plaintiff and the plaintiff's father were made by Sergeant Martinez. In any event, and for the reasons discussed in the analysis, **when** Officer Puerto learned of the IA investigation is not determinative because there was other evidence to corroborate Sergeant Martinez' representation to Officer Puerto that the plaintiff had threatened Sergeant Martinez with a possible firearm (the actual concealed firearm on the plaintiff's person) and to establish arguable probable cause for Officer Puerto to arrest the plaintiff.

12

Id. at ¶31. The plaintiff did not "want to go anywhere near Sgt. Martinez" and "Officer Puerto kept telling [the plaintiff] the same [thing] – let's go outside and talk" and "assured [the plaintiff he] was not going to be arrested." Id. The plaintiff told Officer Puerto he would go outside "but because [he] wanted to go home and cook the turkey for Thanksgiving but that [he] didn't want any problems with [Officer Puerto] or Sgt. Martinez." Id. at 32.

"As they were exiting the store, Officer Puerto . . . noticed a bulky object underneath [the plaintiff]'s shirt, consistent with the outline of a firearm." Defendants' Response to Plaintiff's Statement of Undisputed Material Facts (DE# 97 at ¶50, 3/25/15).[16] The officers gave the plaintiff inconsistent directions to both put his hands

---

[16] The plaintiff maintains that while he had previously described his firearm as "bulky," Officer Puerto could not have seen his firearm because "there was no object, 'bulky' or otherwise, noticeable under [the p]laintiff's large, loose fitting [t]ee-shirt." Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100 at 2, 3/25/15) (citing surveillance video). The plaintiff notes that "[n]either the arrest affidavit nor Offense Incident Report make mention that Officer Puerto conducted a pat down for weapons." Id. at 5. The plaintiff further notes that "Officer Puerto has also testified that [the p]laintiff was free to leave . . . even though he saw a bulky object on his hip when the men were at the register . . . well before the time they exited the store." Id. The plaintiff's father also attests that "there was no object, 'bulky' or otherwise, visible underneath his son's shirt. See Verified Statement of Eduardo Valdes in Opposition of Defendants' Motion for Summary Judgment (DE# 103-1 at ¶33, 3/25/15). The undersigned cannot accept the plaintiff and the plaintiff's father's testimony as to what could and could not be observed by Officer Puerto on the plaintiff's person. Here, Officer Puerto specifically testified that he observed the outline of what appeared to be a firearm beneath the plaintiff's shirt, as they were exiting the store. See Deposition of Puerto (DE#87-1 at 69:1-17, 3/4/15). The undersigned notes that the plaintiff was wearing a "loose t-shirt," he was not wearing a heavy coat or thick vest that could have arguably made it impossible for Officer Puerto to notice the bulky object. Therefore, the undersigned will accept Officer Puerto's testimony as to what he observed.

behind his back and put his hands on the wall.[17] At some point, the plaintiff stepped

---

[17] According to the plaintiff, he was given inconsistent directions by the officers: "one officer was saying put my hands against the wall and another said to put my hands behind [his] back." See Plaintiff's Verified Statement in Opposition of Defendants' Motion for Summary Judgment (DE# 99-1 at ¶34, 3/25/15). The plaintiff also states:

> Officer Puerto previously testified that he directed [the p]laintiff to put [his] hands behind back. [[]Puerto, Crim. T. Puerto 73:20; 81:18]. The arrest affidavit also reflects this to be the case. [DE 88-5:2]. Officer Puerto thinks he may have directed [the p]laintiff to put hands on the wall, doing so before telling him to put his hands behind his back.[Puerto Dep. 77:13-21]. An order which requires a person to put his hands on the wall while another directs him to put his hands behind his back are distinct directives. [Martinez Dep. 157:12 - 156:1-7]. In addition, as discussed above, Officer Puerto testified he asked, not ordered, [the p]laintiff to put his hands behind his back.

Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100 at 6, 3/25/15). The plaintiff also states "[i]n addition to conflicting directives given [to the p]laintiff . . ., the [o]fficers pulled [the p]laintiff in different directions . . ., abruptly turning him around towards the wall, after which he was handcuffed in 10 seconds. " Id. (citing surveillance video).

The defendants argue that the Court should not consider the plaintiff's affidavit testimony that the officers gave the plaintiff contradictory instructions because the plaintiff previously testified at deposition that Officer Puerto told him to put his hands on the wall and a plaintiff cannot now change his testimony in order to defeat summary judgment. See Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Reply to Plaintiff's Response to Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 108 at 11, 4/6/15) (citing Deposition of Eloy Valdez (DE# 82-3 at 8, 3/4/15)).

In the Eleventh Circuit, the Court is authorized to "disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003). "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984). Here, the plaintiff is not merely relying on his inconsistent testimony, but citing the **defendants' own deposition testimony**. Notably, the "rule [for disregarding affidavits] is applied 'sparingly because of the harsh effect it may have on a party's case.'" Allen v.

back and away from Officer Puerto causing Officer Puerto to also step back in response

to the plaintiff's movement. See Surveillance Video "policia 47" 11/28/2008, 11:19:37 to

11:20:13.[18] The officers were able to quickly handcuffed the plaintiff without further

incident.

After the plaintiff was handcuffed, Officer Puerto searched the plaintiff and

discovered the concealed firearm on the plaintiff's person. See Plaintiff's Verified

Statement in Support of his Motion for Summary Judgment (DE# 85-1 at ¶24, 3/4/15);

Verified Statement of Eduardo Valdes in Opposition of Defendants' Motion for

Summary Judgment (DE# 103-1 at ¶¶66, 3/25/15). The plaintiff told Officer Puerto that

he had a concealed firearm permit but that he did not have it with him. Id.[19] The plaintiff

_____

Bd. of Pub. Educ. for Bibb Cnty, 495 F.3d 1306, 1316 (11th Cir. 2007) (quoting Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987)). Under these circumstances, where the plaintiff is relying on the defendants' own testimony, the Court should consider the plaintiff's evidentiary proffer that the officers gave the plaintiff directions to both put his hands behind his back and to put his hands on the wall.

[18] According to the plaintiff, "[he] never resisted arrest. [He] did not tense or straighten [his] arms, pull away from the officers, or refused [sic] or did not comply with any of the [o]fficers' orders, commands or directions. [He] did not refuse to allow the officers to arrest [him] or handcuff [him] either." Plaintiff's Verified Statement in Support of his Motion for Summary Judgment (DE# 85-1 at ¶23, 3/4/15). According to the plaintiff's father, the plaintiff did not resist arrest. See Affidavit of Eduardo Valdes (DE# 86-1 at ¶22, 3/4/15). The surveillance video shows that the plaintiff did step back and away from the officers. See Surveillance Video "policia 47" 11/28/2008, 11:19:37 to 11:20:13. The defendants characterize this same segment of the video as showing "[the plaintiff] pull[ing] away from the wall, extend[ing] his arms, and turn[ing] partially around, pushing Officer Puerto backwards." Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (DE# 82 at ¶24, 3/4/15). The undersigned does not agree with the defendants' characterization. Rather, the video shows Officer Puerto stepping back in response to the plaintiff's movement, not that he was being pushed by the plaintiff.

[19] According to the defendants, "Officer Puerto asked [the plaintiff] if he had a permit [to carry concealed firearms] or where his permit was. "[The plaintiff] did not have any

did not have a photo identification or the permit on his person. <u>See</u> Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100 at 7, 3/25/15).[20] Both the plaintiff and his father were carrying concealed firearms that day. Both the plaintiff and his father had valid concealed weapon or firearm licenses issued by the Florida Department of Agriculture.

The plaintiff told the officers that he had done nothing wrong, that it was Thanksgiving Day and that he was with his family. <u>See</u> Plaintiff's Verified Statement in Support of his Motion for Summary Judgment (DE# 85-1 at ¶26, 3/4/15). The plaintiff also "told Officer Puerto . . . that he should go look at the surveillance video, and talk to the cashier and the people in line, an[d] confirm [the plaintiff] had done nothing illegal." Plaintiff's Verified Statement in Opposition of Defendants' Motion for Summary Judgment (DE# 99-1 at ¶37, 3/25/15). "Sgt. Martinez told [the plaintiff], in front of Officer Puerto, that this is what [the plaintiff] g[o]t for being a snitch. Sgt. Martinez also told [the plaintiff that he] was not going to have any "fuc**** turkey[] that day." <u>Id.</u> at ¶38.

---

photo ID or a concealed weapons permit with him at th[at] time" and "told Officer Puerto 'I don't have my permit on me.'" Defendants' Response to Plaintiff's Statement of Undisputed Material Facts (DE# 97 at ¶¶56-58, 3/25/15).

[20] The plaintiff states that "Officer Puerto admitted doing a record check and confirming [the p]laintiff had a valid concealed firearm permit." Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100 at 7, 3/25/15). However, and as discussed in detail below, the record evidence is that Officer Puerto obtained objective proof that the plaintiff had a valid permit **after** the plaintiff had been arrested.

At some point, the officers sat the plaintiff on a curb outside the supermarket. See Verified Statement of Eduardo Valdes in Opposition of Defendants' Motion for Summary Judgment (DE# 103-1 at ¶68, 3/25/15).[21]

"After [the plaintiff] was secured in custody," Sergeant Martinez relayed to Officer Puerto the information contained in the arrest affidavit. See Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (DE# 82 at ¶20, 3/4/15); Deposition of Puerto (DE# 87-1 at 30:3-10, 3/4/15). Officer Puerto reentered the store and spoke to the cashier at the checkout line where the plaintiff and Sergeant Martinez had been. See Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (DE# 82 at ¶35, 3/4/15).[22] The cashier told

---

[21] The plaintiff's father's affidavit states: "After this, and while Officer Puerto was still at the Sedano's, [the plaintiff's father] **kept trying to tell** [Officer Puerto] that he should consider the fact that Sgt. Martinez was involved in the beating incident of [his] son and [Sergeant Martinez] was the subject of an Internal Affairs Investigation." See Verified Statement of Eduardo Valdes in Opposition of Defendants' Motion for Summary Judgment (DE# 103-1 at ¶69, 3/25/15) (emphasis added). However, the plaintiff's father does not actually state and the plaintiff does not argue that this information was actually communicated to Officer Puerto in this manner. Rather, the plaintiff argues that Officer Puerto knew of the IA investigation from overhearing the 9-1-1 call. See supra.

[22] The plaintiff disputes that Officer Puerto interviewed any witnesses because "[n]ot a single report authored by Ofcr. Puerto states that he interviewed [the cashier] or any witnesses." Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100 at 7, 3/25/15). While the plaintiff points out that Officer Puerto did not include in the arrest affidavit that he interviewed the cashier, the store manager and the security guard, he has not presented any record evidence to rebut Officer Puerto's deposition testimony that he did interview these witnesses following the plaintiff's arrest. See Deposition of Puerto (DE# 87-1 at 33-34, 3/4/15). All the plaintiff has shown is that Officer Puerto did not state in his report that he interviewed these witnesses. The plaintiff has not created an issue of fact as to whether Officer Puerto did or did not interview these witnesses.

Officer Puerto she did not speak English and she did not witness the entire incident, but that the plaintiff and Sergeant Martinez had a verbal altercation. Id. at ¶¶35-37.[23] Officer Puerto spoke to the store manager and the security guard who told the officer they did not witness the incident. Id. at ¶¶38-39. Officer Puerto also dispatched Officer Chica to review the supermarket's security footage. Id. at ¶41.[24] Officer Chica reported to Officer Puerto that "the videos were not of any evidentiary value to the case." Id. at ¶42.

When Sergeant Martinez called the incident in to Miami-Dade dispatch, he made a request for "special information"– a "Signal 13," this was later changed to a Signal "32" ("Assault"), which includes verbal threats, assault and aggravated assault. See

---

[23] At the criminal trial, the cashier testified "that while two people in her lane did become involved in an argument . . . they were not screaming at each other . . . that [the p]laintiff did not raise his voice, did not yell at the other man . . . [and] she did not see [the plaintiff] make any gestures at all." Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100 at 3, 3/25/15).

[24] The plaintiff also disputes that Officer Puerto dispatched Officer Chica to review to the surveillance video because "Officer Chica did not generate a supplemental report; Officer Puerto did not disclose Officer Chica in any of his reports . . . [and] did not disclose Officer Chica to the State Attorney at the time of felony screening or through trial." Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100 at 8, 3/25/15). Officer Puerto testified that he instructed Officer Chica to review the videos. See Deposition of Puerto (DE# 87-1 at 44-45, 3/4/15). The fact that Officer Puerto did not disclose Officer Chica in his report or to the State Attorney and that Officer Chica did not generate a report does not negate Officer Puerto's deposition testimony that he "designated [Officer Chica] to go back to the scene to review the captured footage of the incident." Id. All the plaintiff's proffered evidence shows was that the neither Officer Puerto nor Officer Chica made a written notation that Officer Chica reviewed the surveillance video and reported back to Officer Puerto. This is insufficient to create a factual dispute as to whether Officer Chica did or did not review the surveillance video and reported back to Officer Puerto.

Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100 at 10, 3/25/15).

"On November 27, 2008, pursuant to MDPD policy [MDPD Policy Manual, Chapter 27, Report Writing, Sec. 5, Report Forms Usage and Preparation Instructions, Sub-Sec.I.], an "Officer Assaulted/Killed Supplement" was generated." Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100 at 10, 3/25/15). The form states, "was officer aware that offender had weapon?" See Exhibit 10, (DE# 102-10, 3/25/15). The response to that question is listed as "no." Id.

Officer Puerto did not list the plaintiff's father, the store manager or the cashier as witnesses he spoke to in the Offense Incident Report. See Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100 at 10, 3/25/15). Officer Puerto did not list Officer Chica as being involved in the investigation on the MDPD Investigation and Court Cost "Recovery Form." Id. at 10-11.

**D.      The Criminal Proceedings Against the Plaintiff**

The charges listed on the plaintiff's Thanksgiving Day arrest affidavit were: (1) disorderly conduct, (2) resisting without violence, (3) carrying a concealed firearm, (4) aggravated assault on a law enforcement officer and (5) corruption by threat against a public servant. See Exhibit F (DE# 82-5, 3/4/15). Officer Puerto did not issue to the plaintiff a citation for not carrying his concealed firearm permit, a noncriminal violation with a penalty of $25 payable to the Clerk of the Court under Fla. Stat. Fla. Stat. § 790.06(1). "Officer Puerto did not know that § 790.06(1) only permits $25 infraction if a

permit holder is not carrying his permit when carrying [a] concealed firearm." Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100 at 7, 3/25/15).

The officers attended a prefile conference and gave the State Attorney information relevant to the possible criminal case against the plaintiff. See Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100 at 11, 3/25/15).

"On December 16, 2008, the State Attorney generated its 'Case File Sheet' in [the criminal case against the plaintiff], making a Case Filing Decision to transfer the case to County Court, documenting that as to the felonies Aggravated Assault on a Police Officer, Carrying a Concealed Firearm and Corruption by Threat, [they] would be no actioned due to there b[e]ing insufficient evidence to file these charges." Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100 at 7, 3/25/15) (citing Exhibit 17, (DE# 102-17, 3/25/15). "[T]he case was bound down to County Court with the State Attorney only charging [the plaintiff] with the misdemeanor crimes of resisting without violence and disorderly conduct/breach of peace." Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (DE# 82 at ¶45, 3/4/15). Although the State Attorney believed there was probable cause to charge the plaintiff with simple assault based on Sergeant Martinez' statements, she did not charge the plaintiff with that offense. Id. at ¶46.[25]

_____

[25] The plaintiff disputes this statement, but does not explain why. See Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for

During the criminal trial, the prosecutor introduced store surveillance video of the incident (a defense exhibit) during the State's case-in-chief and argued during closing argument that the video of the incident supported the State's case as to both charges. The jury acquitted the plaintiff of both charges.

## STANDARD OF REVIEW

The Court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(a), which states, in relevant part, as follows:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

The moving party bears the burden of meeting this exacting standard. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). That is, "[t]he moving party bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323) (internal quotation marks omitted).

_____

Summary Judgment (DE# 100 at 8, 3/25/15).

In assessing whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994). On cross-motions for summary judgment, "the facts are viewed in the light most favorable to the non-moving party on each motion." Chavez v. Mercantil Commercebank, N.A., 701 F.3d 896, 899 (11th Cir. 2012) (citation omitted). Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. Reich v. John Alden Life Ins. Co., 126 F.3d 1 (1st Cir. 1997). If the record presents factual issues, the Court must deny the motion and proceed to trial. Adickes, 398 U.S. at 157; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Despite these presumptions in favor of the non-moving party, the Court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the Court occasioned by an unnecessary trial. Celotex, 477 U.S. at 322-323. Consequently, the non-moving party cannot merely rest upon his or her bare assertions, conclusory allegations, surmises or conjectures. Id.  As the Supreme Court noted in Celotex:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Id. Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. There must be evidence on which the jury could

22

reasonably find for the non-movant. <u>Anderson</u>, 477 U.S. at 251; <u>Matsuchita Elec. Indus.</u>

<u>Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

### <u>ANALYSIS</u>

As noted above, the parties have filed cross-motions for summary judgment. The

undersigned will address the plaintiff's motion first.

**A.    Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support Thereof (DE# 83)**

The plaintiff seeks summary judgment in his favor on the following three

grounds:

> (i) Officers Martinez, Sanchez and Lopez are not entitled to qualified immunity as to the February 21, 2008 incident where [the p]laintiff contends the [o]fficers gratuitously assaulted him;
>
> (ii) Based upon the version of events Officer Puerto contends existed at the time he arrested [the p]laintiff [during the Thanksgiving Day incident], arguable probable cause does not exist to arrest for the various crimes [the plaintiff] was arrested for, and
>
> (iii) As to the [false arrest] claim against Miami-Dade County. [the p]laintiff has fully complied with the notice and service provisions of §768.28, Fla. Stat.

Plaintiff's Motion for Summary Judgment (DE# 83 at 2, 3/4/15).

In ground two, the plaintiff seeks summary judgment in his favor on the basis

that there was no arguable probable cause to arrest him during the Thanksgiving Day

incident. The defendants have filed their own summary judgment motion concerning the

existence of arguable probable cause to arrest the plaintiff during the Thanksgiving Day

incident. Accordingly, the undersigned will address ground two in the section discussing

Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81 at 1-2, 3/4/15).

With respect to the third ground, "the County agrees that [the p]laintiff satisfied the notice requirements of Fla. Stat. § 768.28 and [has] withdraw[n] its Eighth Affirmative Defense." Defendants Thomas Martinez, Orlando Sanchez, William Lopez, Daniel Puerto, and Miami-Dade County's Response to Plaintiff's Motion for Summary Judgment (DE# 96 at 3, 3/25/15). Because defendant Miami-Dade County does not dispute the basis for the third ground, the undersigned will not address it further in this Report and Recommendation. The undersigned will now address the first ground.

### i.   Qualified Immunity

As noted above, the plaintiff maintains that Officers Martinez, Sanchez and Lopez are not entitled to qualified immunity for the February 21, 2008 incident. The doctrine of "[q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Lee v. Ferraro, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (quoting Thomas v. Roberts, 261 F.3d 1160, 1170 (11th Cir. 2001) (internal quotations omitted)). "Because qualified immunity is an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). As such, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Id. at 232 (internal quotation marks omitted).

24

To be entitled to qualified immunity, a defendant must first show he or she was performing a discretionary function. Mercado v. City of Orlando, 407 F.3d 1152, 1156 (11th Cir. 2005) (citation omitted). "[T]he burden then shifts to the plaintiff to show that the grant of qualified immunity is inappropriate." Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009) (citations omitted). In meeting this burden, the plaintiff must show both that: (1) the defendant violated a constitutional right and (2) the right was clearly established at the time of the violation. Id. (citations omitted). "Courts are no longer required to address the two prongs of this test in any particular order." Williams v. Santana, 340 F. App'x 614, 617 (11th Cir. 2009) (citing Pearson v. Callahan,129 S.Ct. 808, 820-21 (2009)). If the plaintiff fails to meet one of these prongs, the officers are entitled to qualified immunity.

In the instant case, the plaintiff does not dispute that Officers Martinez, Sanchez and Lopez were performing a discretionary function during the February 21, 2008 incident. See Plaintiff's Motion for Summary Judgment (DE# 83 at 4, 3/4/15) (stating "[t]here is no dispute the [o]fficers were acting within the scope of their discretionary authority as law enforcement officers during this incident."). The burden is therefore on the plaintiff to show that: (1) these officers violated a constitutional right and (2) the right was clearly established at the time of the plaintiff's alleged beating.

**ii.   Applicable Facts**

At the outset, the parties dispute whose version of the facts the Court must accept as true for summary judgment purposes. The plaintiff argues that even though he is the movant, "[t]o determine whether qualified immunity applies, the Court looks to [the p]laintiff's version of events." Plaintiff's Reply to Defendants, Thomas Martinez,

25

Orlando Sanchez, William Lopez, Daniel Puerto, and Miami-Dade County's, Response

to Plaintiff's Motion for Summary Judgment (DE# 107 at 2, 4/6/15) (citing Galvez v.

Bruce, 552 F.3d 1238, 1339-1340 (11th Cir. 2008), citing Vinyard v. Wilson, 311 F.3d

1340, 1343 n. 1 (11th Cir. 2002)).[26] The defendants argue that the "[p]laintiff appears to

have forgotten the basic rule of federal civil procedure that the non-movant's version

must be accepted as true for summary judgment purposes." Defendants Thomas

Martinez, Orlando Sanchez, William Lopez, Daniel Puerto, and Miami-Dade County's

Response to Plaintiff's Motion for Summary Judgment (DE# 96 at 3, 3/25/15).

    The Eleventh Circuit has stated:

> In the context of qualified immunity analysis, the Supreme Court has
> cautioned that if a court were "to deny summary judgment any time a
> material issue of fact remains on the excessive force claim," it might
> "undermine the goal of qualified immunity to 'avoid excessive disruption of
> government and permit the resolution of many insubstantial claims on
> summary judgment.'" Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151,
> 2156, 150 L.Ed.2d 272 (2001) (quoting Harlow v. Fitzgerald, 457 U.S.
> 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)), abrogated in
> part by Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 818, 172
> L.Ed.2d 565 (2009). With this in mind, we have explained:
>
> > When a district court considers the record in **[the light most
> > favorable to the party asserting the injury]**, it eliminates
> > all issues of fact. By approaching the record in this way, the
> > court has the plaintiff's best case before it. **With the
> > plaintiff's best case in hand, the court is able to move to
> > the question of whether the defendant committed the
> > constitutional violation alleged in the complaint without
> > having to assess any facts in dispute**. Thus, because
> > material issues of disputed fact are not a factor in the court's
> > analysis of qualified immunity and cannot foreclose the grant

---

[26] The undersigned notes that in the cases cited by the plaintiff, Galvez and Vinyard, the
***defendants*** had moved for summary judgment on the issue of qualified immunity and
thus, as with all summary judgment motions, the Court construed the facts in the light
most favorable to the non-movant, i.e., the plaintiff.

> or denial of summary judgment based on qualified
> immunity[,] we decline to entertain [a plaintiff's] arguments
> concerning the allegedly disputed facts.
>
> Robinson v. Arrugueta, 415 F.3d 1252, 1257 (11th Cir. 2005). In other
> words, "[a]t the summary judgment stage, . . . once we have determined
> the relevant set of facts and **drawn all inferences in favor of the
> nonmoving party** *to the extent supportable by the record,* the
> reasonableness of [the officer's] actions . . . is a pure question of law."
> Scott, 550 U.S. at 381 n. 8, 127 S.Ct. at 1776 n. 8 (citations omitted).

Penley v. Eslinger, 605 F.3d 843, 848-49 (11th Cir. 2010) (bold emphasis added;

alterations in original). In most cases in this Circuit, it is the defendant officers who

move for summary judgment on the issue of qualified immunity. The problem here is

that the party asserting the injury (the plaintiff) is also the movant.

　　　If the Court were to take the facts in favor of the non-moving party (the

defendants), then the plaintiff has not established a constitutional violation because,

according to the defendants, the beating never occurred and, therefore, no excessive

force was used on the plaintiff on February 21, 2008. If, on the other hand, the Court

were to take the facts in favor of the plaintiff, then the plaintiff has shown a clearly

established constitutional violation because, according to the plaintiff, the defendants

gratuitously beat him without any provocation while he was in custody.

　　　In light of the Eleventh Circuit's directive to approach the issue of qualified

immunity with the plaintiff's best case in hand, the undersigned will accept the plaintiff's

version of the facts concerning the February 21, 2008 incident for purposes of

determining whether the officers are entitled to qualified immunity.

### iii.   The Defendants Are Not Entitled to Qualified Immunity for the February 21, 2008 Incident

#### (a).   Violation of a Constitutional Right

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has stated that "[w]henever an officer restrains the freedom of a person to walk away, he has seized that person." Tennessee v. Garner, 471 U.S. 1, 7 (1985). The plaintiff argues that he has established a constitutional violation under the Fourth Amendment: "The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." Plaintiff's Motion for Summary Judgment (DE# 83 at 4 , 3/4/15) (citations omitted).

The defendants respond that "because the [d]efendants' version of events is that no one used excessive force, [the p]laintiff cannot show that any of the [d]efendants violated his constitutional right to be free from excessive force." Defendants Thomas Martinez, Orlando Sanchez, William Lopez, Daniel Puerto, and Miami-Dade County's Response to Plaintiff's Motion for Summary Judgment (DE# 96 at 4, 3/25/15).

The Eleventh Circuit has stated that "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." Mills v. Parker, 379 F. App'x 852, 854 (11th Cir. 2010). The facts, as set forth in the plaintiff's sworn statement, are that the officers administered a beating while the plaintiff was in custody and posed no threat to the officers. Accordingly, the plaintiff has established a constitutional violation.

28

**(b).** **The Constitutional Right Was Clearly Established at the Time of the Plaintiff's Alleged Beating**

The plaintiff also argues that Eleventh Circuit case law predating the February 21, 2008 incident "made it clear that the use of gratuitous force against a person who has been placed under arrest and who is not resisting arrest constitutes excessive force which violates that person's constitutional rights." Plaintiff's Motion for Summary Judgment (DE# 83 at 5, 3/4/15) (citing numerous Eleventh Circuit cases). The plaintiff further argues that "[i]t . . . made no difference that [the p]laintiff was legally arrested" because "[t]he right of a person who has been legally arrested to not be subjected to excessive force was also clearly established on February 21, 2008." Id. at 5-6.

The defendants respond that:

> [their] version of events is that [the p]laintiff was escorted from an outside staging area to an upstairs interview room because he was being unruly. RSMF ¶¶ 1-3. Sergeant Martinez testified that he separated [the p]laintiff from the other arrestees because he was acting belligerently. Id. ¶ 3. Officer Sanchez testified that he assisted Sergeant Martinez in escorting the [p]laintiff to the interview room. Id. ¶ 4. Officer Lopez testified that he entered the interview room to process [the p]laintiff's belongings. Id. ¶ 6. No clearly established law on February 21, 2008 held that this conduct violated a constitutional right.

Defendants Thomas Martinez, Orlando Sanchez, William Lopez, Daniel Puerto, and Miami-Dade County's Response to Plaintiff's Motion for Summary Judgment (DE# 96 at 4, 3/25/15).

The law was clearly established at the time of the February 21, 2008 incident. As the Eleventh Circuit has stated, "[t]he lesson of Slicker and Lee is that qualified immunity is not available to officers who subject arrestees to significant force after 'the arrest ha[s] been fully effected, the arrestee completely secured, and all danger

29

vitiated.'" Galvez v. Bruce, 552 F.3d 1238, 1245 (11th Cir. 2008) (quoting Lee, 284 F.3d at 1199-1200; citing Slicker v. Jackson, 215 F.3d 1225, 1233(11th Cir. 2000)).[27] Based on the plaintiff's version of the facts, the plaintiff has shown a clearly established constitutional right.

### iv.   Hilger v. Velazquez

In his reply, plaintiff argues that "[the d]efendants fail to recognize the distinction between denying the incident occurred and qualified immunity, an affirmative defense. . . . [S]ince [the d]efendants deny using any force, the defense [of qualified immunity] is legally insufficient." Plaintiff's Reply to Defendants, Thomas Martinez, Orlando Sanchez, William Lopez, Daniel Puerto, and Miami-Dade County's, Response to Plaintiff's Motion for Summary Judgment (DE# 107 at 2, 4/6/15). In support of this argument, the plaintiff cites to Hilger v. Velazquez, No. 10-20638-Moreno (S.D. Fla.).

In Hilger, the plaintiff also moved for summary judgment on the issue of qualified immunity. The magistrate judge issued a report and recommendation recommending that the Court enter summary judgment[28] against the defendants on the issue of qualified immunity where the defendants denied using the excessive force alleged by

---

[27] Although Galvez was decided after the February 21, 2008 incident, it is citing decisions from 2000 and 2002, well before the alleged beating in the instant case. Thus, the law was clearly established at the time of the February 21, 2008 incident.

[28] The magistrate judge noted that the plaintiff's motion "probably should have been filed as a motion to strike or abate, rather than a motion for summary judgment." Hilger v. Velazquez, No. 10-20638-Moreno, Report and Recommendation - Plaintiff's Motion for Summary Judgment, DE# 80 at 1 (S.D. Fla. Aug. 17, 2011).

the plaintiff. The magistrate judge reasoned as follows:

> **Turning next to the affirmative defense of qualified immunity, the Court finds it inapplicable under the facts of this case and therefore recommends the motion be granted as to same.** [The d]efendants confuse qualified immunity (a legitimate affirmative defense) with liability. Simply stated, qualified immunity applies if the Court accepts plaintiff's allegations as true. If, for example, plaintiff alleged that [the] defendants gave her some food she didn't like, the defendants could take the position that, even if plaintiff is correct, "the conduct does not violate clearly established statutory or constitutional rights" (see Mot. p. 4 and cited cases). Under the facts of this case, **if plaintiff's claims are accurate, qualified immunity does not apply. If the claims of defendants are accurate, there is no liability . . . period. . . . [the d]efendants confuse the defense of "no liability because it didn't happen" with the affirmative defense of qualified immunity. There is nothing in this record that would support such a defense**.

Hilger, No. 10-20638-Moreno, Report and Recommendation - Plaintiff's Motion for Summary Judgment, DE# 80 at 2-3 (S.D. Fla. Aug. 17, 2011) (emphasis added). The district court adopted the magistrate judge's report and recommendation, noting that "qualified immunity . . . fail[ed] as a matter of law." See Hilger, No. 10-20638-Moreno, Order Adopting Magistrate Judge's Report and Recommendation, DE# 89 at 1 (S.D. Fla. Sept. 15, 2011). On an interlocutory appeal, the Eleventh Circuit affirmed the district court's denial of qualified immunity to the defendant officers, reasoning as follows:

> The officers argue on appeal that they were entitled to qualified immunity as a matter of law. However, the complaint alleges that both officers participated in the plaintiff's initial assault. Specifically, [the plaintiff] alleges that both officers held her and slammed her against a wall while she was handcuffed and not resisting. She further alleges that once she fell to the floor that one of the officers kicked her several times while the other officer who remained present throughout failed to intervene. Thus, **taking the facts in a light most favorable to [the plaintiff], both officers, including the intervening officer, were active participants from the beginning and not entitled to qualified immunity**. See

> Gilmere v. City of Atlanta, 774 F.2d 1495, 1500-02 (11th Cir. 1985)
> abrogated on other grounds by Graham v. Connor, 490 U.S. 386, 109
> S.Ct. 1865, 104 L.Ed.2d 443 (1989) (establishing that use of force upon a
> handcuffed person who is not resisting is constitutionally prohibited.)

Hilger v. Velazquez, 463 F. App'x 847, 849 (11th Cir. 2012) (per curiam) (emphasis

added).

In the instant case, as in Hilger, the defendants are denying that the beating took

place. The Court should follow the example of Hilger and grant summary judgment to

the plaintiff on the issue of qualified immunity for the February 21, 2008 incident

because the defense fails as a matter of law. Accordingly, the plaintiff's motion for

summary judgment on qualified immunity should be **GRANTED in part** and the matter

should proceed to trial as to the February 21, 2008 incident.

**B.      Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's
         Motion for Summary Judgment and Incorporated Memorandum of Law
         (DE# 81)**

The defendants seek summary judgment on all federal and state law claims

arising from the Thanksgiving Day incident, Counts 8-14 and 17 of the Amended

Complaint. See Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's

Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81 at 1-2,

3/4/15).

Sergeant Martinez and Officer Puerto argue that they are entitled to summary

judgment on the federal and state law false arrest claims because there was probable

cause or arguable probable cause to arrest the plaintiff for carrying a concealed firearm

and for carrying a concealed firearm without his license. See Defendants Thomas

Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81 at 7-9, 15, 3/4/15).

Officer Puerto additionally seeks summary judgment, arguing he: (1) was permitted under the "fellow officer rule" to rely in good faith on Sergeant Martinez' representations which were uncontradicted by objective exculpatory evidence; (2) had probable cause or arguable probable cause to arrest the plaintiff for assault and resisting without violence and (3) is immune from all state law torts (Counts 9, 11 and 12) under section 768.28(9)(a) of the Florida Statutes because he did not act maliciously or in bad faith. See Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81 at 9-14, 3/4/15).

Both Sergeant Martinez and Officer Puerto seek summary judgment on the state law malicious prosecution claims (Counts 10 and 11) because: (1) they did not instigate the criminal proceedings against the plaintiff; (2) probable cause existed to arrest the plaintiff and (3) the plaintiff cannot show the officers acted with subjective malice. See Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81 at 15-16, 3/4/15). Sergeant Martinez and Officer Puerto also seek summary judgment on the concert of action claim (Count 12) because: (1) "the underlying false arrest and malicious prosecution claims fail against either or both officer;" (2) the Florida appellate courts have not applied this cause of action to the types of intentional torts alleged in the

instant case and (3) there is no evidence that "Sergeant Martinez and Officer Puerto acted according to a common plan or scheme." Id. at 17.

Finally, Miami-Dade County seeks summary judgment on the plaintiff's claim of false arrest and imprisonment (Count 17) based on the doctrine of sovereign immunity because under the plaintiff's version of the facts, "[Sergeant] Martinez acted in bad faith, maliciously, or with wanton disregard for [the p]laintiff's rights or safety, such that [the plaintiff] cannot maintain any claims against the County." See Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81 at 18-19, 15, 3/4/15). The undersigned will address these arguments in turn.

### i.  The Plaintiff's Claims for False Arrest

As noted above, the charges listed on the plaintiff's arrest affidavit were: (1) disorderly conduct, (2) resisting without violence, (3) carrying a concealed firearm, (4) aggravated assault on a law enforcement officer and (5) corruption by threat against a public servant. See Exhibit F (DE# 82-5, 3/4/15). An arrest supported by probable cause or arguable probable cause entitles officers to qualified immunity. See Skop v. City of Atlanta, GA, 485 F.3d 1130, 1138 (11th Cir. 2007) (noting that "[i]f Officer Brown possessed probable cause or arguable probable cause to arrest [the plaintiff] . . . he is entitled to qualified immunity.").

In order to prevail on his false arrest claims, the plaintiff must show that there was no arguable probable cause to arrest him for any crime. Conversely, in order to prevail on summary judgment on the plaintiff's false arrest claims, the defendants need only show that the plaintiff's arrest was support by arguable probable cause for at least

one offense. See Reid v. Henry Cnty., Ga., 568 F. App'x 745, 749 (11th Cir. 2014) (stating that "[a]s long as probable cause existed to arrest the suspect for any offense, the arrest and detention are valid even if probable cause was lacking as to some offenses, or even all announced charges.").[29]

In their summary judgment motion, the defendants argue that Sergeant Martinez and Officer Puerto had probable cause or arguable probable cause to arrest the plaintiff for unlawfully carrying a concealed firearm and/or carrying a concealed firearm without a permit. See Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81 at 7-8, 3/4/15). The defendants also argue that Officer Puerto had probable cause or arguable probable cause to arrest the plaintiff for assault and resisting without violence. Id. at 10-13.

Because an officer would be entitled to summary judgment on a false arrest claim if there was probable cause or arguable probable cause to support the arrest for any offense, the undersigned will first address the offenses proffered by the defendants in their motion for which they maintain probable cause or arguable probable cause existed: (1) unlawfully carrying a concealed firearm; (2) unlawfully carrying a concealed firearm without a permit; (3) assault and (4) resisting without violence.[30] Only if all four offenses lack arguable probable cause will the undersigned address the plaintiff's

---

[29] This is the general rule. However, and for the reasons discussed below, Sergeant Martinez is still not entitled to qualified immunity even if Officer Puerto had probable cause.

[30] The undersigned will address these offenses in the order in which they were presented in the defendants' summary judgment motion.

argument[31] that the remaining offenses were also not supported by probable cause or arguable probable cause.

### (a.)   Unlawfully Carrying a Concealed Firearm

Section  790.01(2) of the Florida Statutes provides that: "A person who carries a concealed firearm on or about his or her person commits a felony of the third degree." Fla. Stat. § 790.01(2). The defendants argue that they are entitled to summary judgment on the plaintiff's false arrest claims[32] because there was probable cause or arguable probable cause to arrest the plaintiff for unlawfully carrying a concealed firearm. See Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81 at 7, 3/4/15). "Because [the plaintiff] was required by law to carry and display his license to Officer Puerto, which he failed to do, a reasonable officer could have concluded that probable cause (or at least arguable probable cause) existed to arrest [the plaintiff] for

---

[31] As noted above, the plaintiff moved for summary judgment on the ground that there was no arguable probable cause to arrest the plaintiff for any offense during the Thanksgiving Day incident. See Plaintiff's Motion for Summary Judgment (DE#83 at 6-18, 3/4/15).

[32] In his Amended Complaint, the plaintiff asserts federal and state law claims for false arrest against Sergeant Martinez (Counts 8 and 13) and Officer Puerto (Counts 9 and 14) stemming from the Thanksgiving Day incident. This first portion of the defendants' argument appears to relate to the federal claims of false arrest, because in a later part of the defendants' summary judgment motion, the defendants argue that the existence of probable cause also defeats the plaintiff's state law claims for false arrest. See Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81 at 15, 3/4/15). In any event, the existence of probable cause would defeat both state and federal claims for false arrest. See Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (noting that "probable cause constitutes an absolute bar to both state and § 1983 claims alleging false arrest").

the offense of unlawfully carrying a concealed firearm." Id. The defendants maintain

that "[a]lthough [the plaintiff] claimed to have a concealed weapons permit, which he left

at home with the rest of his wallet, Officer Puerto was not required to credit this story

and could instead make a probable cause determination based on the objective facts

available to him (i.e., a suspect reported to have threatened a police officer was

carrying a concealed weapon without a permit)." Id. at 7-8. The defendants further note

that "Officer Puerto had no objective information at the time of the arrest that [the

plaintiff] was licensed to carry firearms." Defendants Thomas Martinez, Daniel Puerto

and Miami-Dade County's Motion for Summary Judgment and Incorporated

Memorandum of Law (DE# 81 at 8, 3/4/15) (emphasis added).

In his response, the plaintiff maintains that "[w]hile . . . the facts of the arrest

affidavit [we]re fabricated, even *assuming* them to be true, the elements of the crimes

for which he was arrested are lacking." Plaintiff's Memorandum of Law in Opposition to

Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's Motion for

Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 4, 3/25/15)

(emphasis in original). The plaintiff notes that the prohibition against carrying a

concealed firearm does not apply to persons who are licensed to carry concealed

firearms. Id. at 12 (citing United States v. Montague, 437 F. App'x 833, 835 (11th Cir.

2011)). In the instant case, it is undisputed that the plaintiff had a valid permit to carry a

concealed firearm, but did not have it with him at the time of his arrest. Nonetheless,

the plaintiff maintains that "the [o]fficers knew [the plaintiff] was issued a valid

concealed firearm license and still arrested him." Id. The plaintiff states that "[i]n our

case, the [o]fficers were not just relying on [the p]laintiff's 'word' that he had a permit at

home, [they] performed a record check and confirmed [the p]laintiff had a valid

concealed firearm permit." Id.

As evidence that the officers knew the plaintiff had a valid concealed firearm

permit at the time of the arrest, the plaintiff cites to Officer Puerto's deposition

testimony. See Plaintiff's Memorandum of Law in Opposition to Defendants Thomas

Martinez, Daniel Puerto and Miami Dade County's Motion for Summary Judgment and

Incorporated Memorandum of Law (DE# 98 at 12, 3/25/15). The portions cited by the

plaintiff are the following:

> Q. Did you ever ask the dispatcher for any information regarding whether
> or not Mr. Valadez [sic] had a valid permit?
>
> A. I don't recall, but **I know that at some point I made an inquiry as to
> whether or not he had a permit.**
>
> Q. And he did have a permit, correct?
>
> A. It's my understanding that he did have a permit.
>
> ***
>
> Q. And you recall actually checking records as to whether or not he had a
> . . . permit, as well?
>
> A. **I do recall at some point confirming as to whether or not he had
> one. Yes, sir.**
>
> Q. So in addition to what he told you, **you also double checked,
> confirming the records with the State of Florida that this gentleman
> had been issued [the] appropriate permit to carry a firearm by the
> Department of Agriculture?**
>
> A. **Yes, sir.**

Deposition of Puerto (DE# 87-1 at 85:25, 86:1-8, 177:25, 178: 1-10, 3/4/15) (emphasis

added). The plaintiff thus argues that "[s]ince a validly issued concealed firearm permit

is an affirmative defense to [carrying a concealed firearm] . . ., Officer Puerto could not arrest [the p]laintiff for [carrying a concealed firearm] knowing [the p]laintiff had been issued a permit legally authorizing him to carry a concealed firearm." Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 13, 3/25/15). The plaintiff also notes that his father delivered a copy of the plaintiff's permit to the police station. Id. at 14.

The undersigned agrees with the plaintiff that *if* Officer Puerto, ***at the time of the arrest***, had established that the plaintiff had a valid permit to carry a concealed firearm, then he would not have had probable cause or arguable probable cause to arrest the plaintiff for the crime of unlawfully carrying a concealed firearm. However, none of the deposition excerpts cited by the plaintiff, see supra, establish **when** Officer Puerto learned that the plaintiff had a valid permit.[33] Moreover, the defendants cite to another

---

[33] The plaintiff states "in our case probable cause to arrest [the p]laintiff for [carrying a concealed firearm] was *negated* when Officer Puerto confirmed during a records check that [the p]laintiff did in fact have the required permit." Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 14, 3/25/15) (emphasis in original). The undersigned has reviewed the portions of Officer Puerto's deposition cited by the plaintiff, they do not establish when Officer Puerto confirmed the existence of the plaintiff's permit. Rather, Officer Puerto twice states "at some point" he verified that the plaintiff had a valid permit. See Deposition of Puerto (DE# 87-1 at 85:25, 86:1-8, 177:25, 178: 1-10, 3/4/15). Additionally, the fact that the plaintiff's father later delivered the plaintiff's permit to the police station is immaterial because the only relevant facts for a probable cause determination are those known to the officers at the time of the arrest. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer **at the time of the arrest**." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (emphasis added).

portion of Officer Puerto's deposition wherein he attests that he learned that the plaintiff

was a permit holder **after** the arrest:

> Q.    You just testified that you later learned that Eloy Valadez [sic] was a holder of a concealed weapons permit; is that correct?
>
> A.    That's correct.
>
> Q.    **Was that before or after the initial arrest?**
>
> A.    **That was after the initial arrest.**

Deposition of Puerto (DE# 87-1 at 187:5-11, 3/4/15) (emphasis added). The defendants

argue that this testimony establishes that there are no genuine issues of material fact

concerning whether "Officer Puerto had information 'conclusively establishing' [the

p]laintiff's right to carry a concealed firearm at the time of the arrest" and "requires that

summary judgment be entered for [the d]efendants on all false arrest claims."

Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Reply to

Plaintiff's Response to Motion for Summary Judgment and Incorporated Memorandum

of Law (DE# 108 at 3, 4/6/15).

The undersigned agrees with the defendants that the record evidence in this

case establishes that Officer Puerto did not have objective evidence that the plaintiff

had a valid permit to carry a concealed firearm at the time of the arrest. At that time,

Officer Puerto only had the plaintiff and the plaintiff's father's interested

representations. Officer Puerto was not required to verify those representations before

he could effectuate a lawful arrest. The case law cited by the plaintiff notes the general

rule:

> Generally, in determining probable cause an arresting officer does not have to consider the validity of any possible defense. Baker v. McCollan, 443 U.S. 137, 145-46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). **An exception to the general rule exists, however, when the arresting officer actually has knowledge of facts and circumstances conclusively establishing an affirmative defense.**
>
> ***
>
> [I]f an officer has knowledge of facts and circumstances which establish an affirmative defense, he or she lacks probable cause to arrest, even when the facts and circumstances establish that the person meets all elements of the offense.

Williams v. Sirmons, 307 F. App'x 354, 358-59 (11th Cir. 2009) (emphasis added).

> The Eleventh Circuit summarized the circumstances of Williams as follows:

> the evidence taken in the light most favorable to [the plaintiff] establishes that the deputies knew from their interview with [the plaintiff] during the traffic stop that [the plaintiff] was pregnant, bleeding, in distress, and on her way to the hospital for emergency treatment. The deputies, however, detained [the plaintiff] in order to write a traffic citation. Immediately thereafter, the deputies observed [the plaintiff] drive away from the traffic stop without permission and proceed directly to a hospital less than one mile away, where she exited her car, ran towards the emergency room, and called out, "Help! I'm pregnant and bleeding." **Because they followed her directly from the traffic stop where she claimed to need medical attention to the hospital where she immediately asked for help, the deputies should have known that [the plaintiff] was not acting willfully to flee officers; rather, she was acting under necessity.** A reasonable officer would have known, given this particular set of circumstances, that [the plaintiff's] flight from the traffic stop was justified by the affirmative defense of necessity or duress. For this reason, the deputies lacked arguable – much less actual – probable cause to arrest, even though the circumstances established that [the plaintiff] met all elements of the offense of fleeing or eluding a police officer.

Williams, 307 F. App'x at 359 (emphasis added). In Williams, the officers did not have

to rely only on the veracity of the plaintiff's representations. The officers had

independent facts which corroborated the plaintiff's representations. As the Eleventh Circuit noted, the officers knew from effectuating their traffic stop that the plaintiff was "pregnant, bleeding, in distress, and on her way to the hospital for emergency treatment." Id. The officers also witnessed the plaintiff "proceed directly to a hospital," run into the emergency and call out for help. Id. Thus, the facts supporting an affirmative defense were known to the arresting officers, in addition to the plaintiff's representations.

Here, the plaintiff has not presented any record evidence that Officer Puerto knew, **at the time of the arrest**, that the plaintiff held a valid permit (apart from the interested statements of the plaintiff and the plaintiff's father). To the contrary, the record evidence is that Officer Puerto learned that the plaintiff was a valid permit holder **after the arrest**. See Deposition of Puerto (DE# 87-1 at 187:5-11, 3/4/15).[34] The undersigned does not read the law as requiring officers to verify the existence of a valid permit before effectuating an arrest for carrying a concealed firearm every time a potential arrestee claims to be a valid permit holder. Rather, the instant case falls under the general rule that a police officer is not required to verify an affirmative defense before making a lawful arrest.

---

[34] While the plaintiff and his father told Officer Puerto about the plaintiff's permit, Officer Puerto was not required to take these representations at face value. See Baker v. McCollan, 443 U.S. 137, 146 (1979) (noting that an officer is not "required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent"); Williams, 307 F. App'x 354, 358 (11th Cir. 2009) (stating that "in determining probable cause[,] an arresting officer does not have to consider the validity of any possible defense.").

Additionally, the plaintiff has not shown that, at the time of his arrest, the law was clearly established that Officer Puerto was required to investigate a possible affirmative defense before reaching the conclusion that he had probable cause to arrest the plaintiff. See Pickens v. Hollowell, 59 F.3d 1203, 1208 (11th Cir. 1995) (reversing district court's denial of summary judgment on qualified immunity and noting that "[the plaintiff's] contention that her checks were stolen was a claim of innocence, and at the very least, the law was not clearly established in 1992 that the officers were required to investigate and determine whether she was guilty or innocent before they executed the arrest warrants."); Sada v. City of Altamonte Springs, 434 F. App'x 845, 851 (11th Cir. 2011) (affirming district court's holding that the possible applicability of an affirmative defense did not preclude a finding of probable cause as a matter of law and stating that "[g]iven the absence of binding precedent holding that affirmative defenses must be considered in a probable cause determination, we cannot say that the law regarding affirmative defenses was so clearly established as to have provided fair warning to the [officers] that their actions were unconstitutional.").

The Eleventh Circuit has stated that "the burden is on the plaintiff to show that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993) modified, 14 F.3d 583 (11th Cir. 1994) (citing Anderson v. Creighton, 483 U.S. 635, 640  (1987)). Here, the plaintiff has not presented the Court with any United States Supreme Court, Eleventh Circuit or Florida Supreme Court case law requiring officers to investigate the availability of claimed affirmative defenses prior to arrest. See Courson v. McMillian, 939 F.2d 1479, 1497-98

43

& n. 32 (11th Cir.1991) (stating that for qualified immunity purposes only decisions of the U.S. Supreme Court, the Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose can be "clearly established" law). The record evidence in the instant case is that the plaintiff did not have with him a photo identification and a concealed firearm permit at the time of his arrest. Although Officer Puerto later confirmed that the plaintiff had been issued a valid permit, his deposition testimony was that this confirmation came after the plaintiff's arrest. Thus, at the time of the plaintiff's arrest, Officer Puerto had discovered a firearm, concealed beneath the plaintiff's t-shirt and the plaintiff did not have a permit with him. Under those facts, at the time of the plaintiff's arrest, Officer Puerto had probable cause, or at the very least arguable probable cause, to arrest the plaintiff for unlawfully carrying a concealed firearm in violation of Fla. Stat. § 790.01(2).

### (b.)   Carrying a Concealed Firearm Without a Permit

The defendants also argue that "the [o]fficers had probable cause to arrest [the plaintiff] for the lesser offense of carrying a concealed firearm without a permit" pursuant to Fla. Stat. § 790.06(1). See Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81 at 8, 3/4/15).[35] The defendants note that "[t]he Supreme

---

[35] It is immaterial that the plaintiff was not cited or arrested for violating section 790.06(1). See Lee v. Ferraro, 284 F.3d 1188, 1195-96 (11th Cir. 2002) (stating that "[t]he fact that [the officer] did not cite the specific Miami-Dade County noise ordinance either orally or in his arrest report [wa]s irrelevant to [the Court's] inquiry" because "[q]uite simply, '[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest.'") (quoting Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., 956 F.2d 1112, 1119 n.4 (11th Cir. 1992)).

Court has held that police officers may conduct a full custodial arrest for even minor offenses carrying no penalty beyond a fine without violating the Fourth Amendment." Id. (citing Atwater v. City of Lago Vista, 532 U.S. 318 (2001)). The defendants further cite Cruz v. Davidson, 552 F. App'x 865, 868 (11th Cir. 2013), noting that in Cruz the Eleventh Circuit reversed the district court's denial of a motion to dismiss based on qualified immunity "when the plaintiff was held in jail overnight because the complaint indicated that probable cause existed to arrest the plaintiff for violating a seatbelt law that provided for a $15.00 fine and no jail time." Id. The defendants note that section 790.06(1) "provides for a $25.00 fine and no jail time." Id.

The undersigned is not persuaded by the defendants' argument that the plaintiff could have been arrested for failing to carry a concealed firearm permit in violation of section 790.06(1). Section 790.06(1) of the Florida Statutes states, in pertinent part:

> Any person in compliance with the terms of such license may carry a concealed weapon or concealed firearm notwithstanding the provisions of s. 790.01. The licensee must carry the license, together with valid identification, at all times in which the licensee is in actual possession of a concealed weapon or firearm and must display both the license and proper identification upon demand by a law enforcement officer. Violations of the provisions of this subsection shall constitute a **noncriminal violation** with a penalty of $25, payable to the clerk of the court.

Fla. Stat. § 790.06(1) (emphasis added). Atwater and Cruz concerned **criminal violations** that were punishable by a fine and carried no jail time. See Atwater, 532 U.S. at 354 (holding that "[i]f an officer has probable cause to believe that an individual has committed **even a very minor criminal offense** in his presence, he may, without

45

violating the Fourth Amendment, arrest the offender.") (emphasis added);[36] Cruz, 552

F. App'x at 868 ("[the plaintiff] notes that she was held overnight for a **crime** that carried

no jail time and a maximum of a $15.00 fine.") (emphasis added).[37] Here, section

790.06(1) is a **noncriminal violation**. Thus, the facts of the instant case are materially

different from Atwater and Cruz.

In their reply, the defendants state:

> Courts have squarely applied Atwater to preclude false arrest claims even
> where the arrest was only justified by a **civil offense**. See Chortek v. City
> of Milwaukee, 356 F.3d 740 (7th Cir. 2004) (police entitled to qualified
> immunity for arrest pursuant to city ordinance prohibiting unauthorized
> ticket sales); Koehl v. Blosenski, No. 05-C-0384, 2006 WL 416211, at *3

---

[36] Notably, the issue before the Supreme Court in Atwater, was "whether the Fourth Amendment forbids a warrantless arrest **for a minor criminal offense, such as a misdemeanor** seatbelt violation punishable only by a fine." Atwater, 532 U.S. at 323 (emphasis added). Thus, Atwater did not address noncriminal violations such as Fla. Stat. § 790.06(1).

[37] In Cruz, the Eleventh Circuit determined that the defendant "objectively was justified in detaining [the plaintiff] for the seatbelt violation," Ga. Code § 40-8-76.1. Cruz, 552 F. App'x at 868. Section 40-8-76.1 provides, in pertinent part, that:

> (e)(1) **Except as otherwise provided in paragraphs (2) and (3) of this subsection**, a person failing to comply with the requirements of subsection (b) of this Code section shall not be guilty of any criminal act and shall not be guilty of violating any ordinance. A violation of this Code section shall not be a moving traffic violation for purposes of Code Section 40-5-57.

> (2) A person failing to comply with the requirements of subsection (b) of this Code section **shall be guilty of the offense of failure to wear a seat safety belt and, upon conviction** thereof, may be fined not more than $15.00 . . . .

Ga. Code § 40-8-76.1 (emphasis added). Thus, the failure to wear a safety belt was a **criminal** offense under Georgia law that was punishable by a fine.

(E.D. Wis. Feb. 21, 2006) ("The Seventh Circuit has applied <u>Atwater</u> to include civil offenses such as unauthorized ticket sales.").

Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Reply to Plaintiff's Response to Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 108 at 6, 4/6/15) (emphasis added). The problem with this argument is that the statute at issue in <u>Chortek</u> was a criminal statute: "<u>Atwater</u> makes clear that even non-violent **misdemeanor offenses**, such as unauthorized ticket sales, can support an arrest under the Fourth Amendment, as long as the officer had probable cause to believe the offense had been committed." <u>Chortek</u>, 356 F.3d at 745 (emphasis added). Thus, <u>Koehl</u>, is incorrect when it states that "[t]he Seventh Circuit has applied <u>Atwater</u> to include **civil offenses** such as unauthorized ticket sales," <u>Koehl</u>, 2006 WL 416211 at *3 (emphasis added) (citing <u>Chortek</u>), because a misdemeanor is, by definition, a criminal offense.

The undersigned finds that the situation in the instant case is more akin to <u>Bostic v. Rodriguez</u>, 667 F. Supp. 2d 591, 597 (E.D.N.C. 2009). In <u>Bostic</u>, the defendants relied on <u>Virginia v. Moore</u>, 553 U.S. 164 (2008) and <u>Atwater</u> in arguing "that because the officers had probable cause to cite [the plaintiff] for the seat belt violation, they had the power to arrest [him]." <u>Id.</u> at 608 n.6. The district court rejected this argument reasoning that:

> Both <u>Moore</u> and <u>Atwater</u> involved misdemeanor crimes under the applicable state law. Here, **under North Carolina law, the seat belt infraction "is a noncriminal violation of law not punishable by imprisonment."** N.C. Gen.Stat. § 14-3.1. The court does not read <u>Atwater</u> and <u>Moore</u> to undermine the more basic principle that an officer cannot arrest an individual when the officer lacks probable cause to

> believe that a crime has occurred and that state law determines whether a
> particular act constitutes a crime.

Id. (emphasis added). Similarly here, the Florida Legislature specifically designated section 790.06(1) a "noncriminal violation." Fla. Stat. § 790.06(1). Thus, an officer would not have had probable cause or even arguable probable to arrest the plaintiff for violating section 790.06(1), a civil violation.

### (c.)   Sergeant Martinez Is Not Entitled to Qualified Immunity

Although the undersigned has determined that there was probable cause or arguable probable cause to arrest the plaintiff for unlawfully carrying a concealed firearm in violation of section 790.01(2), Florida Statutes, Sergeant Martinez is still not entitled to qualified immunity. Qualified immunity "allows government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent **or one who is knowingly violating the federal law**." Galvez v. Bruce, 552 F.3d 1238, 1241 (11th Cir. 2008) (internal quotation marks and alterations omitted; emphasis added). The Eleventh Circuit has stated that:

> [O]fficers who make an arrest without probable cause are entitled to
> qualified immunity if there was arguable probable cause for the arrest. . . .
> **Qualified immunity does not apply, however, where a government
> official engages in conduct that violates clearly established
> constitutional rights**. Bashir, 445 F.3d at 1327. As we have already
> noted, "**falsifying facts to establish probable cause is patently
> unconstitutional. . . .**"

Williams v. Miami-Dade Police Dep't, 297 F. App'x 941, 946 (11th Cir. 2008) (quoting

Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004) (emphasis added)).

The facts on summary judgment are that Sergeant Martinez fabricated evidence by lying to Officer Puerto that the plaintiff had threatened him inside the supermarket with a suspected firearm. He also lied about the plaintiff using profanity, speaking loudly and causing patrons and on-lookers to gather and observe the commotion. See Exhibit F (DE# 82-5 at 1, 3/4/15). Under the plaintiff's version of the facts, Sergeant Martinez lied to Officer Puerto and fabricated evidence in order to secure the plaintiff's arrest. "If it would be clear to any reasonable officer in the same situation that his actions were unconstitutional, then qualified immunity is not available, but if 'officers of reasonable competence could disagree on th[e] issue, immunity should be recognized.'" Sada v. City of Altamonte Springs, 434 F. App'x 845, 849 (11th Cir. 2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Every reasonable officer would know that fabricating evidence in order to secure an arrest is a constitutional violation. Thus, Sergeant Martinez is not entitled to qualified immunity.

The Eleventh Circuit has noted that: "The principles behind qualified immunity would be rendered meaningless if such immunity could be invoked to shelter officers who, because of their own interests, allegedly flout the law, abuse their authority, and deliberately imperil those they are employed to serve and protect." Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004). In a case where the officer had fabricated evidence, the Eleventh Circuit noted that "even if probable cause existed for [the officer] to cause [the plaintiff] to be arrested for 'some' offense, even if not for the offense actually charged, [the officer wa]s not entitled to qualified immunity." Mead v. McKeithen, 571 F. App'x 788, 792 (11th Cir. 2014). Similarly here, Sergeant Martinez is not entitled to qualified immunity under the facts accepted as true for summary

judgment purposes. "[F]alsifying facts to establish probable cause is patently

unconstitutional." <u>Kingsland</u>, 382 F.3d at 1232. This was clearly established law at the

time of the plaintiff's arrest in November 2008. With respect to Sergeant Martinez, the

Court should deny the defendants' summary judgment motion on the plaintiff's federal

and state false arrest claims (Counts 8 and 13).

### ii.    Officer Puerto's Additional Grounds for Summary Judgment

With respect to Officer Puerto, the defendants argue that under the fellow officer

rule, Officer Puerto was entitled to rely on the representations of Sergeant Martinez in

the absence of any objective evidence contradicting those representations. The

defendants further argue that Officer Puerto had probable cause or arguable probable

cause to arrest the plaintiff for assault and resisting without violence. Finally, the

defendants argue that Officer Puerto is immune from all state law torts because he

acted without malice or bad fath. These arguments are addressed below.

### (a.)    Fellow Officer Rule

The defendants maintain that "Officer Puerto is . . . entitled to summary judgment

because he was permitted to rely on Sergeant Martinez's version of events and cannot

be held liable for doing so." Defendants Thomas Martinez, Daniel Puerto and

Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum

of Law (DE# 81 at 9, 3/4/15). The defendants rely on Florida's fellow officer rule: "'The

fellow officer rule allows an arresting officer ***to assume*** probable cause to arrest a

suspect from information supplied by other officers.'" <u>Id.</u> at 10 (quoting <u>Voorhees v.</u>

<u>State</u>, 699 So. 2d 602, 609 (Fla. 1997) (emphasis in motion)). According to the

defendants, "[a] police officer must ***actually*** be aware of some ***objective*** exculpatory

50

evidence before the presumption that a fellow officer has acted in good faith is overcome." Id. (emphasis in original).

The plaintiff states that he "does not contend the lack of probable cause for Officer Puerto to arrest imputes civil liability upon Officer Puerto had he unwittingly relied upon the lies and misrepresentations of his fellow officer, Sergeant Martinez, in arresting [the p]laintiff." Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 15, 3/25/15). Rather, the plaintiff maintains that:

> the Amended Complaint alleges Officers Puerto and Martinez colluded or otherwise acted in concert to falsely arrest him, imprison him, and maliciously prosecute him; that **Officer Puerto knowingly participated in fabricating probable cause (as to what occurred both inside and outside the supermarket), and that he disregarded exculpatory evidence and third party witnesses, Ms. Garcia and Mr. Delgado, and evidence, the Sedano's video, immediately communicated to him which exonerated [the p]laintiff of criminal wrongdoing. Incredibly, [Officer] Puerto disregarded these witnesses and video as not contributing anything to his case**.

Id. at 15-16 (emphasis added).

At the summary judgment stage, the plaintiff must do more than rely on the allegations in his Amended Complaint; the plaintiff must proffer record evidence to support his claims. See Am. Civil Liberties Union of Fla., Inc. v. Dixie Cnty., Fla., 690 F.3d 1244, 1249 (11th Cir. 2012) (stating that "[t]he standard for evaluating a motion for summary judgment is different than that for a motion to dismiss, and summary judgment requires a district court to look at all the evidence -- "'beyond the complaint, to the depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any.'") (quoting <u>Bochese v. Town of Ponce Inlet</u>, 405 F.3d 964, 976 (11th Cir. 2005)); <u>LaChance v. Duffy's Draft House, Inc.</u>, 146 F.3d 832, 835 (11th Cir. 1998) (noting that "[t]o defeat a motion for summary judgment, the nonmoving party may not rely on 'mere allegations.' It must raise 'significant probative evidence' that would be sufficient for a jury to find for that party.") (footnotes omitted).

Here, the plaintiff must cite to some record evidence to support his statements that "Officers Puerto and Martinez colluded or otherwise acted in concert to falsely arrest him, imprison him, and maliciously prosecute him" and "that Officer Puerto knowingly participated in fabricating probable cause" including "disregarded exculpatory evidence" from third-party witnesses and video surveillance. The plaintiff cites to evidence which Officer Puerto allegedly ignored: the testimony of the cashier and the store manager, the surveillance video and the 9-1-1 call placed by the plaintiff's father. <u>See</u> Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 15-16, 3/25/15).

Although not in his response in opposition to the defendants' summary judgment motion, the Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100, 3/25/15) does contain citations to the record concerning what the plaintiff believes was Officer Puerto's inadequate investigation. The plaintiff denies that Officer Puerto interviewed any witnesses because Officer Puerto did not disclose in the arrest affidavit that he interviewed the cashier, the store manager and the security guard. <u>Id.</u> at 7. However, and as discussed in the "Facts" section of the Report and Recommendation, the

plaintiff has not presented any evidence to rebut Officer Puerto's deposition testimony that he did interview these witnesses on the day of the incident. All the plaintiff has shown is that Officer Puerto did not state in his reports that he interviewed these witnesses.

Similarly, the plaintiff notes that Officer Puerto did not indicate in the arrest affidavit that he dispatched Officer Chica to review the store surveillance video and that Officer Chica reported back to him. See Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100 at 8, 3/25/15). The plaintiff has not presented any record evidence to dispute Officer Puerto's deposition testimony that he in fact asked Officer Chica to review the surveillance video. All the plaintiff has shown is that neither officer indicated in their paperwork that Officer Chica reviewed the surveillance video. Under these circumstances, the plaintiff has not created a factual dispute as to whether Officer Puerto asked Officer Chica to review the surveillance video or that Officer Chica reported back to Officer Puerto that "the videos were not of any evidentiary value to the case." Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (DE# 82 at ¶42, 3/4/15). All the plaintiff has shown is that Officer Puerto did not include these facts in his reports.

As noted above, the plaintiff relies on evidence which Officer Puerto allegedly ignored -- the surveillance video, the testimony of the cashier, the testimony of the store manager and the 9-1-1 call placed by the plaintiff's father -- to support his conclusions that "Officers Puerto and Martinez colluded or otherwise acted in concert [with Sergeant

Martinez] to falsely arrest him, imprison him, and maliciously prosecute him" and "that Officer Puerto knowingly participated in fabricating probable cause" including "disregarded exculpatory evidence." <u>See</u> Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 15-16, 3/25/15). The undersigned will address the evidence available to Officer Puerto in turn.

With respect the testimony of Ms. Garcia (the cashier) and Mr. Delgado (the store manager), neither individual witnessed the entire incident. The cashier told Officer Puerto she did not speak English and she did not witness the entire incident, but that the plaintiff and Sergeant Martinez had a verbal altercation. <u>See</u> Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (DE# 82 at ¶¶35-37, 3/4/15). At the criminal trial, the cashier testified "that while two people in her lane did become involved in an argument . . . they were not screaming at each other . . . that [the p]laintiff did not raise his voice, did not yell at the other man . . . [and] she did not see [the plaintiff] make any gestures at all." Plaintiff's Concise Statement of Material and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 100 at 3, 3/25/15). At best, the cashier's testimony could have established that the plaintiff did not threaten Sergeant Martinez **during the time that she witnessed the incident** and that none of the patrons were reacting to the interaction between the plaintiff and Sergeant Martinez. The store manager told Officer Puerto he did not witness the incident. <u>Id.</u> at ¶38. Thus, the store manager could not have provided exculpatory evidence.

54

With respect to the surveillance video, at best, the surveillance video shows that no one in the store reacted to the verbal dispute the plaintiff had with Sergeant Martinez while in the checkout line. Additionally, the surveillance video does not show that the plaintiff reached for his firearm or in any way threatened Sergeant Martinez with it. However, much of the surveillance video is shot from a far away angle and for a portion of the time, the bodies of the plaintiff and Sergeant Martinez are not visible. Additionally, Officer Puerto testified that he dispatched Officer Chica to review the surveillance video and Officer Chica reported back to him that there was nothing of evidentiary value on the surveillance video. Officer Puerto was entitled to rely on Officer Chica's representation.

The plaintiff also relies on his father's 9-1-1 call which was made in the presence of Officer Puerto and Sergeant Martinez. The plaintiff's verified statement summarizes the relevant portion of the 9-1-1 call as follows:

> In that call, my father told the "9-1-1" operator [that the plaintiff] was having [a] problem with an officer at the Sedano's, who even identified himself as Sgt. Martinez. My father told the operator this officer had been in an "altercation" with [the plaintiff] and that an "Internal Revenue" [sic] investigation resulted. In the "9-1-1" recording, Sgt. Martinez is also heard in the background telling my father not [to] start any sh**" and telling me that I should've kept [my] mouth shut. My father told the operator that a major had told him to call for a supervisor if there was ever a problem and asked that a supervisor be sent to the Sedano[']s.

Plaintiff's Verified Statement in Opposition of Defendants' Motion for Summary Judgment (DE# 99-1 at ¶29, 3/25/15).

The plaintiff further maintains that:

> We also know that Officer Puerto was aware of the IA investigation. He was present during [the p]laintiff's father's hectic "9-1-1" call. [The p]laintiff claims that [Officer Puerto] was even present when Sgt. Martinez told [the

plaintiff], **post arrest**, this is what you get for being a "snitch." [Plaintiff's 3/24/15 Verified Statement at p. 6-¶38]. For some reason, Officer Puerto did not think the IA case was relevant [87-1:146:7-25] to the Thanksgiving Day arrest. [87-1:147:1-3]. So, even after [Sergeant] Martinez told him about the IA investigation, he still arrested [the p]laintiff. [DE87-1:133-12-25, 134-1-7].

Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel

Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated

Memorandum of Law (DE# 98 at 16, 3/25/15) (emphasis added).[38] The problem with

---

[38] The undersigned notes that Officer Puerto testified that he did not hear the plaintiff's father during the 9-1-1 call:

> Q. Page 73, lines nine through 12, the attorney asked you during trial, "Okay. So I'm clear, so the whole time you were in the store and the whole time you were interacting with Mr. Valadez [sic], you had no knowledge of any sort of internal affairs report?" Your answer is, "Correct," right?
>
> A. That is correct.
>
> Q. **Is it your testimony that you have no recollection of what was being said by Eloy Valadez' [sic] father during any 911 calls?**
>
> A. **That's correct.**
>
> *** 
>
> Q. In terms of the information provided to you -- forget about the video or the 911 call -- you were there during the 911 call.
>
> A. Okay.
>
> Q. You just don't remember it; the actual language being spoken in your presence.
>
> A. **I don't remember hearing him making the 911 call.**
>
> Q. **Or any of the words that were being spoken?**
>
> A. **Correct.**

the plaintiff's argument is that Officer Puerto's deposition testimony was that the first

time he learned of the IA investigation was from Sergeant Martinez at the station, *after*

the plaintiff had already been arrested.[39] Thus, Officer Puerto's failure to consider the IA

---

Q. Or Sergeant Martinez responding to Mr. Valadez' [sic] father during the 911 call?

A. I don't recall hearing any interaction between them at the time. I only know that from listening to the recording.

\*\*\*

Q. **But you just don't, as you sit here today, you have no recollection of any of these words or statements being uttered by any of these folk?**

A. **That's correct.**

Q. **Did you hear him at the time, though?**

A. **No, sir.**

Q. **So it's not something that you heard and you forgot whether five minutes later or five days later or five years later. It's that you didn't hear any of this?**

A. **That's correct.**

Deposition of Puerto (DE# 87-1 at 134:23-25, 135: 1-9, 152: 8-23, 153: 11-22, 3/4/15) (emphasis added).

[39] Officer Puerto testified as follows:

Q. **Had Sergeant Martinez, though, told you look, there's an internal affairs complaint that this guy levied against me?**

A. **Not until I was able to speak with him at length after the arrest.**

Q. **Oh, after the arrest?**

A. **Yes, sir.**

Q. So this is that [sic] the station?

report (an investigation he did not know existed at the time of the plaintiff's arrest)

before arresting the plaintiff is irrelevant.

> In their reply, the defendants note the lack of evidence cited by the plaintiff:
>
> [The p]laintiff does not cite to *any* evidence that rebuts Officer Puerto's clear testimony that he both interviewed several witnesses and dispatched a fellow detective to review the video footage. DE 82 ¶¶ 34-42; DE 100 ¶¶ 34-39. For example, he does not cite any testimony from any of these witnesses claiming that Officer Puerto never interviewed them or that [Officer] Chica never returned to the Sedano's to review the video footage. Instead, [the p]laintiff cites *his own* testimony and to his father's testimony disputing Sergeant Martinez's version of events. However, neither [the p]laintiff nor his father testified that Officer Puerto did *not* return to the store to interview witnesses; their testimony thus fails to create a genuine dispute as to whether Officer Puerto conducted a constitutionally deficient investigation. [The p]laintiff also mischaracterizes the store manager's testimony, stating that "Mr. Delgado . . . den[ied] Sgt. Martinez's version of events." DE 100 at 7-8. However, Mr. Delgado testified that the only part of the incident that he saw was when Sergeant Martinez *returned* to the store with Officer Puerto – not the initial interaction between [Sergeant] Martinez and [the p]laintiff. DE 101-3 at 5 (p. 154:2-16).
>
> ***
>
> [The p]laintiff does not cite any evidence showing that anyone other than himself or his father told Officer Puerto that [the p]laintiff did not assault Sergeant Martinez.

> A. Yes, sir.
>
> ***
>
> Q. **The first time that you know about that is at the police station?**
>
> A. **As I recall it. Yes, sir.**
>
> Q. But you still arrested the fellow?
>
> A. Yes, sir.

Deposition of Puerto (DE# 87-1 at 133:12-20, 134: 3-7, 3/4/15) (emphasis added).

***

> And, despite taking [Officer] Chica's deposition, [the p]laintiff does not cite
> to any testimony contradicting the fact that Officer Puerto sent [Officer]
> Chica back to the store to view the videotape. Officer Puerto's failure to
> list [Officer] Chica on a **cost recovery form** does not meet [the plaintiff's]
> burden of demonstrating a disputed issue of fact as to whether Officer
> Puerto **knowingly** arrested [the p]laintiff despite the absence of probable
> cause.

Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Reply to

Plaintiff's Response to Motion for Summary Judgment and Incorporated Memorandum

of Law (DE# 108 at 6-7, 4/6/15) (emphasis in original).

According to the defendants, Officer Puerto is entitled to summary judgment

under the fellow officer rule because "[a]t most, Officer Puerto was presented with

competing factual scenarios and decided to resolve the facts against [the p]laintiff. This

was not objectively unreasonable, especially given his discovery of the concealed

handgun which corroborated Sergeant Martinez's account." Defendants Thomas

Martinez, Daniel Puerto and Miami-Dade County's Reply to Plaintiff's Response to

Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 108 at 8,

4/6/15).

The plaintiff states that "it is well-established that fabricating incriminating

evidence violates constitutional rights." Plaintiff's Memorandum of Law in Opposition to

Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's Motion for

Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 16, 3/25/15).

While the plaintiff, is of course, correct, he has not pointed to any record evidence

suggesting that Officer Puerto fabricated evidence. Construing the facts in the light

most favorable to the plaintiff, all he has shown is that **Sergeant Martinez** fabricated

evidence by lying to Officer Puerto that the plaintiff had threatened him with a suspected firearm. Under the plaintiff's version of the facts **Sergeant Martinez** lied to Officer Puerto. However, the plaintiff has not pointed to any facts showing that Officer Puerto himself fabricated evidence in the arrest affidavit or in any other document.

The plaintiff argues that his case is akin to Kingsland. In that case, the plaintiff was driving a rental truck when she was involved in a collision with an off-duty police officer. Kingsland, 382 F.3d at 1223. As a result of the collision, the plaintiff "suffered head trauma, cried, experienced dizziness, felt sick, and had blurred vision." Id. At all times, the plaintiff claimed the off-duty police officer ran a red light. Id. Although police officers responded immediately to the scene, none of the officers talked to the plaintiff until half an hour had passed. Id. None of the officers asked the plaintiff or any witnesses for a statement of their version of the event. Id. One of the officers claimed that he smelled "an odor of cannabis coming from [the plaintiff]'s vehicle and person." Id. at 1223. A second officer also claimed to have smelled "a 'slight odor' of cannabis on [the plaintiff]'s person." Id. at 1223-24. None of the officers searched the plaintiff's vehicle for cannabis, spoke to the plaintiff's passengers about the smell of cannabis or called a K-9 unit to investigate the suspected cannabis. Id. at 1224. No drugs were ever found and the plaintiff at all times denied using drugs or that there was a smell of cannabis. Despite the plaintiff's complaints of being injured, feeling dizzy and sick and wanting to go to the hospital, the officers administered two sobriety tests which the plaintiff failed because she could not follow directions. Id. The plaintiff was taken to the police station and given between two to four Breathalyzer tests which indicated the

plaintiff had no alcohol in her system. Id. After the plaintiff had passed the Breathalyzer

tests,

> the officer who was writing on a form asked another officer what he should
> then write. The second officer told the first officer to write that [the plaintiff]
> had a strong odor of cannabis emitting from her breath. At that point, the
> first officer threw away the form he was writing on and started writing on a
> new form.

Id. The officers made no mention of the Breathalyzer test in the arrest affidavit even

though the results of the tests were known at the time the arrest affidavit was

completed. Id. at 1224 n.5. Instead, they checked a box indicating that it was unknown

whether the plaintiff was under the influence of alcohol. Id. The officers administered

another drug test requiring the plaintiff to follow instructions and "determined that [the

plaintiff]'s normal faculties were impaired." Id. The officers obtained a urine sample from

the plaintiff, but claimed they never received the results from the urine test which came

back negative for cannabis. Id.

In reversing the district court's ruling in favor of the officers, the Eleventh Circuit

stated:

> If the officers' assessment that [the plaintiff]'s eyes were bloodshot, that
> her speech was slurred, and that either she or her truck smelled of
> cannabis were undisputed or supported by evidence other than the
> defendants' testimony, we would have no problem agreeing with the
> district court's conclusions [that the officers had probable cause to arrest
> the plaintiff and were entitled to qualified immunity]. The record, however,
> contains evidence that contradicts each of these findings and is sufficient
> to overcome summary judgment.

Id. at 1226. The Eleventh Circuit also stated: "We cannot allow a probable cause

determination to stand principally on the unsupported statements of interested officers,

when those statements have been challenged and countered by objective evidence." Id. at 1228.

The facts as they pertain to Officer Puerto, are distinguishable from Kingsland. Here, Sergeant Martinez was an interested officer because he was involved in an IA investigation initiated by the plaintiff. However, Officer Puerto did not know about the IA investigation until after the plaintiff's arrest. Additionally, Officer Puerto was able to corroborate Sergeant Martinez' representation that the plaintiff had threatened him with a suspected firearm when Officer Puerto observed the outline of what appeared to be a firearm beneath the plaintiff's shirt. Officer Puerto also spoke to the cashier, the store manager and the security guard and dispatched Officer Chica to review the store surveillance video.

The plaintiff also notes that:

there was no exigent circumstance present which prevented [Officer Puerto] from conducting a reasonable investigation. Examination of the arrest affidavit reveals no mention of the "patrons and onlookers" being a threat, hostile or impinging upon Officer Puerto's ability to conduct a competent investigation. Aside from the bogus allegation that [the p]laintiff "straightened his arm," the arrest affidavit reveals no issues of concern with the pat down (or search incident to arrest), confiscation of the firearm, or any post-detention exigent circumstance which would inhibit a reasonable investigation being done.

Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 18, 3/25/15). Not surprisingly, the defendants characterize the scene at the crowded supermarket differently:

unlike in Kingsland, this was an evolving and potentially dangerous situation in which Officer Puerto received information from a fellow officer that [the p]laintiff made threats against him and was possibly carrying a

concealed firearm in a crowded public venue. DE 101-1 at 8. On these facts, a reasonable officer would be primarily concerned with controlling the situation and eliminating any potential for violence against the officers or the public.

Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Reply to Plaintiff's Response to Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 108 at 9, 4/6/15).

The evidence does not show that Officer Puerto conducted a constitutionally deficient investigation. As noted above, Officer Puerto spoke to the cashier, the store manager and store security guard. The cashier stated that she witnessed only part of the interaction between the plaintiff and Sergeant Martinez. The store manager and the security guard did not witness the incident. Finally, Officer Puerto was entitled to dispatch Officer Chica and rely on Officer Chica's representation that he reviewed the surveillance video and that there was nothing of evidentiary value on the video. Thus, this is not a situation like Kingsland where the officers did not speak to any of the plaintiff's witnesses, there was objective evidence in the form of at least two Breathalyzer tests that the plaintiff had no alcohol in her system and the alleged smell of cannabis was never verified through a search of the plaintiff's vehicle, the use of a K-9 unit or the discovery of drugs. At best, the plaintiff in the instant case has shown that Officer Puerto did not construe the available evidence in a manner that was favorable to the plaintiff. This is not enough to establish liability. See Dahl v. Holley, 312 F.3d 1228, 1234 (11th Cir. 2002) (stating that "[w]hile [the plaintiff]'s exculpatory statements tended to discredit [the confidential informant]'s version of events, arresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or

63

resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed.").

Additionally, the testimony of the cashier, the store manager, the security guard and the surveillance video would not have negated probable cause or arguable probable cause to arrest the plaintiff for carrying a concealed firearm. Officer Puerto personally witnessed a bulge on the plaintiff that appeared to be an outline of a firearm and then confirmed that suspicion when he removed the firearm from the plaintiff's person. Therefore, Officer Puerto would not have had to consult the surveillance video or the third-party witnesses to determine whether the plaintiff was carrying a concealed firearm.

The Eleventh Circuit has described the fellow officer rule as follows:

> Florida courts apply the fellow[ ]officer rule when the arresting officer was absent for a significant portion of the events that gave rise to probable cause. . . . It is reasonable for an officer in that situation to rely upon his fellow officer's judgment about probable cause. The rule typically requires that the fellow officer actually communicate to the arresting officer the basis for probable cause.

Killmon v. City of Miami, 199 F. App'x 796, 800 (11th Cir. 2006).

In the instant case, Sergeant Martinez falsely[40] represented to Officer Puerto that the plaintiff had threatened him with a suspected firearm. The plaintiff has not presented evidence that Officer Puerto should have known Sergeant Martinez was lying other than the IA investigation, which Officer Puerto did not know about until the plaintiff

---

[40] For purposes of their summary judgment motion, the defendants do not dispute that the plaintiff "never grabbed hold of his firearm, never swore at Sergeant Martinez, and never threatened Sergeant Martinez" during the Thanksgiving Day incident. See Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (DE# 82 at ¶10, 3/4/15).

had already been arrested and the officers were at the station. Officer Puerto corroborated Sergeant Martinez' representation of a threat with a firearm when he observed what appeared to be the outline of a possible firearm underneath the plaintiff's t-shirt. Under these circumstances, Officer Puerto was entitled to rely on Sergeant Martinez' representations under the fellow officer rule and the Court should grant qualified immunity to Officer Puerto.

### (b.) Probable Cause or Arguable Probable Cause to Arrest the Plaintiff for Assault

The defendants maintain that Officer Puerto had probable cause to arrest the plaintiff for assault. See Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81 at 10-13, 3/4/15). The defendants note that under Florida law, "[a]ssault is an 'intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent.'" Id. at 10 (quoting Fla. Stat. § 784.011(1)). The defendants note that:

> In this case, Sergeant Martinez communicated information to Officer Puerto that he had been threatened with a weapon (thought to be a firearm) by [the plaintiff]. Officer Puerto then corroborated this information with the discovery of the concealed firearm on [the plaintiff]'s person. These facts gave Officer Puerto probable cause (or at least arguable probable cause) to believe that an assault had occurred inside the supermarket. After [the plaintiff] was secured, Sergeant Martinez explained to Officer Puerto in greater detail the specific language and actions that [the plaintiff] took. Officer Puerto interviewed witnesses and dispatched a fellow detective to review the surveillance cameras.

Id. at 11.

The defendants further note that the plaintiff's claims survived the defendants' motion to dismiss because:

> "[the p]laintiff allege[d] that Officer Puerto conducted **no** investigation and arrested [the p]laintiff solely because [Sergeant] Martinez told him to do so." DE 40 at 8 (Order on Motions to Dismiss) (emphasis added). The Court found that it was clearly established in 2008 that . . . "'a probable cause determination [cannot] stand principally on the unsupported statements of interested officers, **when those statements have been challenged and countered by objective evidence**" and that "officers should not be permitted to turn a blind eye to exculpatory information." Id. (emphasis added).
>
> The record now before the Court refutes the very basis on which this Court permitted the complaint to proceed. **One**, there is no record evidence that Officer Puerto arrested [the plaintiff] solely because [Sergeant] Martinez told him to. **Two**, Sergeant Martinez's statements were not countered by objective evidence; rather, they were **corroborated** when Officer Puerto discovered [the plaintiff]'s concealed firearm. Puerto Depo. 167:3-7 ("Q: And was the fact that [the plaintiff] was carrying a firearm significant at all to your investigation[]? A: Absolutely. It instantly gave the allegations made by Sergeant Martinez merit."); see also id. 167:18-25. **Three**, Officer Puerto interviewed witnesses and asked the store manager if he had video footage, which he later dispatched another officer to review.

Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81 at 11-12, 3/4/15) (emphasis in original).

The defendants distinguish the instant case from Kingsland because "[h]ere, the only objective evidence that Officer Puerto had was that [the plaintiff] was in fact carrying a concealed firearm, which corroborated Sergeant Martinez's story" that he had just been threatened by someone who appeared to have a firearm inside the supermarket. See Defendants Thomas Martinez, Daniel Puerto and Miami-Dade

County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE#
81 at 12, 3/4/15).

The plaintiff argues that there was no probable cause or arguable probable
cause to support his arrest for aggravated assault or simple assault because "Officer
Puerto's arrest affidavit contains no allegation that any purported threat made by [the
p]laintiff ever placed [Sergeant] Martinez in fear or that violence was imminent."
Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel
Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated
Memorandum of Law (DE# 98 at 5, 3/25/15). The plaintiff cites the following portion of
the arrest affidavit:

> ([Sergeant] Martinez) then advised the ([p]laintiff) to calm down and just
> enjoy his holiday, despite ([the p]laintiff's) repeated use of obscenities and
> verbal abuse. As the victim distanced himself from the ([p]laintiff), the
> ([p]laintiff) loudly stated "Go ahead and leave, Get you[r] p**** a**
> back-up. I got my back up right here b****," while reaching his right hand
> to the right side of his waistband and clutching an unknown bulky item
> concealed under his t-shirt. ([Sergeant] Martinez) then exited the store
> and made contact with this off-duty detective.

Id. at 5. According to the plaintiff, "[t]hese allegations do not establish an assault under
Florida law" because "Officer Puerto has conceded his reports fail to allege that Sgt.
Martinez was in fear." Id. at 6.

In their reply, the defendants cite to Officer Puerto's deposition testimony that
"Sergeant Martinez told him that he was in fear of imminent violence and approached
him 'visibly nervous' and in a 'state of alarm.'" Defendants Thomas Martinez, Daniel
Puerto and Miami-Dade County's Reply to Plaintiff's Response to Motion for Summary
Judgment and Incorporated Memorandum of Law (DE# 108 at 10, 4/6/15) (citing

Deposition of Puerto (DE# 87-1 at 99:23-100:1; 175:25-176:5, 3/4/15)). The defendants also argue that Officer Puerto's failure to include this information in the arrest affidavit does not undermine his unequivocal deposition testimony. Id.

The plaintiff has not presented any case law limiting the Court's probable cause analysis to only those facts contained in the arrest affidavit. "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." United States v. Floyd, 281 F.3d 1346, 1348 (11th Cir. 2002) (per curiam) (quotation marks omitted). Here, Officer Puerto testified at deposition that Sergeant Martinez was visibly nervous and in a state of alarm. Additionally, Sergeant Martinez relayed to Officer Puerto that he had just been threatened by someone who appeared to have a firearm inside the supermarket. "Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances." Kingsland, 382 F.3d at 1226. Here, Officer Puerto had probable cause or arguable probable cause to arrest the plaintiff for assault under the totality of the circumstances.

The plaintiff further argues that there was no threat of imminent violence: "a conditional threat, where as here, a declarant allegedly tells a person he will commit an act at some future time, fails to satisfy the imminent violence requirement." Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 6, 3/25/15).[41] In response to this argument, the defendants state that

---

[41] The undersigned notes that the cases cited in the plaintiff's response to support this argument are state intermediate appellate court cases and not the decisions of the Florida Supreme Court, the Eleventh Circuit or the United States Supreme Court.

"the conditional nature of the threat goes to the element of whether the victim has a well-founded fear of violence and is thus highly case-specific. . . . And given the intensely fact specific nature of this inquiry, it cannot be said that no reasonable officer could find a simple assault on these facts." Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Reply to Plaintiff's Response to Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 108 at 10, 4/6/15). Under the facts of this case, Officer Puerto had probable cause or arguable probable cause to arrest the plaintiff for assault based on the information relayed to him by Sergeant Martinez and on Officer Puerto's observation of what appeared to be the outline of a firearm beneath the plaintiff's shirt. Based on the totality of the circumstances, it cannot be said that no reasonable officer could have found probable cause to arrest the plaintiff for assault.

Lastly, the plaintiff states: "this contention that [the p]laintiff was making some motion or gesture as if he were grabbing a gun (which [the p]laintiff denies, and the other eye witnesses did not see and the surveillance video does not depict), there is no allegation that [the p]laintiff ever removed or pointed a gun at Sgt. Martinez." Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 7, 3/25/15). The defendants maintain that "the arrest affidavit states that [the p]laintiff clutched a bulky item underneath his shirt, which is a sufficient overt act to support a simple assault, regardless of whether it would support an aggravated assault." Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Reply to Plaintiff's Response to Motion for Summary Judgment and Incorporated

69

Memorandum of Law (DE# 108 at 10, 4/6/15). The undersigned agrees with the defendants that at the very least the alleged gesture was sufficient to support arguable probable cause for a simple assault.

The plaintiff also notes that Sergeant Martinez did not call in an assault to the police dispatcher and "instead made a request for 'special information.'" Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 7, 3/25/15). Sergeant Martinez was not concerned that the plaintiff was armed given "that he 'forgot' his gun in his truck." Id. (quoting Sergeant Martinez' deposition testimony). The plaintiff further notes that "in the 'Officer Assaulted Killed Supplement' Report, that [Sergeant Martinez] was *unaware* [the p]laintiff was armed." Id. (emphasis in Response). These allegations relate to what Sergeant Martinez did and did not do. The plaintiff does not explain how these facts tie into ***Officer Puerto's*** probable cause determination.

In determining the existence of probable cause or arguable probable cause, the Court must look to the totality of circumstances. Under the totality of the circumstance – the information relayed by Sergeant Martinez and Officer Puerto's own observation of a bulky item on the plaintiff which later was revealed to be a firearm, Officer Puerto had arguable probable cause to arrest the plaintiff for assault.

### (c.) Probable Cause or Arguable Probable Cause to Arrest the Plaintiff for Resisting Without Violence

The defendants further state that "Officer Puerto . . . had probable cause to arrest [the plaintiff] based on [the plaintiff's] resistance during the Terry stop."

Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for

Summary Judgment and Incorporated Memorandum of Law (DE# 81 at 13, 3/4/15)

(footnote omitted).[42] The defendants note that:

> Florida law provides that "[w]hoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree." Fla. Stat. § 842.02. Based on the information known to Officer Puerto at the time, **he gave a lawful order for [the plaintiff] to put his hands against the wall; [the plaintiff] did not comply with this order. Officer Puerto therefore had probable cause (or at least arguable probable cause) to believe that [the plaintiff] had resisted him without violence**, and he is entitled to summary judgment based on his qualified immunity.

Id. at 14 (emphasis added).

In his response, the plaintiff cites the arrest affidavit. "In the arrest affidavit, the

[o]fficers claimed that [the p]laintiff failed 'to follow their verbal direction to turn around

and place his hands behind his back' at which time he 'refused to comply and

straightened his arms to avoid being handcuffed.'" Plaintiff's Memorandum of Law in

Opposition to Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's

Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 10-

11, 3/25/15) (quoting Arrest Affidavit). The plaintiff has filed a verified statement

---

[42] A Terry stop authorizes "[l]aw enforcement officers [to] briefly detain a person for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged, or is about to engage, in criminal activity." United States v. Diaz-Lizaraza, 981 F.2d 1216, 1220 (11th Cir. 1993) (citing Terry v. Ohio, 392 U.S. 1 (1968)). In his response to the defendants' summary judgment motion, the plaintiff does not address the defendants' characterization of his initial encounter with Officer Puerto as a Terry stop, other than to state "[i]f this was still a police citizen encounter, then there was no lawful order given regardless." Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 12, 3/25/15).

wherein he attests that he did not resist either officer. See Plaintiff's Verified Statement

in Opposition of Defendants' Motion for Summary Judgment (DE# 99-1 at ¶35,

3/25/15), discussed infra. The plaintiff maintains that "[s]ince these facts [alleged in the

arrest affidavit] are not true, and are predicated on fraud and perjury, there is no

arguable probable cause for this charge either." Plaintiff's Memorandum of Law in

Opposition to Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's

Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 11,

3/25/15) ("Where as here, [the p]laintiff contends that he did not resist in any fashion,

and that Officer Puerto lied and fabricated evidence because he and Sergeant Martinez

wanted to arrest him, [the p]laintiff's version of events establish a warrantless arrest

made without probable cause, and Fourth Amendment violation.").

The defendants maintain that the Court should grant summary judgment to

Officer Puerto because "the video of the incident clearly shows Officer Puerto

attempting to gain control over [the plaintiff] and [the plaintiff] pulling away." Defendants

Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary

Judgment and Incorporated Memorandum of Law (DE# 81 at 13-14, 3/4/15). The

defendants further state that "[w]hile the Court must generally credit the plaintiff's

testimony on a summary judgment motion, it may not do so when video evidence

contradicts the plaintiff's testimony." Id. at 14 (citing Scott v. Harris, 550 U.S. 372, 380

(2007)).

In their statement of undisputed facts, the defendants assert that "[a]s [the

plaintiff] exited the store, Officer Puerto instructed him to put his hands against the wall

(so that he could conduct a pat-down for officer safety)." Defendants Thomas Martinez,

Daniel Puerto and Miami-Dade County's Statement of Undisputed Material Facts

Pursuant to Local Rule 56.1 (DE# 82 at ¶23, 3/4/15) (citing Valdes Depo. 108:1-3,

109:3-7; Puerto Depo. 164:6-19). The defendants summarize the events captured on

the surveillance video as follows: "[the plaintiff] pulled away from the wall, extended his

arms, and turned partially around, pushing Officer Puerto backwards." Id. at ¶24 (citing

"Surveillance Video 'policia 47'" 11/28/2008, 11:19:40 to 11:20:13).

     The plaintiff maintains that he did not resist either officer. He has filed a sworn

statement attesting to the following:

> 34. I never refused to comply or failed to comply with any of the [o]fficers' orders, commands or directions. I still had groceries in my hand. My daughter was pushed further away towards my father by Sgt. Martinez. Then one officer was saying put my hands against the wall and another said to put my hands behind my back.

> 35. I never resisted arrest. I did not tense or straighten my arms, pull away from the officers, or prevent them from handcuffing me. Officer Puerto was on one side of me while Sgt. Martinez was on the other. [Trial Transcript @176:2-9]. I put my hands behind my back and they handcuffed me.

Plaintiff's Verified Statement in Opposition of Defendants' Motion for Summary

Judgment (DE# 99-1 at ¶¶ 34-35, 3/25/15).

     The plaintiff also argues that he was given conflicting orders:

> The [o]fficers now concede they gave [the p]laintiff simultaneous conflicting orders. It is impossible for a person to place his hands on a wall and simultaneously put them behind [his] back. While the arrest affidavit reflects one thing [DE 88-5:2], Officer Puerto believes he may have directed [the p]laintiff to put hands on the wall, doing so before telling him to put his hands behind his back. [Puerto Dep. 77:13-21]. An order which requires a person to put his hands on the wall while another directs him to put his hands behind his back are conflicting directives.

Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 11, 3/25/15). The plaintiff also cites to Officer Puerto's criminal trial testimony wherein he "testified he *asked*, not ordered, [the p]laintiff to put his hands behind his back." Id. at 12 (emphasis in Response). Finally, the plaintiff states: "If this was still a police citizen encounter, then there was no lawful order given regardless." Id.

> In their reply, the defendants state that:
>
> [the p]laintiff does not respond *at all* to the video evidence showing that he resisted Officer Puerto by pulling away from the wall and turning around. Instead, [the p]laintiff claims that Officer Puerto gave him contradictory commands – neither of which was to turn around – despite his own testimony that Officer Puerto instructed him to place his hands against the wall. DE 82-3 at 8 (p. 108:1-3). This Circuit does not permit a plaintiff to repudiate his own deposition testimony to avoid summary judgment. See Evans v. Stephens, 407 F.3d 1272, 1278 (11th Cir. 2005).

Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Reply to Plaintiff's Response to Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 108 at 11, 4/6/15).

> The plaintiff does cite to the surveillance video as evidence that he did not resist arrest. The plaintiff has filed his father's affidavit which attests as follows:
>
> My son did not struggle with the officers. He did not refuse to turn around or place his arms behind his back; he did not pull his arms away, did not tense his arms, straighten them or stiffen them or otherwise cause the officers any difficulties in handcuffing him. [Camera 47 Policia, Still Photograph @**11:20:20 and 11:20:30**].

Verified Statement of Eduardo Valdes in Opposition of Defendants' Motion for Summary Judgment (DE# 103-1 at ¶65, 3/25/15) (emphasis added). The problem is

that the plaintiff cites a **later** part of the video and does not address the portion before

that, where the plaintiff stepped away from the officers causing Officer Puerto to step

back in response. See DE# 92, Surveillance Video "policia 47" 11/28/2008, 11:19:37 to

11:20:13. That portion of the surveillance video depicts the plaintiff stepping back and

away from Officer Puerto causing Officer Puerto to also step back in response to the

plaintiff's movement. Id

The Supreme Court has stated that "[w]hen opposing parties tell two different

stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts for purposes of ruling

on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). In

Harris, the Supreme Court reversed the Eleventh Circuit's decision upholding a district

court's denial of a police deputy's motion for summary judgment based on qualified

immunity where there was video footage of a high speed police chase in pursuit of the

plaintiff. Id. at 379-80. In light of the video evidence, the Supreme Court stated "[the

plaintiff]'s version of events is so utterly discredited by the record that no reasonable

jury could have believed him. The Court of Appeals should not have relied on such

visible fiction; it should have viewed the facts in the light depicted by the videotape." Id.

380-81.

With respect to the use of video evidence at the summary judgment stage to

contradict a party's account, the Eleventh Circuit has since stated:

> In the context of cases involving video evidence, this Court will accept the
> video's depiction over the opposing party's account of the facts where the
> video obviously contradicts that version of the facts. . . . But, even where
> the entire series of events is recorded, **video evidence is not obviously
> contradictory if it fails to convey spoken words or tone, or fails to**

**provide an unobstructed view of the events**. . . . In
Pourmoghani-Esfahani [v. Gee, 625 F.3d 1313, 1315, 1316 n.2 (11th Cir.
2010)], this Court declined to rely on video evidence to discredit the
plaintiff's version of events entirely, because t**he video lacked sound and
was periodically obstructed**.

Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011) (emphasis added).

The undersigned has reviewed all of the surveillance videos submitted by the

parties, including the "Surveillance Video 'policia 47'" cited by both parties and finds that

the surveillance video was not so "obviously contradictory" to the plaintiff's account so

as to resolve a factual dispute. The undersigned notes that there is no audio

component to the surveillance video, thus Officer Puerto's commands were not record.

Additionally, the camera is located inside the store and the events being filmed occur

just outside the entrance. The daylight outside the store makes it difficult at times to

view the parties' actions. In sum, the surveillance video in the instant case does not

"blatantly contradict" the plaintiff's account so as to allow the Court to enter summary

judgment on this issue. See Logan, 439 F. App'x at 801 (reversing district court's grant

of summary judgment where although, "the summary judgment motion presented a

close call, the record evidence d[id] not flatly contradict [the plaintiff]'s allegations and,

therefore, his version of the events [could not] be discounted – nor the defendants'

version credited – at th[at] point in the litigation." Logan, 439 F. App'x 798, 801. For

these reasons, construing the facts in the light most favorable to the plaintiff, as the

non-movant, Officer Puerto has not shown probable cause or arguable probable cause

to arrest the plaintiff for resisting without violence.

### (d.)    Section 768.28(9)(a) Immunity

The defendants also seek summary judgment on behalf of Officer Puerto because he did not act maliciously or in bad faith. Section 768.28(9)(a) states, in part, that:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, **unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property**. . . .

Fla. Stat. § 768.28(9)(a) (emphasis added). As such, the defendants argue that "Officer Puerto cannot be held liable for any state law claims merely because he relied on his fellow officer's representations – representations that he then corroborated when he discovered the concealed firearm." Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81 at 14, 3/4/15).

The plaintiff responds that he can overcome section 768.28(9)(a) immunity by showing that both Sergeant Martinez and Officer Puerto acted with bad faith and malice:

> That [Sergeant] Martinez "bore a grudge" and acted with bad faith and malice on Thanksgiving Day when he fabricated a version of events in order to retaliate against [the p]laintiff, is a given.
>
> ***
>
> Officer Puerto also overlooks that [the p]laintiff may demonstrate "malice" in a malicious prosecution by demonstrating "actual malice" or "legal malice." Winn Dixie Stores, Inc. v. Gazelle, 523 So.2d 648, 650 (Fla. 1st DCA 1988). In Adams v. Whitfield, 290 So.2d 49, 51 (Fla. 1974), the Florida [S]upreme [C]ourt explained that legal malice may be inferred

> from, among other things, gross negligence, indicating a wanton disregard
> for the rights of others. Id. at 51. Legal malice can also be established
> solely on the lack of probable cause.

Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel

Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated

Memorandum of Law (DE# 98 at 19-20, 3/25/15).

There is no record evidence of bad faith or malice by Officer Puerto. The plaintiff

has also failed to show "legal malice" because there is no evidence of "gross

negligence indicating a wanton disregard for the rights of others" on the part of Officer

Puerto. As discussed above, Officer Puerto relied on information provided to him by

Sergeant Martinez. Officer Puerto later corroborated this information when he noticed a

bulky item on the plaintiff's person which later turned out to be a firearm. This is not a

case where Officer Puerto had reason to know Sergeant Martinez was lying. Officer

Puerto also conducted his own investigation by speaking with witnesses and

dispatching Officer Chica to review the store surveillance video. Lastly, the plaintiff

cannot show legal malice from a lack of probable cause because, as the undersigned

has explained above, there was probable cause, or at the very least, arguable probable

cause to arrest the plaintiff for unlawfully carrying a concealed firearm in violation of Fla.

Stat. § 790.01(2) and for assault. In sum, Officer Puerto is entitled to immunity under

section 768.28(9)(a) of the Florida Statutes and the Court should enter summary

judgment for Officer Puerto in this regard.

### iii.    The Plaintiff's State Law Claims for False Arrest

As noted earlier, the defendants also argue that they are entitled to summary

judgment on the plaintiff's state law claims for false arrest:

> "The only difference in the probable cause analysis applicable to [] state and federal claims . . . is which party carrie[s] the burden of proving whether probable cause existed." Rankin, 133 F.3d at 1436. "The existence of probable cause constitutes an affirmative defense to the claims of false arrest and imprisonment under Florida law." Id. On a motion for summary judgment, however, where the court finds that "probable cause existed as a matter of law . . . the existence of such probable cause defeats both the federal and state claims." Id. Sergeant Martinez and Officer Puerto, as well as Miami-Dade County, are therefore entitled to summary judgment on the state law false arrest claims.

Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81 at 15, 3/4/15).

Because the undersigned has already determined that there was probable cause, or at the very least, arguable probable cause to arrest the plaintiff for unlawfully carrying a concealed firearm in violation of Fla. Stat. § 790.01(2) and for simple assault, Officer Puerto is also entitled to summary judgment in his favor on the plaintiff's state law claim for false arrest (Count 9). For the reasons discussed above, Sergeant Martinez is not entitled to summary judgment on the state law claim for false arrest (Count 8) because he is not entitled to qualified immunity. Based on the facts accepted as true for summary judgment purposes, Sergeant Martinez lied and fabricated evidence in order to obtain the plaintiff's arrest.

### iv.   The Plaintiff's Malicious Prosecution Claims

In Counts 10 and 11 of the Amended Complaint, the plaintiff asserts state law claims for malicious prosecution against Sergeant Martinez and Officer Puerto.[43] In

---

[43] The plaintiff's section 1983 claims for malicious prosecution (Count 15 and 16) were dismissed by this Court. See Order Adopting Magistrate's Report and Recommendation and Denying Defendants' Motion to Dismiss Except as to Counts 15 & 16 (DE# 40 at 10, 9/27/13) and were not repled by the plaintiff. Thus, only state law claims of

order to prevail on a claim of malicious prosecution under Florida law, the plaintiff must

establish the following:

> (1) an original judicial proceeding against the present plaintiff was
> commenced or continued; (2) the present defendant was the legal cause
> of the original proceeding; (3) the termination of the original proceeding
> constituted a bona fide termination of that proceeding in favor of the
> present plaintiff; (4) there was an absence of probable cause for the
> original proceeding; (5) there was malice on the part of the present
> defendant; and (6) the plaintiff suffered damages as a result of the original
> proceeding.

Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004). The defendants

maintain that the plaintiff cannot meet at least three of these elements. See Defendants

Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary

Judgment and Incorporated Memorandum of Law (DE# 81 at 15, 3/4/15). According to

the defendants, the plaintiff cannot show that either officer instigated a criminal

prosecution against him, that there was an absence of probable cause or that "both

officers acted with subjective malice toward him." Id. at 15-16.

The defendants note that "the prosecutor exercised independent judgment and

introduced evidence at trial apart from the officers' testimony." Defendants Thomas

Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and

Incorporated Memorandum of Law (DE# 81 at 16, 3/4/15). Thus, the allegedly

fabricated evidence was not the only source in the decision to prosecute the plaintiff.

The defendants further maintain that there was probable cause to arrest the plaintiff. Id.

Finally, the defendants argue that the plaintiff is unable to "show that both officers acted

with subjective malice toward him." Id.

---

malicious prosecution are addressed in this Report and Recommendation.

The plaintiff does not appear to address the defendants' argument that the prosecutor exercised her judgment in bringing the criminal proceedings against the plaintiff and therefore Sergeant Martinez and Officer Puerto were not the legal cause of the criminal proceedings.[44] The plaintiff responds to the defendants' argument that the record fails to show both officers acted with malice as follows:

> That [Sergeant] Martinez "bore a grudge" and acted with bad faith and malice on Thanksgiving Day when he fabricated a version of events in order to retaliate against [the p]laintiff, is a given. His version of events is contradicted by each and every civilian witness and the objective video evidence. Fraud and perjury will never establish probable caus[e].
>
> \*\*\*
>
> Officer Puerto also overlooks that [the p]laintiff may demonstrate "malice" in a malicious prosecution by demonstrating "actual malice" or "legal malice." Winn Dixie Stores, Inc. v. Gazelle, 523 So.2d 648, 650 (Fla. 1st DCA 1988). In Adams v. Whitfield, 290 So.2d 49, 51 (Fla. 1974), the Florida [S]upreme [C]ourt explained that legal malice may be inferred from, among other things, gross negligence, indicating a wanton disregard for the rights of others. Id. at 51. Legal malice can also be established solely on the lack of probable cause. Id. at 51-52. See also Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1357 (Fla. 1994) (legal malice, if based on a showing of gross misconduct or willful and wanton disregard of a plaintiff's rights, would be sufficient to even support a punitive damage award).

Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel

Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated

---

[44] The plaintiff does acknowledge the argument – "that the legal cause of the filing of formal criminal charges against [the p]laintiff lies not with the [o]fficers but with the Office of the State Attorney" – but does not appear to otherwise address it in his response. See Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 2, 3/25/15).

Memorandum of Law (DE# 98 at 19-20, 3/25/15).[45] As noted above, the plaintiff has not shown malice, actual or legal, on the part of Officer Puerto. Because the plaintiff cannot meet one of the elements of his malicious prosecution claim against Officer Puerto, Officer Puerto is entitled to summary judgment on this claim (Count 11).

Sergeant Martinez is not entitled to summary judgment on the plaintiff's malicious prosecution claim. Although the defendants are correct that a prosecutor's decision to bring a criminal proceeding against the plaintiff generally breaks the chain of causation, that is not the case where at least part of the evidence presented to the prosecutor was fabricated. See Williams v. Miami-Dade Police Dep't, 297 F. App'x 941, 946 (11th Cir. 2008) (stating that "in the context of a false arrest, '[t]he intervening acts of the prosecutor, grand jury, judge and jury-assuming that these court officials acted without malice that caused them to abuse their powers – each break the chain of causation **unless plaintiff can show that these intervening acts were the result of deception or undue pressure by the defendant policemen**.'") (quoting Barts v. Joyner, 865 F.2d 1187, 1195 (11th Cir. 1989) (emphasis added). In Williams, the Eleventh Circuit reversed the district court's finding that the plaintiff had failed to show that the officer was the legal cause of the original prosecution, where the plaintiff's "malicious prosecution claim against [the officer wa]s based upon [the officer]'s alleged

---

[45] In their reply, the defendants state that the plaintiff did not respond to the malicious prosecution arguments raised in the defendants' summary judgment motion. Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Reply to Plaintiff's Response to Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 108 at 11, 4/6/15). The undersigned has reviewed the plaintiff's response and it appears that the plaintiff has responded to some (though not all) of the arguments raised by the defendants on the malicious prosecution claim. The confusion arises because the plaintiff's response is organized in a different manner than the defendants' motion.

act of fabricating evidence, which resulted in the prosecutor being presented with false and misleading evidence." Id. at 947. Similarly here, the plaintiff's malicious prosecution is based on the alleged fabrication of evidence. Although the prosecutor used the surveillance video as evidence in her trial, the prosecutor must have relied, at least in part, on Sergeant Martinez' evidence to support the disorderly conduct/breach of peace charge where the surveillance video did not show onlookers or a commotion and none of the witnesses (the cashier and store manager) observed a disruption. Thus, the only available evidence to bring that charge must have come from Sergeant Martinez. Additionally, the facts accepted as true for summary judgment purposes are sufficient to create at the very least a genuine issue of material fact as to whether Sergeant Martinez acted with malice and whether there was probable cause to arrest the plaintiff for resisting without violence and disorderly conduct/breach of peace. The Eleventh Circuit stated in Kingsland that "'[i]t is well settled that in an action to recover damages for malicious prosecution where, as here, the evidence is in dispute, the existence or non-existence of malice and want of probable cause are questions of fact for the jury.'" Kingsland, 382 F.3d at 1235 (quoting Good Holding Co. v. Boswell, 173 F.2d 395, 399 (5th Cir. 1949)). The plaintiff's state law claim for malicious prosecution against Sergeant Martinez (Count 10) should proceed to trial.

Officer Puerto, on the other hand, is entitled to summary judgment on the plaintiff's malicious prosecution claim. With respect to Officer Puerto, there is no record evidence that he falsified or fabricated evidence. There is no evidence that Officer Puerto presented false evidence to the prosecutor. As noted earlier, Officer Puerto was entitled to rely on the representations of Sergeant Martinez in determining that there

was probable cause to arrest the plaintiff. Although the surveillance video itself is insufficient to contradict the plaintiff's version of events that he did not resist the officers, it does show the plaintiff, at one point, stepping back, causing Officer Puerto to also step back. Thus, the undersigned cannot conclude that Officer Puerto fabricated the facts surrounding the resisting without violence charge. Finally, there is no record evidence of malice on the part of Officer Puerto for the reasons stated earlier. Accordingly, the plaintiff cannot meet all the elements of a malicious prosecution claim against Officer Puerto and summary judgment should be entered in Officer Puerto's favor as to the malicious prosecution claim (Count 11).

      **v.**      **The Plaintiff's Concert of Action Claim**

      The defendants argue that they are entitled to summary judgment on the plaintiff's concert of action claim for three reasons: (1) "the underlying false arrest and malicious prosecution claims fail against either or both of the officers, it follows that no concert of action claim may lie;" (2) "this cause of action, which historically arose for negligent conduct undertaken pursuant to a common design, has not been applied by Florida's appellate court to the type of intentional torts committed here" and the "[d]efendants respectfully renew their objection to the application of this unsettled doctrine to the torts asserted in this case" and (3) there is no record evidence of a common plan or design between the officers. <u>See</u> Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81 at 17, 3/4/15).

      The first argument is based on the premise that the plaintiff's false arrest and malicious prosecution claims will not survive summary judgment. However, and as

noted above, the false arrest claims and the malicious prosecution claim against Sergeant Martinez should survive summary judgment.

The second ground is essentially a motion for reconsideration of the Court's prior ruling. At the motion to dismiss stage, the magistrate judge in this case noted that the cases cited in the Report and Recommendation "clearly show[ed] that concert of action claims are viable under Florida law." Valdes, 2013 WL 5429938, at *16. In that same report and recommendation, the magistrate judge noted that "'[a]n implied concert of action between tortfeasors may grow out of the status or relation of the parties and the conditions under which the tortious acts proximately cause an actionable injury.'" Id. (quoting Symmes v. Prairie Pebble Phosphate Co., 66 Fla. 27, 34 (1913)). This Court affirmed and adopted the Report and Recommendation of the magistrate judge. With respect to the plaintiff's concert of action claim, the district court stated:

> Defendants further object that the Magistrate erroneously expanded the concert of action doctrine. Defendants argument is not persuasive. The "general rule of liability provides that all those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit, are equally liable with him." W. Prosser, Law of Torts 59 (3d ed. 1964) (quoted in Anderson v. Nasser, 438 F.2d 183, 198 (5th Cir. 1971) (modified on rehearing 456 F.2d 835)). This general rule has been applied to police officers. See Anderson v. Nasser, 438 F.2d at 198; Nesmith v. Alford, 318 F.2d 110 (5th Cir. 1963). The Magistrate did not err in denying Defendant's Motion to Dismiss and permitting the concert of action claims to proceed.

Valdes, 2013 WL 5429938, at *5 (footnote omitted). The Court should persist in its prior ruling. The defendants merely restate their disagreement with the Court's ruling and have not proffered sufficient grounds to warrant reconsideration of a prior ruling.

As to the third ground, a lack of any record evidence that the officers acted in accordance with a common plan or design, the defendants argue:

> The undisputed testimony is that on November 27, 2008, Sergeant Martinez ran into [the plaintiff] by sheer luck and that Officer Puerto spontaneously took police action when Sergeant Martinez alerted him of the threat that [the plaintiff] made inside the supermarket. The record is devoid of any evidence that Sergeant Martinez and Officer Puerto acted in accordance with an express or tacit agreement to falsely arrest [the plaintiff] or to maliciously initiate criminal charges against him. Without proof of an such agreement and causation, the concert of action claim fails.

Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81 at 17, 3/4/15).

The plaintiff maintains that "there is sufficient evidence in the record which will allow a jury to decide whether Officer Puerto colluded or acted in concert with Sgt. Martinez in falsely arresting [the p]laintiff." Plaintiff's Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel Puerto and Miami Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 20, 3/25/15).

The plaintiff cites to the following:

> Despite the lack of a single report documenting his "investigation" pertaining to the witnesses in this case, Officer Puerto now claims that he *actually interviewed* the cashier and manager, and after doing so, immediately determined they had nothing to lend to the probable cause analysis! What Office Puerto refuses to acknowledge is that the relevance of the information these witnesses have is that they *did not see or hear* close [sic] to Sgt. Martinez's version of events. This is why these witnesses were so vital in the criminal case. The manager was not present for the purported assault as Sgt. Martinez claimed[.] He denied having any such knowledge. This is confirmed in the surveillance video, which Officer Puerto, claims lacked evidentiary value in the state court criminal matter, but not so now.

Id. at 19-20 (emphasis in original). In their reply, the defendants state that the plaintiff did not "respond to the [o]fficers' arguments regarding the concert of action claim and does not direct the Court to record evidence of a common plan or agreement between Sergeant Martinez and Officer Puerto to violate [the p]laintiff's rights." Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Reply to Plaintiff's Response to Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 108 at 11, 4/6/15). The undersigned agrees with the defendant that there is no record evidence of a common plan or agreement between Sergeant Martinez and Officer Puerto. Accordingly, the Court should enter summary judgment on the concert of action claim (Count 12).

>    **v.    Whether Miami-Dade County is Entitled to Summary Judgment Based on the Sovereign Immunity Doctrine**

The defendants further argue that Miami-Dade County is entitled to summary judgment on the plaintiff's claim of false arrest and imprisonment (Count 17). The defendants maintain that the doctrine of sovereign immunity shields the Miami-Dade County from liability. Section 768.28 provides, in part, that:

> The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). The defendants note that "[i]n [the plaintiff]'s sworn version of events, [Sergeant] Martinez acted in bad faith, maliciously, or with wanton disregard for [the p]laintiff's rights or safety, such that [the plaintiff] cannot maintain any claims against the County." Defendants Thomas Martinez, Daniel Puerto and Miami-Dade

County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE#
81 at 19, 3/4/15).

The plaintiff acknowledges that Miami-Dade County cannot be held liable for the
actions of Sergeant Martinez: "[the p]laintiff concedes that the evidence against Sgt.
Martinez is overwhelming as to his acting in bad faith, malice, etc." Plaintiff's
Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel Puerto and
Miami Dade County's Motion for Summary Judgment and Incorporated Memorandum
of Law (DE# 98 at 20 n.2, 3/25/15). With respect to whether Officer Puerto or Miami-
Dade County should be liable, the plaintiff maintains that it is a jury question:

> whether Officer Puerto is liable for false arrest or the County is, depends
> on whether a jury finds that Officer Puerto acted with ***bad faith or malice
> or in a manner exhibiting wanton and willful disregard of human
> rights, safety, or property*** during an incident of alleged excessive force[46]
> is one that ***"must be put to the fact-finder"*** for resolution.

Id. at 20 (footnote added) (quoting McGhee v. Volusia Cnty, 679 So. 2d 729, 733 (Fla.
1996)).

In their reply, the defendants state that the plaintiff has abandoned his claim
against Miami-Dade County. See Defendants Thomas Martinez, Daniel Puerto and
Miami-Dade County's Reply to Plaintiff's Response to Motion for Summary Judgment
and Incorporated Memorandum of Law (DE# 108 at 11, 4/6/15). However, what the
plaintiff argues is that the jury should determine whether Miami-Dade County or Officer
Puerto should be liable for the alleged false arrest and imprisonment. See Plaintiff's
Memorandum of Law in Opposition to Defendants Thomas Martinez, Daniel Puerto and

---

[46] The plaintiff has not asserted a claim of excessive force against Miami-Dade County
or Officer Puerto.

Miami Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 98 at 20, 3/25/15).

For the reasons discussed above, Officer Puerto had probable cause or arguable probable cause to arrest the plaintiff. Therefore, Miami-Dade County cannot be held liable for the actions of Officer Puerto. Additionally, the parties do not dispute that Miami-Dade County cannot be held liable for the actions of Sergeant Martinez because under the plaintiff's version of the facts, Sergeant Martinez acted in bad faith and exhibited malice. Accordingly, Miami-Dade County is entitled to summary judgment on the false arrest claim asserted against it (Count 17).

## CONCLUSION

The Count should enter summary judgment in favor of the plaintiff with respect to the defense of qualified immunity as it pertains to the February 21, 2008 incident. The Court should grant summary judgment to Officer Puerto for all state and federal false arrest claims (Counts 9, 14) and the malicious prosecution claim (Count 11). The Court should enter summary judgment in favor of Sergeant Martinez and Officer Puerto on the concert of action claim (Count 12). The Court should also enter summary judgment in favor of Miami-Dade County on the state law false arrest claim (Count 17).

**<u>RECOMMENDATION</u>**

In accordance with the foregoing, the undersigned respectfully recommends that the Defendants Thomas Martinez, Daniel Puerto and Miami-Dade County's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 81, 3/4/15) and the Plaintiff's Motion for Summary Judgment (DE# 83, 3/4/15) be **GRANTED in part and DENIED in part**. The parties have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Court Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. <u>See</u> <u>LoConte v. Dugger</u>, 847 F.2d 745 (11th Cir. 1988); <u>RTC v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this **5th** day of November, 2015.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All counsel of record

90