UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-22426-CIV-MORENO/O'SULLIVAN

ELOY VALDES,

      Plaintiff,

v.

MIAMI-DADE COUNTY, THOMAS
MARTINEZ, ORLANDO SANCHEZ,
WILLIAM LOPEZ and DANIEL PUERTO,

      Defendants.

_____/

## ORDER

THIS MATTER is before the Court on the Defendants' Omnibus Motion in Limine and Incorporated [sic] Memorandum of Law (DE# 111, 4/14/15) and the Plaintiff's Motions in Limine (DE# 112, 4/14/15).

## BACKGROUND

The claims asserted by the plaintiff in the instant case stem from two incidents. The plaintiff alleges that on February 21, 2008 ("February 21, 2008 incident"), he was beaten at the Hammocks District Police Station by Sergeant Martinez, Officer Sanchez and Officer Lopez. The plaintiff further alleges that on November 27, 2008 ("Thanksgiving Day incident"), he was arrested without probable cause or arguable probable cause by Sergeant Martinez and Officer Puerto at a supermarket.

## ANALYSIS

The Court has broad discretion in determining the admissibility of evidence. United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998). "The real purpose of a

motion in limine is to give the trial judge notice of the movant's position so as to avoid

the introduction of damaging evidence which may irretrievably affect fairness of the trial.

A court has the power to exclude evidence in limine only when evidence is clearly

inadmissible on all potential grounds." Stewart v. Hooters of Am., Inc., No. 8:04-CV-40-

T-17-MAP, 2007 WL 1752843, *1 (M.D. Fla. 2007) (citing Luce v. United States, 469

U.S. 38, 41 (1984)). The Court will address the parties' motions below.

1.      **Defendants' Omnibus Motion in Limine**

        The defendants seek to exclude the following evidence from trial: "(1) evidence

of alleged violations of internal police department rules, regulations, or procedures (2)

character evidence such as past complaints, discipline, or other purported prior bad

acts of the police officers and (3) testimony challenging the validity of [the p]laintiff's

arrest on February 21, 2012." Defendants' Omnibus Motion in Limine and Incroproated

[sic] Memorandum of Law (DE# 111 at 1, 4/14/15).

        **(a.)    Evidence of Alleged Violations of Internal Police Department Rules,
                Regulations, or Procedures**

        The defendants seek to exclude from trial evidence "that the officers violated

police procedures or regulations." Defendants' Omnibus Motion in Limine and

Incorporated [sic] Memorandum of Law (DE# 111 at 1, 4/14/15). They argue that:

> [t]he introduction of evidence that police officers violated a standard of
> conduct other than the standard governing [the p]laintiff's claims for
> liability in this action is not relevant under Fed. R. Evid. 401 and is
> inherently prejudicial under Fed. R. Evid. 403 because it creates the
> obvious risk that the jury will improperly infer that the [o]fficers are liable
> for the claims asserted in this action based on their allege violation of
> internal police rules and procedures.

Id.

2

The plaintiff seeks to introduce the Operational Plan for the "sweep" conducted on February 21, 2008 and portions of the Miami-Dade Police Department Policy Manual to show that the officers did not follow procedure when they removed the plaintiff from the "command post" outside the station and placed him in an interview room inside the station:

> [The p]laintiff contends that by the [o]fficers doing this, they disregarded the "Operational Plan" established for the "enforcement sweep" which mandated that [the plaintiff] be processed by the "command post" set up outside the station and then transported to the jail. [The plaintiff] claims the [o]fficers violated the "operational plan" so they would not be seen inflicting a beating upon [the p]laintiff by non-police personnel. [The p]laintiff also contends that the [o]fficers' position that they were simply using the upstairs "interview room" as a "holding cell" is rebutted by specific departmental policy prohibiting the use of "interview rooms" in such a manner.

Plaintiff's Response to Defendants' Omnibus Motion in Limine (DE# 115 at 2, 4/24/15). The plaintiff acknowledges that the constitutionality of the officers' use of force is not determined by "whether they violated departmental policy." Id. at 3. Nonetheless, the plaintiff maintains that the Operational Plan and portions of the Miami-Dade Police Department Policy Manual should still be considered by the jury in the instant case:

> the relevance of the "operational plan" is to demonstrate the department had protocol in place in regards to the processing of [the p]laintiff after his arrest during the "sweep." Although these [o]fficers knew [the p]laintiff was to be processed at the "command post" set up outside the station, they decided to take him inside the station to the "interview room" upstairs. Contrary to the [o]fficers' contention, departmental policies are relevant to establish an ordinary practice or general custom and are admissible as a "standard by which the conduct under scrutiny can be compared." . . . Departmental policy also contradicts the [o]fficers' contention that interview rooms are the functional equivalent of a "holding cell" and they are authorized to use them in this fashion.

Id.

3

In their reply, the defendants state that "whether [the officers] complied with [Miami-Dade Police Department]'s internal rules and regulations on the processing on [sic] inmates is not relevant and, even if it were, 'its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury.'" Defendants' Reply to Plaintiff's Response to Omnibus Motion in Limine and Incorpoated [sic] Memorandum of Law (DE# 122 at 2, 5/4/15) (quoting Fed. R. Evid. 403). The defendants argue that the officers' alleged violations of department regulations are immaterial to the issue of whether they used excessive force on the plaintiff. In a footnote, the defendants further argue that if the Court allows the introduction of this evidence, then it would be "even more crucial" to permit the defendants to introduce evidence of the "not sustained" results of the Internal Affairs ("IA") investigation. Id. at 3 n.1.[1]

Police department regulations may not be used to impose civil liability on a police officer. Brown v. City of Clewiston, 644 F. Supp. 1417, 1421 (S.D. Fla. 1986). However, the plaintiff is not seeking to introduce this evidence to establish the standard of liability in the instant case. Rather, the plaintiff is seeking to introduce the Operational Plan for the "sweep" and portions of the Miami-Dade Police Department Policy Manual to show that the officers deviated from the standard procedures so that they could have the opportunity to commit battery on the plaintiff. The plaintiff should be permitted to present this evidence. In Brown, this Court noted that while police department regulations could not be used to impose civil liability, they may be relevant to other

---

[1] The admissibility of the results of the IA investigation will be addressed by the Court in ruling on the Plaintiff's Motions in Limine (DE# 112, 4/14/15) below.

4

issues in the case. Brown, 644 F. Supp. at 1421 (noting that although not argued by the plaintiff, "the stricter police department regulations . . . would be relevant to rebut [the officer]'s objective good faith reliance on the Florida Statute permitting the use of deadly force."). In their response to the plaintiff's motion in limine, the defendants state that they will introduce lay testimony from the defendant police officers and from other officers to establish "routine police procedures." Defendants' Response to Plaintiff's Motion in Limine (DE# 121 at 8-9, 5/1/15). The plaintiff should be allowed to challenge that evidence with written policies and procedures. The Court further finds that the introduction of this evidence is not unduly prejudicial to the defendants because the Court can properly instruct the jury on the proper standard of liability in the instant case. A jury is presumed to follow the Court's instructions. United States v. Stone, 9 F.3d 934, 938 (11th Cir. 1993).

In accordance with the foregoing, the defendants' motion in limine is **GRANTED in part and DENIED in part**. At trial, the plaintiff may introduce the Operational Plan and only the Miami-Dade Police Department Policy Manual that was in effect on February 21, 2008.[2]

Because the manual was disclosed after the close of discovery, the defendants' request to designate up to two additional witnesses to rebut the plaintiff's arguments

---

[2] The defendants note that the portions of the Miami-Dade Police Department Policy Manual attached to the plaintiff's response appear to be from November 2009 and therefore are "both completely irrelevant and unarguably prejudicial" and "not disclosed until one week after the close of discovery." Defendants' Reply to Plaintiff's Response to Omnibus Motion in Limine and Incorpoated [sic] Memorandum of Law (DE# 122 at 3, 5/4/15) (emphasis in original). Before the plaintiff can introduce the Miami-Dade Police Department Policy Manual at trial, the plaintiff must show that it is the version that was in effect on February 21, 2008.

about these procedures is **GRANTED**.

### (b.)    Prior Bad Acts

The parties agree not to introduce any prior bad acts concerning the police

officers. Thus, it is unnecessary for the Court to rule on this issue.

### (c.)    Testimony Concerning the Validity of the Plaintiff's Arrest

The defendants seek to preclude the plaintiff from testifying that he did not resist

arrest on February 21, 2008. In the instant case, the plaintiff pled "no contest" to

resisting arrest and the state court withheld adjudication. The defendants note that "[the

p]laintiff agrees not to challenge the lawfulness of his arrest or claim that he did not

resist arrest so long as the circumstances surrounding his arrest are universally

excluded from the jury." Defendants' Omnibus Motion in Limine and Incorporated [sic]

Memorandum of Law (DE# 111 at 4, 4/14/15). Nonetheless, the defendants seek to

introduce the circumstances of the plaintiff's February 21, 2008 arrest to show the

plaintiff's motive, intent and state of mind.

In his response, the plaintiff agrees that he should not to be allowed to testify

that he did not resist arrest without violence on February 21, 2008, but disagrees with

the defendants' reasoning. See Plaintiff's Response to Defendants' Omnibus Motion in

Limine (DE# 115 at 4, 4/24/15).[3] Because the plaintiff states that he will not testify at

trial that he did not resist arrest on February 21, 2008, the parties are in agreement and

it is unnecessary for the Court to issue an evidentiary ruling on this matter.

_____

[3] The plaintiff also seeks to exclude the circumstances of the February 21, 2008
arrest. The Court will address that issue in ruling on the Plaintiff's Motions in Limine
(DE# 112, 4/14/15) below.

**(d.)    Effect of Pretrial Rulings**

The defendants further state that "should pretrial rulings prevent the [February 21, 2008 incident and the Thanksgiving Day incident] from being tried simultaneously[,] it may be appropriate to address the issue of whether any information regarding the untried incident should be presented to the jury. The parties agree that it is premature for the Court to address this issue." Because the parties are in agreement that a ruling on this fourth issue is premature, the undersigned will not address it in this Order.

Based on the foregoing, the Defendants' Omnibus Motion <u>in</u> <u>Limine</u> and Incorporated [sic] Memorandum of Law (DE# 111, 4/14/15) is **GRANTED in part and DENIED in part**.

## 2.    Plaintiff's Motion <u>in</u> <u>Limine</u>

In his motion <u>in limine</u>, the plaintiff seeks to exclude the following evidence from trial: (a.) the results of the Miami-Dade Police Department's IA investigation into the alleged beating of the plaintiff by police officers on February 21, 2008; (b.) the circumstances of the plaintiff's February 21, 2008 arrest and his plea of no contest; (c.) information the officers learned about the plaintiff's February 21, 2008 arrest; (d.) evidence of the plaintiff's prior arrests for disorderly intoxication and conducting business without a license; (e.) evidence of the plaintiff's "bad" character; (f.) evidence of the officers' "good" character; (g.) expert testimony by the defendant officers; (h.) comments by the defendant officers concerning the credibility of other witnesses; (i.) references to the golden rule; (j.) jury nullification and conscience of the community arguments; (k.) arguments about sending a message; (l.) references to a lack of insurance; (m.) evidence of the defendants' financial condition; (n.) speaking objections

and (o.) certain improper comments during closing argument.

At the outset, the Court notes that with respect to letters (j.), (k.), (n.) and (o.), the defendants indicate that they have no intention of violating these "basic norms of professionalism and courtroom conduct." Defendants' Response to Plaintiff's Motion in Limine (DE# 121 at 10, 5/1/15). Accordingly, it is unnecessary for the Court to issue evidentiary rulings with respect to letters (j.), (k.), (n.) and (o.). The undersigned will address the remaining letters which are disputed by the parties.

**(a.)   Miami-Dade Police Department's IA investigation**

"[T]he plaintiff moves to exclude the result[s] of the Miami-Dade Police Department's [IA] investigation into the incident of February 21, 2008 as irrelevant under Fed.R.Evid. 401, improper under Rule 404, and prejudicial under Rule 403." Plaintiff's Motions in Limine (DE# 112 at 2, 4/14/15).

The defendants argue that the results of the IA investigation are clearly relevant: "an internal investigation by trained police investigators [that] failed to produce any evidence corroborating [the p]laintiff's allegations of excessive force easily satisfies Rule 401's relevancy requirements because it has a tendency to make a fact of consequence (whether the officers used excessive force against [the p]laintiff) less probable." Defendants' Response to Plaintiff's Motion in Limine (DE# 121 at 2, 5/1/15). The defendants further argue that this evidence is admissible under Rule 408 as "[a] record or statement of a public office if it sets out . . . in a civil case . . . **factual findings from a legally authorized investigation**." Id. (quoting Fed. R. Evid. 803(8)(A)(iii) (emphasis in Response)).

The defendants also argue that "the Rule 403 balancing [test] compels the Court

8

to admit the complete facts surrounding [the] IA investigation, including the result[s], to prevent prejudice **to the Defendants**." Defendants' Response to Plaintiff's Motion in Limine (DE# 121 at 3, 5/1/15) (emphasis added). The defendants note that it appears the "[p]laintiff intends to use the fact that there was an IA investigation in support of his case for liability on his false arrest claims." Id.[4] The defendants state that the "[p]laintiff should not be able to selectively present to the jury only those aspects of the IA investigation that help his case." Id. at 4.

In his reply, the plaintiff argues that the IA investigation report is inadmissible because it does not contain factual findings, but rather witness summaries which are inadmissible hearsay. See Plaintiff's Reply to Defendants' Response to His Motions in Limine (DE# 127 at 1-2, 5/18/15) (citing various cases). The plaintiff notes that "a 'Chain of Command Review' signed by various departmental brass in December of 2008, states that Fla. Stat., §112.533 equates a finding of other than 'sustained' to be the same as a finding of 'no probable cause.'" Id. at 2. The plaintiff argues that this is an inadmissible legal conclusion. Id.[5]

The plaintiff also argues that even if the "'not sustained' findings are the

---

[4] After the February 21, 2008 arrest, the plaintiff was again arrested by Hammocks District police officers on November 27, 2008 (Thanksgiving Day incident). Although the plaintiff is not asserting any false arrest claims stemming from the February 21, 2008 arrest, the plaintiff is asserting false arrest and other claims against the defendants stemming from the Thanksgiving Day incident. The plaintiff's theory of the case is that Sergeant Martinez falsely arrested the plaintiff in retaliation for initiating an IA investigation against Sergeant Martinez and other officers.

[5] The plaintiff also argues that "IA investigation reports which are 'inconclusive' in nature are inadmissible." Plaintiff's Reply to Defendants' Response to His Motions in Limine (DE# 127 at 2, 5/18/15). However, the IA investigation report in the instant case was not inconclusive. It determined that the plaintiff's allegations were "not sustained."

functional equivalent of factual findings" the result of the IA investigation should not be admitted because it is untrustworthy. See Plaintiff's Reply to Defendants' Response to His Motions in Limine (DE# 127 at 2-3, 5/18/15). The plaintiff notes that "the 'source' of the information comes from the [d]efendants/[o]fficers who were purportedly being criminally investigated and facing possible civil action as well. This renders the IA Report/Disposition Panel Memo untrustworthy and inadmissible." Id. at 3 (emphasis omitted). The plaintiff also argues that the IA investigation report is cumulative, presumably because the "facts" contained in the IA investigation report can be introduced through the testimony of the witnesses' whose statements were summarized in the IA investigation report. Id. at 4. Finally, the plaintiff argues that if the Court deems the "not sustained" conclusion admissible as a "finding of fact," the report itself should be excluded and a curative instruction should be given to the jury. Id.

The results of IA investigation are relevant under Rule 401. They clearly relate to an incident in this case, the alleged use of excessive force by the defendant police officers on February 21, 2008. Although the plaintiff also raises a Rule 404 objection, the plaintiff does not explain how this evidence is improper under Rule 404 and the Court will not speculate on the plaintiff's possible arguments.

The Court agrees with the plaintiff that the IA investigation report itself should be excluded from evidence. The IA investigation report consists mostly of witness summaries. It contains the summary of the plaintiff's statement and the statements of 13 police officers including the officers who were involved in the alleged excessive force incident on February 21, 2008. Witness summaries contained in reports are generally excluded under the hearsay rule. See Jessup v. Miami-Dade Cty., 697 F. Supp. 2d

1312, 1322 (S.D. Fla. 2010) aff'd, 440 F. App'x 689 (11th Cir. 2011) (stating that "while 'factual findings' in internal affairs reports are generally admissible under an exception to the hearsay rule, Fed.R.Evid. 803(8), summaries of interviews that are contained in those reports are also double hearsay that cannot be admitted at trial . . . ."). Additionally, the witness summaries are cumulative because presumably the parties will present testimony from various witnesses concerning what took place at the Hammocks District Police Station on February 21, 2008.

While the witness summaries in the report should be excluded as double hearsay, the results of the IA investigation are admissible. The Court finds that the results of the investigation are "factual findings" under Rule 803(8)(A)(iii). The results of the investigation were that all of the plaintiff's allegations were "not sustained" because there was no evidence or independent witnesses to substantiate the plaintiff's allegations. The Supreme Court stated that the term "factual findings," as used in Rule 803(8)(A)(iii), encompasses "factually based conclusions or opinions." Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 162, (1988). Thus, the undersigned concludes that the results of the IA investigation are "factual findings" under Rule 803(8)(A)(iii).

The Court must also consider the plaintiff's challenge to the trustworthiness of the IA investigation. See Mapp v. Mobley, No. 6:11-CV-124, 2013 WL 5350629, at *1 (S.D. Ga. Sept. 23, 2013) (internal affairs investigation report was admissible under Rule 803(8) until opponent of the evidence could demonstrate that the internal affairs investigation was untrustworthy). The Advisory Committee for the Federal Rules of Evidence has suggested four non-exclusive factors that may be relevant to the issue of trustworthiness: "(1) the timeliness of the investigation; (2) the investigator's skill or

11

experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation." Beech Aircraft Corp., 488 U.S. at 7 n. 11 summarizing Advisory Committee's notes). The plaintiff's challenge only goes to the fourth factor. The plaintiff argues that the IA investigation is untrustworthy because "the 'source' of the information comes from the [d]efendants/[o]fficers who were purportedly being criminally investigated and facing possible civil action as well." Plaintiff's Reply to Defendants' Response to His Motions in Limine (DE# 127 at 3, 5/18/15).

In Kokoska v. City of Hartford, No. 3:12-CV-01111 WIG, 2014 WL 4724875, at *4 (D. Conn. Sept. 23, 2014), a case cited by the plaintiff in his reply, the district court excluded as untrusthworthy Use of Less Lethal Force Reports because they were prepared by a defendant in the case and by the supervisor of that defendant. The Court reasoned that "[g]iven the self-interest of the officers involved in the incident . . . these reports should be excluded as untrustworthy." Id.

Here, the determination that the plaintiff's allegations were "not sustained" was made by a three-member Disposition Panel. See Disposition Panel Memorandum (DE# 127-1 at 2-5, 5/18/15). None of the members of the Disposition Panel are defendants in the instant case and the plaintiff has presented no evidence that these panel members were the defendants' supervisors. The evidence gathered in the IA investigation was summarized by Sergeant Leonardo Arteaga who is not a defendant in the instant case and there is no evidence that Sergeant Arteaga supervised the defendants. See Investigation Memorandum (DE# 127-1 at 7-22, 5/18/15). Moreover, while the IA investigation included witness summaries from interested police officers who are defendants in the instant case, it also contained the plaintiff's statements and included

12

photographs of the plaintiff taken by both Sergeant Arteaga and the plaintiff. Id. at 20.

The plaintiff also seeks to exclude the results of the IA investigation under Rule 403. The Court does not find, however, that the results of the IA investigation into the February 21, 2008 incident are unduly prejudicial under Rule 403. Rule 403 provides that:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403. The plaintiff is free to attack the alleged bias of this report on cross-examination and concerns of prejudice may be alleviated by properly instructing the jury. The results of the IA investigation are still "subject to the ultimate safeguard -- the opponent's right to present evidence tending to contradict or diminish the weight of those conclusions." Beech Aircraft, 488 U.S. at 168.

Additionally, in the instant case, the plaintiff seeks to introduce evidence that he initiated an IA investigation into the alleged battery that took place on February 21, 2008. The defendants should also be allowed to introduce evidence of the results of that IA investigation.

In sum, the undersigned finds that the IA investigation report itself is not admissible because it consists mainly of witness statement summaries. The results of the IA investigation may be introduced at trial. Based on the forgoing, the plaintiff's request to exclude the results of the IA investigation is **DENIED**.

### (b.)   The Circumstances of the Plaintiff's February 21, 2008 Arrest and His Plea of No Contest

The plaintiff seeks to exclude evidence of the circumstances of his February 21,

2008 arrest for resisting arrest without violence and his plea of no contest. "[The p]laintiff contends that underlying facts and circumstances of his arrest for resisting arrest without violence, and his plea to said charge in county court, [are] irrelevant under Fed. R. Evid. 401, improper under Rule 404, and prejudicial under Rule 403." Plaintiff's Motions in Limine (DE# 112 at 3, 4/14/15). The plaintiff notes that he has not asserted a false arrest claim with respect to the February 21, 2008 incident and therefore, the circumstances of that arrest should not be introduced at trial.

The defendants respond that they intend to offer evidence of the plaintiff's behavior during the February 21, 2008 arrest to show the plaintiff's state of mind, motive and intent. See Defendants' Response to Plaintiff's Motion in Limine (DE# 121 at 5, 5/1/15). The defendants argue that just prior to his arrest, the plaintiff taunted police, became aggressive and yelled obscenities. The defendants state that they "will argue that [the p]laintiff had an ax to grind against the police because of his February 21, 2008 arrest but, because of his plea, he could not bring a claim against the arresting officers and instead decided to concoct false claims against Defendants Martinez, Sanchez and Lopez." Id. The defendants will:

> also present evidence that [the p]laintiff's hostility toward the police continued during and after his arrest when [the p]laintiff engaged in threatening behavior toward police officers on multiple occasions. [The p]laintiff felt personally insulted and humiliated by his arrest and decided to retaliate against the police by bringing a (false) complaint against the [d]efendants to [the Professional Compliance Bureau (PCB)]. [The d]efendants will also present evidence that [the p]laintiff contemplated using the PCB complaint as a weapon against the police to retaliate for his arrest. In fact, [the p]laintiff called one of the police officers involved in his initial arrest to state that he would not make a complaint if the police would drop the charges against him.

14

Id. at 6.[6] The defendant further note that the jury will already know of the plaintiff's arrest because he was in custody at the time of the alleged incident on February 21, 2008. Id.

In his reply, the plaintiff notes the following: (1) none of the officers who were involved in the plaintiff's February 21, 2008 arrest are defendants in the instant case and the defendant officers were unaware of the circumstances of the plaintiff's arrest at the time he was brought to the police station and therefore evidence of the circumstances of the plaintiff's arrest is inadmissible under Rule 602 because it was not derived from personal knowledge; (2) "Rule 404(b) prohibits the admission of other acts evidence for the purpose of showing that an individual has a propensity or disposition to act in a particular manner," "the application of the rule in a civil action is limited to those cases where the focus is on essentially criminal aspects" and other act evidence is not similar to the offense charge; (3) the defendants misread Carson v. Polley, 689 F.2d

---

[6] With respect to the defendants' claim that the plaintiff told a police officer he would not make a complaint if the police dropped the charges against him, the plaintiff argues that:

> Officer Chica's testimony is that he and [the p]laintiff spoke after [the p]laintiff entered a no contest plea as to the underlying offense. The [o]fficers also offer no explanation as to why this sort of contention, which would result in a violation of at least three felony charges, tampering with a witness, in violation of Fla. Stat., 914.22; solictation [sic], Fla. Stat., §777.04; and extortion, Fla. Stat., §836.05, never resulted in an arrest or even generating an offense incident report by Officer Chica.

Plaintiff's Reply to Defendants' Response to His Motions in Limine (DE# 127 at 5 n.2, 5/18/15). These alleged weaknesses or implausibilities in the defendants' theory of the case may be fodder for cross-examination, but are not a basis to exclude the proffered evidence.

562 (5th Cir. 1982) and (4) any probative value is outweighed by the danger of unfair prejudice.

With respect to the first argument, the undersigned notes that defendants are seeking to introduce the circumstances surrounding the plaintiff's February 21, 2008 arrest to show the "plaintiff's state of mind, motive and intent," not that of the officers. Thus, the fact that the defendant officers who allegedly battered the plaintiff were unaware of the circumstances of the plaintiffs' arrest is immaterial. The plaintiff's argument that the circumstances of the plaintiff's arrest is inadmissible under Rule 602 is not persuasive because the defendants can introduce the circumstances of the plaintiff's February 21, 2008 arrest through the arresting officer(s).

The plaintiff's second and fourth argument are not persuasive. Rule 404(b) provides that: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Eleventh Circuit has stated that:

> a two-part test governs the admissibility of Rule 404(b) evidence. Lanham v. Whitfield, 805 F.2d 970, 972 (11th Cir.1986). Under this test, it must first be determined whether evidence of other acts "is relevant to an issue other than the defendant's character." Id. (internal quotation marks omitted). Second, if the evidence is relevant to an issue other than a defendant's character, "the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403." Id. (internal quotation marks omitted).

Luka v. City of Orlando, 382 F. App'x 840, 842 (11th Cir. 2010). The undersigned finds

that the circumstances surrounding the plaintiff's February 21, 2008 arrest are relevant to an issue other than the plaintiff's character. The circumstances surrounding the February 21, 2008 arrest are relevant to the issues of state of mind, motive and intent and support the defendants' theory that the plaintiff pursued allegedly false claims of excessive force against the defendant officers because the plaintiff had an "ax to grind" against the police and because he believed it would have given him a bargaining chip getting the criminal charges dropped. Thus, the defendants have met the first part of the two-part test.

Next, the Court must determine whether the probative value of this evidence is substantially outweighed by undue prejudice. As to this issue the plaintiff provides a conclusory argument:

> any probative value, if any exists, for such evidence is substantially outweighed by its undue prejudice to [the d]efendant [sic], confusion of the issues, and potential to mislead the jury. Fed. R. Evid. 403. The admission of such evidence, even if remotely relevant, would improperly confuse the issues, mislead the jury, and its probative value, if any, is substantially outweighed by the danger of unfair prejudice.

Plaintiff's Reply to Defendants' Response to His Motions in Limine (DE# 127 at 6, 5/18/15).

The Court concludes that the circumstances of the plaintiff's February 21, 2008 arrest are admissible. The evidence is probative of the state of mind, motive and intent behind the plaintiff's actions including the filing of an IA complaint. Additionally, the jury will already know that the plaintiff was in police custody on February 21, 2008. Thus, any prejudice to the plaintiff in the admission of the circumstances of his arrest is minimal and in any event the alleged prejudice does not substantially outweigh the

probative value of this evidence.

The plaintiff also argues that the defendants misread <u>Carson v. Polley</u>, 689 F.2d

562 (5th Cir. 1982). With respect to the admissibility of the circumstances of the

plaintiff's February 21, 2008 arrest, the defendants cite to <u>Carson</u> in two instances:

> It has also generally been held that police officers accused of excessive force or battery stand in the same shoes as criminal defendants and, given the quasi-criminal nature of these claims, are permitted to offer character evidence in their defense. <u>See</u> <u>Carson v. Polley</u>, 689 F.2d 562, 575-76 (5th Cir. 1982) ("Here, however, we believe that the assault and battery with which the defendants in this suit are charged falls 'close to one of a criminal nature.' Therefore, we apply the character evidence exceptions of Rule 404(a).").

***

> Unlike a criminal defendant, whose liberty interests are at stake, a civil plaintiff's interests in preventing this type of evidence is minimal when weighed against the defendant's interest in combating allegations of quasi-criminal conduct. <u>Perrin</u>, 784 F.2d at 1044-45; <u>Carson</u>, 689 F.2d at 575-76.

Defendants' Response to Plaintiff's Motion <u>in</u> <u>Limine</u> (DE# 121 at 6-7, 5/1/15). The

plaintiff argues that the defendants misread <u>Carson</u> because:

> While the opinion states that exceptions to the Rule 404(a) ban on character evidence may be invoked where the central issue in a case is "close to one of a criminal nature," the court in <u>Polley</u> still held that where a party introduces evidence of his character regarding his temperament or peacefulness, that an attack on his character, even for impeachment purposes, will not permit admission of extrinsic evidence. <u>Id.</u> at 575-576.

Plaintiff's Reply to Defendants' Response to His Motions <u>in</u> <u>Limine</u> (DE# 127 at 6-7,

5/18/15). The Court notes that in <u>Carson</u> "no substantial direct testimony was presented

by the defendants as to their characters for temperaments or peacefulness." <u>Id.</u> at 576.

In any event, the Court has determined that the circumstances of the plaintiff's February

21, 2008 arrest are admissible for a purpose other than character evidence. It is

18

admissible to show state of mind, motive and intent. See supra.

**(c.)   Information the Officers Learned about the Plaintiff's February 21, 2008 Arrest**

The plaintiff also seeks "to preclude the [o]fficers from justifying any force used against him on the basis of any information other than that known to him at the time of incident." Plaintiff's Motions in Limine (DE# 112 at 3, 4/14/15). In response, the defendants state that they "do not understand [the p]laintiff's argument here. Defendants Martinez, Sanchez, and Lopez have all testified that they did not use force against [the p]laintiff." Defendants' Response to Plaintiff's Motion in Limine (DE# 121 at 7, 5/1/15). The plaintiff states in his reply that:

> The [o]fficers claim they "do not understand" [the p]laintiff's argument since they all testified they "did not use force against [the p]laintiff." This is exactly the point. While the [o]fficers continue to deny using force on [the p]laintiff, they also continue to claim they are entitled to qualified immunity as to the excessive force claims. The distinctions between the defense of denial and an affirmative defense of qualified immunity was raised in [the p]laintiff's motion for summary judgment.

Plaintiff's Reply to Defendants' Response to His Motions in Limine (DE# 127 at 7, 5/18/15).

The undersigned issued a Report and Recommendation recommending that the plaintiff's motion for summary judgment be granted with respect to the officers' claim of qualified immunity for the February 21, 2008 incident. Accordingly, the plaintiff's request to exclude information the officers learned about the plaintiff's February 21, 2008 arrest is **DENIED without prejudice to renew** should the District Court decline to adopt that portion of the Report and Recommendation.

19

**(d.)    Evidence of the Plaintiff's Prior Arrests**

In the instant case, the plaintiff has a criminal history which includes prior arrests for disorderly intoxication and conducting business without a license. The plaintiff seeks to preclude the defendants from presenting evidence of these arrests at trial. See Plaintiff's Motions in Limine (DE# 112 at 4, 4/14/15). In their response, the defendants "agree that the Federal Rules of Evidence would not ordinary [sic] permit them to impeach [the p]laintiff with his arrests prior to February 21, 2008. However, should [the p]laintiff offer testimony or other evidence as to good his [sic] character for truthfulness, lawfulness, or peacefulness, or otherwise open the door by attesting to his good character in any way, [the d]efendants reserve the right to impeach such statements, without limitation, including by use of [the p]laintiff's prior arrests." Defendants' Response to Plaintiff's Motion in Limine (DE# 121 at 7, 5/1/15).

The plaintiff's request to exclude evidence of the plaintiff's prior arrests is **GRANTED**. Should the plaintiff open the door at trial, the defendants may raise the admissibility of these prior arrests with the District Court.

**(e.)    Evidence of the Plaintiff's "Bad" Character**

The plaintiff seeks to exclude "bad" character evidence but does not provide any specific examples of impermissible character evidence he believes the defendants will seek to introduce at trial. See Plaintiff's Motions in Limine (DE# 112 at 5-6, 4/14/15). In their response, the defendants state that they "reserve the right to introduce evidence of prior bad acts as outlined . . . in points B. and D." Defendants' Response to Plaintiff's Motion in Limine (DE# 121 at 8, 5/1/15). Because the plaintiff does not provide any examples of "bad" character evidence he seeks to exclude and other portions of the

plaintiff's motion in limine address character evidence which the defendants' may seek to introduce, the plaintiff's request to exclude evidence of the plaintiff's "bad" character as asserted in this section is **DENIED as moot**.

    **(f.)    Evidence of the Officers' "Good" Character**

    The plaintiff seeks to preclude the officers from "introduc[ing] evidence contained within their personnel files, such as commendations, letters of recognition, awards, etc. . . ." Plaintiff's Motions in Limine (DE# 112 at 6, 4/14/15).  The defendants respond that:

> when civil defendants are accused of a quasi-criminal offense (such as excessive force and battery), courts have permitted them to offer character evidence under the exception to Rule 404(a). See, e.g., Carson, 689 F.2d at 575-76 ("Here, however, we believe that the assault and battery with which the defendants in this suit are charged falls 'close to one of a criminal nature.' Therefore, we apply the character evidence exceptions of Rule 404(a)."). [The d]efendants should be permitted to rely on this exception with respect to defending against [the p]laintiffs' battery and excessive force claims if they so choose.

Defendants' Response to Plaintiff's Motion in Limine (DE# 121 at 8, 5/1/15). In his reply, the plaintiff maintains that the defendants misread the Carson decision and that the defendants have not disclosed what evidence of "good" character they will seek to introduce. See Plaintiff's Reply to Defendants' Response to His Motions in Limine (DE# 127 at 8, 5/18/15).

    The defendants do not identify what evidence they would seek to introduce as character evidence under the exception to Rule 404(a). The Court cannot analyze the defendants' argument without concrete examples. Accordingly, the plaintiff's request to exclude the officers' "good" character evidence is **GRANTED**.

**(g.)    Expert Testimony by the Defendant Officers**[7]

The plaintiff seeks to exclude any expert testimony from any law enforcement

officers because the defendants did not produce expert reports for law enforcement

officers. See Plaintiff's Motions in Limine (DE# 112 at 7, 4/14/15). The defendants

respond that "many of the officer-witnesses in this case, including the [d]efendants, are

permitted under Fed. R. Evid. 701 to offer lay opinions about matters of routine police

procedures based on their own experience, that do not require any specialized scientific

or technical knowledge within the scope of Rule 702." Defendants' Response to

Plaintiff's Motion in Limine (DE# 121 at 8, 5/1/15). In his reply, the plaintiff argues that

the officers cannot render lay opinion testimony because they deny using excessive

force and therefore cannot satisfy the personal knowledge requirement of Rule 701.

See Plaintiff's Reply to Defendants' Response to His Motions in Limine (DE# 127 at 8,

5/18/15).

Rule 701 permits lay opinion testimony that is: "(a) rationally based on the

witness's perception; (b) helpful to clearly understanding the witness's testimony or to

determining a fact in issue; and (c) not based on scientific, technical, or other

specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. While the

police officers cannot render lay opinion testimony concerning the alleged beating

which they maintain did not occur, they may still testify concerning routine police

procedures provided they satisfy the requirements of Rule 701. See, e.g., United States

---

[7] The plaintiff's arguments relate to the testimony of police officers. The undersigned has already issued a ruling on the plaintiff's motion to exclude the defendants' medical expert, Dr. Buchwald. See Order (DE# 130, 11/6/15).

v. Benford, 479 F. App'x 186, 194 (11th Cir. 2011) (district court did not plainly err in admitting police officer's testimony that drug dealers usually carry weapons where "it was sufficiently based on [witness]'s perceptions and observations as a police officer to be proper lay witness opinion under Rule 701."); United States v. LeCroy, 441 F.3d 914, 927 (11th Cir. 2006) (determining that police officer's testimony that "a blood stain on the back of [the victim's] shirt appeared to have been made by someone wiping a bloody knife off on the shirt" was admissible under Rule 701).

The plaintiff's request to exclude the police officers' lay opinion testimony is **DENIED**.

### (h.)  Comments by the Defendant Officers Concerning the Credibility of Other Witnesses

The plaintiff argues that "[t]he [o]fficers, counsel and their witnesses should be prohibited from asking a witness, commenting upon or making reference to another witness lying or offering their personal view on the credibility of a fellow witness." Plaintiff's Motions in Limine (DE# 112 at 7, 4/14/15). The defendants respond that:

> Rule 608 specifically permits a party to attack any witness's character for truthfulness through either reputation or opinion evidence. Fed. R. Civ. P. [sic] 608(a). [The d]efendants reserve their right to offer testimony pursuant to this rule. [The p]laintiff's argument relies exclusively on criminal cases in which a criminal defendant challenges his conviction based on improper testimony. These cases have no bearing on what evidence a civil defendant should be permitted to offer to attack a civil plaintiff's credibility.

Defendants' Response to Plaintiff's Motion in Limine (DE# 121 at 8, 5/1/15). In his reply, the plaintiff states that under Rule 608(a), evidence of truthful character is only admissible after the witness' character for truthfulness has been attacked. See Plaintiff's Reply to Defendants' Response to His Motions in Limine (DE# 127 at 9,

23

5/18/15).

Rule 608(a) specifically states that "evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked." Fed. R. Evid. 608(a). The plaintiff's request to exclude comments by the defendant officers concerning the credibility of other witnesses is **GRANTED**. Should the plaintiff open the door at trial, the defendants may raise the issue with the District Court.

### (i.)    References to the Golden Rule

The plaintiff seeks to exclude any golden rule arguments "suggest[ing to] the jurors that they put themselves in the shoes of one of the parties . . . ." Plaintiff's Motions in Limine (DE# 112 at 7, 4/14/15). In their response, the defendants state that the plaintiff's golden rule argument is "overboard" because an impermissible golden rule argument relates only to damages. See Defendants' Response to Plaintiff's Motion in Limine (DE# 121 at 9, 5/1/15) (citing McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1071 n.3 (11th Cir. 1996)). The defendants note that "[i]n an [sic] qualified immunity cases generally, and excessive force and false arrest cases in particular, the jury is actually **required** to place themselves in the shoes of a reasonable officer on the scene and to evaluate the situation with only the information then-available to the officer." Id. at 10 (emphasis in original).

In his reply, the plaintiff acknowledges that in this Circuit golden rule arguments are only prohibited as to damages. See Plaintiff's Reply to Defendants' Response to His Motions in Limine (DE# 127 at 9, 5/18/15). Nonetheless, the plaintiff maintains that "perimeters must be set as to limiting Golden Rule comments as to the issue of liability so as to not cause prejudice to [the p]laintiff or the [o]fficers" and that "there should be

24

some limitations imposed over comments to avoid undue prejudice." Id. The plaintiff

further notes that the issue of qualified immunity is for the Court to decide, not the jury:

"[a]ssuming arguendo, the jury needs to resolve a factual dispute necessary to resolve

the qualified immunity defense, it should be accomplished without any mention of

qualified immunity." Id. at 10.

The plaintiff does not identify what these "perimeters" should be or what

limitations the Court should impose over comments. As noted earlier, the undersigned

issued a Report and Recommendation (DE# 129, 11/5/15) recommending that

summary judgment be entered in favor of the plaintiff on the defendants' qualified

immunity defense with respect to the February 21, 2008 incident. If the Report and

Recommendation is adopted, it would moot at least part of the plaintiff's argument

concerning qualified immunity. The plaintiff's request to exclude golden rule arguments

is **DENIED**. The plaintiff acknowledges that the prohibition against golden rule

arguments applies only to damages in this Circuit. The defendants have not given any

indication that they would violate the golden rule as to damages and the plaintiff has not

provided the Court with any specific guidance as to what additional argument

"perimeters" or limitations are necessary in the instant case.

### (I.)  References to a Lack of Insurance

The plaintiff seeks to exclude evidence of the officers' lack of insurance. See

Plaintiff's Motions in Limine (DE# 112 at 10-11, 4/14/15). The plaintiff argues that

"[w]hile the normal concern regarding insurance relates to the jury becoming aware of

its existence, the present concern is the exact opposite – revealing to the jury that there

is 'no insurance' makes a jury less, not more, likely to award substantial damages

against a defendant." Id. (footnote omitted). The defendants argue that the officers' lack

of insurance is relevant to their ability to pay punitive damages and should therefore be

admissible at trial. See Defendants' Response to Plaintiff's Motion in Limine (DE# 121

at 10, 5/1/15). In his reply, the plaintiff adds that "should any of the [o]fficers testify that

he is personally responsible for any money damages awarded, then he will have

'opened the door' to rebuttal evidence any [sic] regarding indemnification agreements."

Plaintiff's Reply to Defendants' Response to His Motions in Limine (DE# 127 at 10,

5/18/15).

Rule 411 states that: "Evidence that a person was or was not insured against

liability is not admissible to prove whether the person acted negligently or otherwise

wrongfully. **But the court may admit this evidence for another purpose** . . . ." Fed.

R. Evid. 411 (emphasis added). "Evidence of [the d]efendants' net wealth is relevant to

the jury's consideration of an award of punitive damages." In re Wright Med. Tech. Inc.,

No. 1:13-CV-297-WSD, 2015 WL 6690046, at *3 (N.D. Ga. Oct. 30, 2015). "[T]he

impact of an award of punitive damages on [the d]efendants is relevant in determining a

punitive damages award and its deterrent effect on [the d]efendants." Id. The existence

or non-existence of insurance coverage would certainly have an impact on the

defendants' finances and on the deterrent effect of any award of punitive damages.

Therefore, the defendants are allowed to present evidence of a lack insurance

coverage. The plaintiff's request to exclude any reference at trial to a lack of insurance

is **DENIED**. However, if the defendants introduce evidence of no insurance, then the

plaintiff is entitled to introduce indemnification agreements provided those

indemnification agreements cover punitive damages. See Wallace v. Poulos, 861 F.

Supp. 2d 587, 602 (D. Md. 2012) (noting that "informing the jury of the indemnification agreement makes jurors aware that [the d]efendants' ability to pay is essentially a moot point. . . . [T]elling the jury about indemnification ensures that jurors have an accurate understanding of the likely deterrence effect of their judgment. When an officer is fully indemnified, specific deterrence is substantially diminished and perhaps eliminated.").

### (m.)   Evidence of the Defendants' Financial Conditions

The plaintiff argues that the Court should consider bifurcating the plaintiff's claim of compensatory damages and the plaintiff's claim for punitive damages noting that while the officers' financial conditions are not relevant to a claim of compensatory damages, they are relevant to punitive damages. See Plaintiff's Motions in Limine (DE# 112 at 11-12, 4/14/15). The plaintiff further notes that the defendants did not provide financial information in their Rule 26 disclosures. Id. at 11.

The defendants oppose the relief requested. They argue that they were not required to provide financial information as part of their Rule 26 disclosures because it was not related to a claim or defense. See Defendants' Response to Plaintiff's Motion in Limine (DE# 121 at 11, 5/1/15). The defendants also maintain that bifurcating the trial would be a waste of the Court and the jury's time and resources. Id. The defendants note that "police officers do not ordinarily have the ability to pay large money judgments" and that "[t]he jury will assume that anyways." Id.

"Rule 42(b) of the Federal Rules of Civil Procedure affords a district court discretion to order separate trials where such order would further convenience, avoid prejudice, or promote efficiency." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1301 (11th Cir. 2001). The plaintiff argues that the trial should be bifurcated because

27

evidence of the officers' financial condition is relevant to punitive damages, but not relevant to compensatory damages. The plaintiff has not provided sufficient justification for bifurcating damages in the instant case. The jury can properly be instructed to consider financial and net worth evidence if it determines punitive damages are warranted.

Evidence of a defendant's financial condition is admissible at trial and relevant to the issue of punitive damages. "Where there is a claim for punitive damages a defendant's financial condition becomes relevant because the wealth of the defendant is a factor for consideration in determining the reasonableness of a punitive award." Shores of Panama Resort Cmty. Ass'n Inc. v. Halberthal, No. 5:14-CV-294-RH-GRJ, 2015 WL 3466127, at *1 (N.D. Fla. June 1, 2015) (citing Myers v. Cent. Fla. Invs. Inc., 592 F.3d 1201, 1216 (11th Cir. 2010)). However, the defendants may only introduce evidence that was properly disclosed to the plaintiff. See Wharton v. Preslin, No. 2:07-CV-1258, 2009 WL 1850085, at *6 (S.D. Ohio June 26, 2009) (stating that "[i]f [the d]efendant wishes to present evidence of his net worth, [the d]efendant must pursuant to Rule 26(a)(1) and other discovery rules have provided [the p]laintiff with a copy of, and the description or location of, the documentation of his net worth so that [the p]laintiff can have an opportunity to prepare adequately for trial.").

. The plaintiff's request to bifurcate the trial is **DENIED**.

## CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that the Defendants' Omnibus Motion in Limine and Incorproated [sic] Memorandum of Law (DE# 111, 4/14/15) and the Plaintiff's

28

Motions in Limine (DE# 112, 4/14/15) are **GRANTED in part and DENIED in part**.

DONE AND ORDERED in Chambers, in Miami, Florida, this **17th** day of

November, 2015.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All counsel of record

29